second-floor apartment at 128 Osborne Street.  The defendants were quickly able to match "Alex" to Luis Fernandez, as soon as they executed the search warrant, and discovered the plaintiff's photo identification (passport, Florida Driver's license) in the apartment's attic bedroom. The defendants further definitively matched the plaintiff to his alias during the 'reverse-sting' operation.

The plaintiff in this matter would have this Court espouse a rule, whereby any warrant that lists an alias, without also citing the suspect's given name, is invalidated. The *Brown* decision already dispenses with this argument. "The rule that Brown contends for would be as mischievous as it would be unhelpful, since once criminals realized that they could obtain a practical immunity from arrest by going under an alias not listed in the application for an arrest warrant they would be sure to adopt a new alias as soon as they learned that a warrant was outstanding." *Brown* at 170.

### c.     The defendants had probable cause to stop the White Nissan Pathfinder.

On January 7, 2000, after establishing surveillance at the 128 Osborne address, and after observing the plaintiff and Angel Ramirez depart from the second floor apartment at 128 Osborne and enter the White Nissan Pathfinder, the defendant officers decided to execute the warrant for the search of Angel Ramirez.  Maintaining surveillance on the vehicle, the defendants observed the White Nissan Pathfinder turn onto Tamarack Avenue.  It was at this point that the defendants decided to stop the vehicle to execute the search warrant.

The stop of the vehicle was also well within the legal confines set by the Fourth Amendment. "It is now well settled that an officer may stop and search a motor vehicle for the purpose of discovering suspected contraband cargo if the officer has probable cause to believe that the automobile he stops contains such contraband." *United States v. McKenzie*, 446 F.2d 949, 952 (6th Cir. 1971); citing to *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). "[T]he ready mobility of a motor vehicle is, in and of itself, an exigency sufficient to excuse failure to obtain a search warrant once probable cause to conduct the search is clear... Consequently, if a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment... permits police to search the vehicle without more." *U.S. v. Haynes*, 301 F.3d 669, 677 (6th Cir. 2002); citing to *Pennsylvania v. Labron*, 518 U.S. 938, 940

24

(1996). *"There is no requirement that a law enforcement officer making a vehicle stop obtain a warrant when there is probable cause to search the vehicle."* Maryland v. Dyson, 527 U.S. 465, 466 (1999) (Emphasis provided).

The January 6, 2000 search warrant documents a five-month investigation of the plaintiff's and Mr. Ramirez's joint-operation of the sale of cocaine. Throughout the entire duration of this investigation, the defendant detectives and officers frequently observed both Mr. Ramirez and the plaintiff operating the white Nissan Pathfinder. The defendant officers and detectives also observed both men using the white Nissan Pathfinder to facilitate the sale of cocaine during the controlled purchases, arranged by the undercover detectives. Both informants told the detectives that "Sandy" and "Alex" made use of a white sports utility vehicle during their drug transactions. The detectives had frequently observed the white Pathfinder parked in the driveway to the second-floor apartment at 128 Osborne Street, and had observed both the plaintiff and Mr. Ramirez pull-up in and drive-off in the Pathfinder.

Specifically, just prior to the actual execution of the search warrant for Angel Ramirez on January 7, 2000, the detectives had completed a controlled purchase of cocaine from both Mr. Ramirez and the plaintiff, both men delivering the cocaine to the informant in the white Nissan Pathfinder on January 3, 2000. Informant #1 also specifically told the detectives that he observed packages of cocaine in the white Nissan Pathfinder while finalizing the January 3, 2000 controlled purchase. And, just prior to executing the warrant and stopping the vehicle on Tamarack Avenue, the detectives had observed both Mr. Ramirez and the plaintiff enter the Pathfinder, while it was parked in the driveway at 128 Osborne Street. The defendants clearly had probable cause to suspect that the White Nissan Pathfinder was being used to facilitate the illegal sale and exchange of cocaine, and that such illegal contraband might be located in the vehicle.

Nonetheless, when the defendants stopped the White Nissan Pathfinder, they did **NOT** search the vehicle. They merely detained Mr. Ramirez and the plaintiff, while they executed the search warrants for Mr. Ramirez and for the second-floor apartment. The defendant's decision to pull over the White Nissan Pathfinder did not rise to the level of a search. Though the defendants had probable cause to search the vehicle, they did

25

not choose to do so. ***They merely chose to stop the vehicle in order to execute the
search warrant for Angel Ramirez***.

      **d.     The plaintiff's 'pat-down' did not violate the 4th Amendment.**

The plaintiff also argues that the defendants exceeded the "scope of Terry"
(Pl.Comp., page 15) when he was patted-down for weapons and/or contraband, right
after the white Nissan Pathfinder was stopped on Tamarack Avenue. (56(a)1
Statement ¶ 92). No items were taken from the plaintiff's person at the time of this pat-
down. (56(a)1 Statement ¶ 92). Again, this brief, limited search was well within the
parameters set by the Fourth Amendment.

In *Terry v. Ohio*, the Supreme Court held that brief, limited searches and
seizures, known as 'stops' or 'frisks', can be undertaken if the officer has "reasonable
suspicion supported by articulable facts that criminal activity may be afoot." <u>United
States v. Sokolow</u>, 490 .S. 1, 7 (1989); quoting *Terry v. Ohio*, 392 U.S. at 30. "Thus,
reasonable suspicion, not probable cause, must be present for an investigatory stop to
be valid." *United States v. Arvizu*, 122 S.Ct. 744, 750 (2002).

A 'Terry stop' involves a minimal standard of review, less intrusive than that of
probable cause. "Reasonable suspicion is a somewhat abstract concept." *United
States v. Arvizu* at 751. The Court has instructed that lower courts making reasonable
suspicion determinations must "look at the totality of the circumstances in each case to
see whether the detaining officer has a particularized and objective basis." *Id*. at 751.

In the present case, the totality of the circumstances clearly established a
particularized, reasonable suspicion for the search of the plaintiff's person. Over the
course of a five-month investigation, the plaintiff was frequently observed operating the
white Nissan Pathfinder. Two confidential and reliable informants had told the
defendant detectives that the plaintiff and Mr. Ramirez made use of a white sports utility
vehicle when making the sale and delivery of narcotics. The defendant detectives
observed the plaintiff conducting the sale of cocaine from the white Nissan Pathfinder.
On one occasion, during the last controlled purchase on January 3, 2000, the plaintiff
was observed seated in the white Nissan Pathfinder, holding packages of cocaine.
(56(a)1 Statement ¶ 71).

When they pulled the white Nissan Pathfinder over on Tamarack Avenue on
January 7, 2000, the defendant detectives had reasonable suspicion to believe that the
plaintiff was once again en route to completing a sale of cocaine, and that he had illegal
narcotics on his person.  Furthermore, courts have "relied upon the general proposition
that drugs and guns go together," Lalor at 1584, and the defendant detectives also had
reasonable suspicion that either the plaintiff or Mr. Ramirez were armed.
**Nevertheless, no items were removed from the plaintiff's person during this**
**'Terry frisk'.**  The plaintiff's 'Terry frisk' did not violate the Fourth Amendment.

> **e.    A search warrant founded on probable cause carries with it the**
> **limited authority to detain the suspects, connected to the**
> **search, while a proper search is conducted.**

After the defendant officers had stopped the White Nissan Pathfinder, they chose
to detain the plaintiff and Mr. Ramirez at a nearby Mobil station, while a number of
officers and detectives returned to 128 Osborne Street to execute the search warrant for
the second-floor apartment.  The plaintiff also alleges that this detention violated his
Fourth Amendment rights. (PlComp.).

"[S]ome seizures, even though longer than momentary, constitute such limited
intrusions on the personal security of those detained and are justified by such
substantial law enforcement interests that they may be made on less than probable
cause, so long as police have an articulable basis for suspecting criminal activity.  Such
intrusions are not confined to the momentary, on-the-street detention accompanied by a
frisk for weapons, as was involved in *Terry v. Ohio*." *Williams v. Kaufman County*, 343
F.3d 689, 702-703 (5th Cir. 2003); citing to *Michigan v. Summers*, 452 U.S. 692, 699-
701 (1981).

"For determining whether a seizure falls into this exception to the general rule,
the Court set out a familiar balancing test, which weighed the character of the intrusion
against the character of the justification... The Court found the intrusion (detention)
substantially less invasive than an arrest because (1) the police conducted the search
pursuant to a valid warrant, which already authorized a substantial, and arguably more
intrusive, invasion of privacy of the detainee's home; (2) the officers were unlikely to
prolong the detention to gain more information because they were primarily seeking

information from the search itself..." *Williams v. Kaufman County*, at 703; citing to *Michigan v. Summers*, at 701-702.

"The Court identified three law enforcement interests, all of which supported the detention at issue: (1) preventing the flight of the suspect; (2) minimizing the risk of harm to the police; and (3) facilitating the orderly completion of the search by having the occupant of the premises present. Furthermore, the existence of the valid search warrant, issued by a neutral magistrate to search a home for criminal activity, established probable cause that someone in the home was committing a crime, which in turn provided justification for detaining the home's occupant." *Williams v. Kaufman*, at 703; citing to *Michigan v. Summers*, at 703-704. The *Michigan* Court finally concluded with the following rule: "[t]hus, ***for Fourth Amendment purposes, we hold that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted.***" *Michigan v. Summers*, at 704-705. (Emphasis provided).

The police may also detain a suspect even if they are not certain if that suspect officially resides at the premises, for which they have obtained the search warrant. In *U.S. v. Heyd*, (Neb. 2003)(See **Attached**), the police had obtained a search warrant for an apartment designated Apartment No. 1, on the grounds of possession and sale of narcotics. The police were aware that Apartment No. 1 had been leased under the name of Cecilio Rodriguez. At the time they executed the search warrant, the police observed Rodriguez exiting from another apartment, in the company of the plaintiff, Heyd. The court held, "[b]ecause the police had a valid warrant to search Apartment No. 1 and to arrest Rodriguez, and because Heyd and Rodriguez were observed by law enforcement as leaving Apartment No. 2 together, I agree that law enforcement had reasonable suspicion to temporarily detain Heyd to ensure that he did not interfere with the execution of the search warrant that was already underway, to inquire into his identity, and to pat-search his body for weapons." *U.S. v. Heyd*.

The defendant detectives and officers had the authority to detain the plaintiff and Mr. Ramirez while they executed the search warrant for the second-floor apartment. They had already concluded during the investigation that Mr. Ramirez was the official resident of the apartment. They had also frequently observed the plaintiff entering and

28

exiting the second-floor apartment throughout the duration of the five-month investigation. The defendants had reasonable suspicion to believe that the plaintiff resided at the second-floor apartment, and therefore had reasonable suspicion to detain him while they executed the search warrant. The plaintiff's and Mr. Ramirez's detention was a necessary precaution, insuring that they did not interfere with the execution of the search warrant.

Furthermore, the plaintiff's actual detainment was of limited duration, consisting of a mere thirty (30) minutes. The white Nissan Pathfinder was stopped at approximately 4:30 p.m. Upon finding cocaine in the apartment, at 5:00 p.m. the detectives immediately radioed back to the officers remaining with the plaintiff and Mr. Ramirez, and advised the officers to place the two men in custody. The plaintiff's detention does rise to the level of a Constitutional violation.

### f. The defendant officers were not required to knock and announce their presence prior to their execution of the search warrant for the second-floor apartment.

The plaintiff also alleges in his complaint that the defendants violated the Fourth Amendment by not knocking and announcing their presence, prior to the execution of the search warrant. The specific circumstances of the subject search permitted an exception to the knock and announce requirement.

"Knock and announce requirements vary with the circumstances of each case; failure to knock and announce may be excused by exigent circumstances." *U.S. v. Lalor*, 996 F.2d 1578, 1584 (4th Cir. 1993); citing to *Mensh v. Dyer*, 956 F.2d 36, 40 (4th Cir. 1991). Assuming that the defendant officers and detective were not certain as to the apartment's vacancy at the time of the search, the circumstances of the search still warranted an exception to the knock and announce rule. Courts have often ruled that safety considerations constitute exigent circumstances that merit an exception to the knock and announce requirement. As in the present matter, in *Lalor* the police officers were engaged in executing a search warrant for premises suspected to contain evidence for illegal narcotics possession and distribution. The court "relied upon the general proposition that drugs and guns go together," and that therefore the safety risk to the officers provided an independent ground for the no-knock entry. *Lalor* at 1584.

29

The present situation, also involving a narcotics investigation, merits the same exigent circumstances exception.

Furthermore, the Supreme Court has held that the knock and announce requirement is waived where officers have reasonable grounds to suspect that an exigency, such as evidence destruction, will arise instantly upon knocking. This exception specifically contemplates readily destructible evidence, such as cocaine. In United States v. Banks, 02-473 (U.S. 2003) (See **Attached**), the Court specifically held that this exigency exception applies to officers armed with a warrant to search a premises for cocaine. In the present matter, the defendants had a warrant, issued by a neutral magistrate, to search the second-floor apartment for cocaine. As in Banks, the defendants were cognizant of the fact that cocaine is evidence that may be readily and easily destroyed, and therefore had reasonable suspicion that announcing their presence would lead to the immediate destruction of the evidence (if any persons actually were in the apartment).

**g.    The defendants had probable cause for the warrantless arrest of the plaintiff.**

The "heart" of the plaintiff's complaint is that the defendants' failure to obtain a warrant for his arrest violated the Fourth Amendment. However, the plaintiff's arrest was valid, as the fruits of the equally valid search warrant for the second-floor apartment immediately gave rise to probable cause for the plaintiff's arrest.

"A warrantless arrest is justified when there is probable cause when the defendant is put under arrest to believe that an offense has been or is being committed." *U.S. v. Adams*, 137 F.Supp.2d 240, 248 (W.D.N.Y. 2001); citing to *United States v. Cruz*, 834 F.2d 47, 50 (2d Cir. 1987). "In determining whether probable cause existed for a warrantless arrest, the court should consider the totality of the circumstances and view the issue as a common sense, practical determination." *U.S. v. Adams*, at 248; citing to *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317 (1983). "Probable cause exists if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed." *United States v. Patrick*, 899 F.2d 169, 171 (2d Cir. 1990). "Moreover, the existence of probable cause is not defeated even where it is based upon mistaken

30

information so long as the arresting officer was reasonable in relying upon the information." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). "If the officers have probable cause to make the arrest it is not necessary to prove exigent circumstances to justify a warrantless arrest." *United States v. Wiseman*, 648 F.Supp. 499, 503 (Mass. 1986); citing to *United States v. Watson*, 423 U.S. 411, 423, 96 S.Ct. 820 (1976).

Probable cause for a warrantless arrest may be derived from a search that takes place **PRIOR** to the arrest. In *Rawlings v. Kentucky*, 448 U.S. 98 (1980), the Court found that probable cause for the arrest arose at the time of the search. "Where the formal arrest followed quickly on the heels of the challenged search of the petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa." *Rawlings v. Kentucky*, at 110-11.

Courts have held that a person's connection with a certain location may give rise to probable cause for a warrantless arrest. In *U.S. v. Savides*, 664 F.Supp. 1544 (N.D. Ill. 1987), the defendants, Besace, Pace and Greco, claimed that the officers lacked probable cause to arrest them, when the police executed a gambling search warrant for the defendant Savides' condominium. The *Savides* court took note of the fact that Besace, Pace and Greco were guests at Savides' condominium at the time the search was executed. The court also took note of the large amounts of cocaine uncovered during the search. The *Savides* court then concluded that the search of the condominium established probable cause for the arrest of Besace, Pace and Greco:

"[I]t is not unreasonable to attach significance to the fact Savides allowed his guests (if not business associates) to be present in his private dwelling with large amounts of narcotics and currency in plain view...it strikes us as incredible that a drug dealer would have a person accompany him to a drug deal believed by the drug dealer to be worth over a million dollars, where that person did not have the drug dealer's utmost trust and confidence." *U.S. v. Savides*, at 1551-52; citing to *United States v. Perry*, 747 F.2d 1165, 1169 (7th Cir. 1984).

Likewise, in *United States v. Woods*, 544 F.2d 242 (6th Cir. 1976), the defendant Hurt was arrested when leaving a location, at which the police had probable cause to suspect illegal narcotics activity. The court held that "[a]s the officer giving the order had probable cause to believe anyone then leaving that address was engaged in narcotics offenses, the arrest of Hurt was not invalid." *Woods* at 260.

31

In the present case, the plaintiff was arrested after the defendants had executed the search warrant for the second-floor apartment. Execution of the search-warrant was the culmination of a five-month investigation, during which the defendant detectives had on numerous occasions observed the plaintiff enter and exit the second-floor apartment, proceed to controlled purchases of cocaine from the second-floor apartment, and return to the second-floor apartment after selling cocaine to informants. During the search of the apartment, the detectives uncovered a total of 30.2 ounces of cocaine, amounting to a street value of $140,000, as well as various drug paraphernalia, such as electronic scales, packaging material, and even a list of drug sales. Specifically, as regarding the plaintiff, the detectives discovered the plaintiff's passport, Dominican immigration papers, Florida's Drivers' license, New York Learner's permit, Connecticut MVD title, social security card, and a $891 cellular telephone bill, all in the name of Luis Fernandez.

The fruits of the search clearly established probable cause for the plaintiff's arrest. Indeed, the plaintiff, himself, has admitted that the search produced probable cause for his arrest: "Probable Cause for arrest did not exist *until the search was underway*." (Pl.Comp., page 17) (Emphasis provided). The plaintiff was residing in the same, small second-floor apartment, within which existed evidence for a substantially large narcotics operation. The detectives did not know the plaintiff's actual name during the investigation, however the numerous photo-identification materials found in the apartment (as well as the results of the 'reverse-sting' operation) solidly confirmed beyond a doubt that the man known to the detectives as "Alex", and physically observed by the defendants on numerous occasions, was the same as the Luis Fernandez that they arrested on January 7, 2000.

## 2.    The Defendants Are Protected By the Doctrine of Qualified Immunity.

### a. Doctrine of Qualified Immunity

Even if the plaintiff was able to show that there was no probable cause for his arrest, the defendant officers and detectives are nonetheless shielded from liability by the doctrine of qualified immunity. The plaintiff's complaint does not specify whether he is bringing suit against the defendant officers and detectives in their individual or official

32

capacities. (Pl.Comp). However, each individual defendant officer/detective is named in the body of the complaint, and though the plaintiff's allegations are not separately numbered, certain allegations are made in reference to specific officers/detectives. (Pl.Comp). It appears that the plaintiff has sued the defendants in their individual capacities, and therefore, the defense of qualified immunity applies to the defendants.

"[G]overnment offcials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Connecticut v. Crotty*, 346 F.3d 84, 101 (2nd Cir. 2003); citing to *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Police department decisions to make arrests and pursue the investigation of crimes are discretionary acts. See *Elinsky v. Marlene*, No. 960557659 (J.D. of Hartford-New Britain at Hartford, Nov. 14, 1997, Hale J.) (**attached**).

The defense of qualified immunity shields government agents "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." McEvoy v. Spencer, 124 F.3d 92, 97, (2d Cir. 1997) *quoting,* Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A right is "clearly established" when "[t]he contours of the right [are] . . . sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . [T]he unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987). *See, e.g.* Malley v. Briggs, 475 U.S. 335, 341 (qualified immunity protects "all but the plainly incompetent or those who knowingly break the law."); Mitchell v. Forsyth, 472 U.S. 511, 528 (1985) (officials are immune unless "the law clearly proscribed the actions they took.")

In determining whether a particular right was clearly established at the time defendants acted, the Second Circuit has considered three factors: (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the [Second Circuit] support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant or official would have understood that his or her acts were unlawful. Jermosen v. Smith, 945 F.2d

547, 550 (2d Cir. 1991). *See* <u>Francis v. Coughlin</u>, 891 F.2d 43, 46 (2d Cir. 1989), *citing,* <u>Anderson</u>, 483 U.S. at 640.

Recently, the Supreme Court has re-emphasized the need to look carefully at the "contours" of the right allegedly violated by a public official when undertaking a qualified immunity analysis. <u>Saucier v. Katz,</u> 533 U.S. 194 (2001). The Supreme Court has concluded that observation of that general principle is not enough when undertaking a qualified immunity analysis. In <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), the Court reiterated the need for a careful examination of the particular constitutional right alleged to have been violated when considering the defense of qualified immunity. Not only should the right itself be identified with a higher degree of specificity, the precise contours of the application of that more specific right to the facts at hand must be made by the district court reviewing a defense of qualified immunity. <u>Saucier v. Katz</u>, 533 U.S. 194 (2001). The <u>Saucier v. Katz</u> Court held:

> the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

533 U.S. 194 (2001).

That is the level of specificity required by the rule announced in <u>Anderson v. Crieghton</u>, emphasized in <u>Wilson v. Layne,</u> 526 U.S. 603 (1999) and reiterated most recently in <u>Saucier v. Katz</u>. It is the order of the examination – that is, this court must consider first whether the right is clearly established, then consider whether the conduct was objectively reasonable. If the right was not clearly established, the inquiry ends, and the official is protected by qualified immunity. *See* <u>Poe v Leonard,</u> 282 F.3d 123 (2nd Cir. 2002).

### b. The rights at issue were not clearly established at the time the plaintiff claims they were violated.

By the present lawsuit, the plaintiff urges this Court to adopt a new rule of law that goes beyond the reasonableness standard implicit in the Fourth Amendment. *Saucier v. Katz* has dictated that when undertaking a review of a defense of qualified immunity, the right in question must be identified with a higher degree of specificity. The plaintiff has alleged in his complaint that his arrest was unreasonable as it was

made without a formal arrest warrant. However, the plaintiff does admit in his complaint that probable cause for his arrest "did not exist until the search was underway." (Pl. Comp. Page 17). In effect, the plaintiff is claiming that he has a constitutional right under the Fourth Amendment to be free from all warrantless arrests.

However, the plaintiff cannot point to any authority that suggests this level of reasonableness when applied to the Fourth Amendment. The "reasonableness" requirement of the Fourth Amendment is satisfied if the search or seizure is made pursuant to *probable cause*. Despite the protections of the Fourth Amendment, and the preference for warrants, an arrest without a warrant is legal when justified by both probable cause and exigent circumstances. Thus, the test is not whether an actual warrant has issued, but whether probable cause exists for the arrest. "A warrantless arrest is justified when there is probable cause when the defendant is put under arrest to believe that an offense has been or is being committed." *United States v. Cruz*, 834 F.2d 47, 50 (2d Cir. 1987).Probable cause for an arrest may issue from the fruits of a search. See *Rawlings v. Kentucky*, 448 U.S. 98 (1980).

Furthermore, in this case it is undisputed that a search warrant for the plaintiff's partner, Angel Ramirez, and for the 128 Osborne apartment was obtained from a neutral magistrate. (56(a)1 Statement ¶¶ 81, 82). This creates a presumption that it was objectively reasonable for the defendant officers and detectives to believe probable cause existed for the search. *Gilino v. City of New Haven*, 950 F.2d 864, 870-71 (2d Cir. 1991). Upon executing the search warrant, the defendant detectives and officers uncovered a large quantity of cocaine (30.2 ounces), various drug-sale paraphernalia (electronic scales and packaging materials), as well as a number of official photo-identification cards and papers in the name of Luis Fernandez (passport, Dominican immigration papers, Florida driver's license, etc...). The plaintiff has not demonstrated how his arrest is constitutionally unreasonable, when it was objectively reasonable for the executing officers to believe that probable cause existed for his arrest, pursuant to the execution of the search warrant for the second-floor apartment.

The plaintiff would have this Court recognize a rule whereby the Fourth Amendment is automatically violated every time the police arrest a person without a warrant. Such a rule, as urged by the plaintiff, was not clearly established at the time

35

the plaintiff was arrested, and it is not clearly established now.  This ends the inquiry.
*Saucier v. Katz*, 53 U.S. 194 (2001); *Poe v. Leonard*, 282 F.3d 123 (2nd Cir. 2002).

### c.  The actions of the defendants were objectively reasonable under all the circumstances.

Even where a clearly established constitutional right is found, government
officials can still enjoy the protection of qualified immunity.  *See*, Connell v. Signoracci,
153 F.3d 74, 80 (2d Cir. 1998).  The objective reasonableness inquiry is fact-specific to
any given case, Graham v. Connor, 490 U.S. 396, and "the objective reasonableness
test is met … if officers of reasonable competence could disagree on the legality of the
defendant's actions." Lennon v. Miller, 66 F.3d 420, *quoting*, Malley v. Briggs, 475 U.S.
341.

The examination of the reasonableness of an officer's actions is not based upon
a review of all the facts long after the events themselves are over.  Rather, "the
reasonableness of a particular use of force is judged from the perspective of a
reasonable officer on the scene."[1] Graham v. Connor, 490 U.S. 396.  Unquestionably,
"the calculus of reasonableness must embody allowance for the fact that police officers
are often forced to make split-second judgments – in circumstances that are tense,
uncertain, and rapidly evolving – about the amount of force that is necessary in a
particular situation." Id. at 397.

"Probable cause exists if the facts and the circumstances within the collective
knowledge of the law enforcement officials, of which they had reasonably trustworthy
information, are sufficient to cause a person of reasonable caution to believe that an
offense has been or is being committed." *United States v. Jimenez*, 780 F.2d 975, 978
(11th Cir. 1986).  However, when considering qualified immunity, the issue is not
probable cause in fact, but ***arguable probable cause***.  See *Myers v. Morris*, 810 F.2d
1455, cert. denied, 484 U.S. 828.  Arguable probable cause exists when a reasonable
police officer in the same circumstances and possessing the same knowledge as the
officer in question could have reasonably believed that probable cause existed in light of

---

[1]The Graham Court further specified the following factors to determine if the seizure is
reasonable: (1) the severity of the crime; (2) whether the suspect poses an immediate threat to the safety
of law enforcement officers or others; and (3) whether the suspect is actively resisting arrest or attempting
to evade arrest by flight.

well-established law. *Lee v. Sandberg*, 136 F.3d 94 ¶36. "Actual probable cause is not necessary for an arrest to be objectively reasonable. Indeed, it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable." *Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997).

At the outset, it is important to note that the defendant, Police Chief Robert Paquette, is not properly included under this analysis. Chief Paquette had no personal involvement in the five-month investigation, or in the warrant application process. Likewise, Chief Paquette was not personally involved in the execution of the warrant on January 7, 2000. (Local Rule 56(a)(1) Statement ¶ 4; Affidavit of Chief Robert Paquette). Qualified Immunity need not even apply, as Chief Paquette is not causally linked to the plaintiff's arrest.

Having said this, for the purposes of this inquiry, the facts relevant to the determination of objective reasonableness show that the remaining defendants' actions were objectively reasonable on January 7, 2000. During their five-month investigation, the defendant detectives and officers had frequently observed the plaintiff entering and exiting the second floor apartment. Upon executing the search warrant, the defendant detectives found evidence that a large-scale narcotics operation was being based at the second-floor apartment, uncovering $140,000 worth of cocaine, as well as various drug-transaction paraphernalia, such as electronic scales, drug packaging materials, even a notebook recording drug-sales. The defendant detectives also located various photo-identification materials, all in the name of Luis Fernandez, including a passport and a Florida driver's license. After establishing the plaintiff's residence within a small apartment, within which substantial narcotics transactions were being orchestrated, the defendants' belief that they had probable cause to arrest the plaintiff was certainly objectively reasonable.

Furthermore, as stated above, the defendant officers and detectives were acting pursuant to a valid search warrant, reviewed and signed by a disinterested magistrate. (56(a)1 Statement ¶¶ 81, 82). Generally, the issuance of a warrant by a neutral judge or magistrate creates a presumption that it was objectively reasonable for the officers to

believe probable cause existed. *Gilino v. City of New Haven*, 950 F.2d 864, 870-71 (2d Cir. 1991). The plaintiff has failed to plead any facts which would portray the defendants' conduct as unreasonable. The defendants are protected by qualified immunity from the present suit.

**B.    Summary Judgment Should Enter In Favor Of The City Of Danbury Because The Plaintiff Has Failed To State A Claim Under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978) As Against The City.**

Though he does not name the City of Danbury or the Danbury Police Department as defendants, the plaintiff also appears to be making a claim against the "municipality" in the body of the complaint. (Pl.Comp.) Specifically, the plaintiff claims that the "municipal" and its "officials" failed to supervise the execution of the subject search warrant and the plaintiff's arrest, in accordance with its policies, procedures and customs. (Pl.Comp.) The plaintiff does not state that a claim has been brought against the Danbury Police Department or against the City of Danbury. (Pl.Comp.) Regardless, the plaintiff may not bring a claim against either the Danbury Police Department or the City of Danbury.

**1.    Federal and State Claims against the Danbury Police Department are barred as a matter of law because a municipal police department is not an entity amenable to suit.**

At first hand, it is important to establish that the plaintiff's municipal claim, howsoever opaquely worded, may not be addressed against the Danbury Police Department. Any claims directed against the Danbury Police Department must fail as a matter of law as no issue of material fact exists to dispute that a municipal police department is not a legal entity amendable to lawsuits.

"In §1983 actions, police departments cannot be sued in conjunction with municipalities, because the police departments are merely administrative agencies of the municipalities — not separate judicial entities." *Pahle v. Colebrookdale Township*, (E.D.Pa., March 26, 2002). *See also*, *Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992); *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991), cert. denied, 502 U.S. 1032, 112 S.Ct. 872, 116 L.Ed.2d 777 (1992). In *Pahle*, supra, the District Court

38

granted the defendants' motion for summary judgment as to the claims against the municipal police department "[b]ecause the police department is merely an arm of the [municipality], and thus a redundant party." *Pahle v. Colebrookdale Township*, supra. Accord, *Foley v. City of Danbury*, No. 3-00-CV-712, (D.Conn. Mar. 9, 2001, Hall, J.).

This is not merely an issue with regard to pleading or proving some elements; the question is jurisdictional. It is undisputed that under Connecticut law, municipalities are authorized to sue and be sued. Conn. Gen. Stat. §§ 7-148, 52-73, 7-465. Unless departments within municipal government constitute distinct "bodies politic" under state law, the proper defendant is the municipality itself, not the department. *Levine v. Fairfield Fire Dept.*, 1999 WL 241734, at *3 (Conn. Sup. April 19, 1999) (*citing Gordon v. Bridgeport Housing Authority*, 208 Conn. 161, 173-177 (1988)).

While some administrative entities have been constituted as separate entities with the power to sue and be sued, police departments have not. See *Gordon*, 208 Conn. at 173; *Levine*, 1999 WL 241734, at *3. This applies for the Section 1983 claims as well as common law negligence. *Id.*, accord, *Foley v. City of Danbury*, No. 3-00-CV-712, (D.Conn. Mar. 9, 2001, Hall, J.) (federal constitutional claims as well as those brought under the ADEA cannot be asserted against a municipal department). Like the court in *Levine*, *supra*, Judge Hall applied this reasoning to the plaintiff's claims in *Foley* based on the ADEA. The same reasoning should be applied here.

Therefore, it is clear that the Danbury Police Department is not a valid legal entity amenable to suit. Any municipal claims, if in fact actually brought by the plaintiff, may only be brought against the City of Danbury.

**2.      Given that the defendant Danbury officers and detectives have no civil rights liability, the City of Danbury is not liable under a *Monell* theory.**

As indicated the above legal argument A(2)(b), the defendant Danbury officers and detectives have no civil rights liability in this matter as there was no violation of a clearly established constitutional right. As a matter of law, this fact negates civil rights liability as to the City of Danbury. In *City of Los Angeles v. Heller*, 475 U.S. 796, 106 S.Ct. 1571 (1986) the United States Supreme Court held "if a plaintiff has suffered no constitutional injury at the hands of the individual police officer, the fact that the

departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." *Id.*, 106 S.Ct. at 1573.

This decision was followed by the U.S. Court of Appeals for the Second Circuit in *Dodd v. City of Norwich*, 827 F.2d 1 (2d Cir. 1987) (original decision of Court reversed upon rehearing) (since individual officer was found not to have violated plaintiff's Fourth Amendment rights, City of Norwich cannot be held liable for a constitutional violation under 42 U.S.C. §1983).

Given that the defendant Danbury detectives and officers have no civil rights liability to the plaintiff, and that the defendant Chief Paquette had no personal involvement in the subject events of the suit, in light of the arguments set forth in preceding sections, as a matter of law the City of Danbury can have no civil rights liability based on a failure to supervise theory.

### 3. The plaintiff fails to state a claim against the City of Danbury based on *Monell v. Dep't of Soc. Servs.*

Even if the Court finds liability on the part of the defendant detectives and officers, the plaintiff has failed to state a *Monell* claim against the City of Danbury. A municipality is subject to liability for the unconstitutional acts of its employees, but only in limited circumstances. Such liability cannot result from a theory of respondeat superior. Instead, it can be imposed only if the acts in question were carried out in execution of a government's policy or custom. It is only when the execution of a municipality's "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the municipality as an entity is responsible under § 1983." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978).

"In short, a municipality can be sued under § 1983, but it cannot be held liable unless a municipal policy or custom caused the constitutional injury." *Leatheran v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166 (1993). To recover against a municipality in a Section 1983 action, the plaintiff must establish that (1) the municipality had a policy or custom that was responsible for the alleged deprivation of constitutional rights, or (2) that a failure of supervision or lack of training is so severe as to reach the level of 'gross negligence' or 'deliberate indifference' to the deprivation of plaintiff's constitutional rights. *Monell* at 691.

40

**a.    The plaintiff has failed to present facts, showing the existence
of a policy within the Danbury Police Department, where
deficient supervision leads to the arrest of individuals
without probable cause.**

Simply put, the plaintiff has not made any proper federal claim against the City

based on *Monell*. None is alleged or plead. It is axiomatic, for a municipality to be

liable under 42 U.S.C. § 1983, the act committed, which caused the violation of rights,

must have been done pursuant to an official custom or policy of the municipality.  *See*

*Monell* at 690; *see also Barrett v. Hardwood*, 189 F.3d 297, 303 (2d Cir. 1999); cert.

denied, 120 S.Ct. 2719 (2000) ("In order to state a § 1983 claim against a municipality,

a litigant must allege that the municipality implemented and adopted a 'policy statement,

ordinance, regulation, or decision' or established or acquiesced in a custom that caused

the unconstitutional activity.") quoting *Monell* at 690-91.  "The official policy must be the

moving force of the constitutional violation."  *Goldberg v. Town of Rocky Hill*, 973 F.2d

70 (2d Cir. 1992), quoting *Monell* at 694.

The plaintiff must allege "some facts that make possible the inference of a policy

giving rise to municipal liability." *Reinaldo Morales & Dynamic Keys v. New York City*

*Police Department*, 97 Civ. 7151, 2000 WL 10436, at *2 438 (S.D.N.Y.); *Perez v.*

*County of Westchester*, 83 F.Supp.2d 435, 438 (S.D.N.Y.), aff'd, 2000 WL 1761097 (2d

Cir. 2000) (complaint dismissed where plaintiff did not include any facts showing the

existence of a policy and did not generally indicate the nature of the policy).  "[P]laintiffs

are required to plead more than conclusory, boilerplate allegations that a 'policy' exists."

*Doherty v. City of Chicago*, 75 F.3d 318, 326 (7th Cir. 1996).  Where, "the plaintiff's sole

complaint against the City is that the defendant officer' conduct… evinces custom,

policy or practice of failing to train, supervise and discipline its officers.  No additional

language addresses the *Monell* claim.  This boilerplate allegation is entirely lacking in

factual support and is thus insufficient." *Cotton v. City of Chicago*,  (N.D. Ill. 2003) (see

attached).

A claim against a municipality is properly dismissed if the plaintiff fails to

specifically allege the existence of a policy that lead to the violation of his constitutional

rights.  *Boman v. City of Middleton* (S.D.N.Y. 2000) presents a situation similar to the

present matter.  In *Boman* the court held that the plaintiff: "has not alleged that any of

41

the Middleton Defendants maintained a policy of arresting individuals without probable cause, or that the supervision or training of Middleton detectives was somehow deficient. Thus, under *Monell*, it would appear that Boman cannot make out a claim against Middleton." *Id*.

The plaintiff has presented absolutely no evidence of any constitutional violation, much less a violation based on a policy, practice or custom or upon the failure to supervise thereof. Absent such evidence, summary judgment is appropriate.

**b.    Plaintiff also fails to show how the alleged failure of supervision is so severe as to reach a level of deliberate indifference.**

The plaintiff also fails to demonstrate the necessary element of deliberate indifference on the part of the municipality. "Just as proof of a custom or practice requires more than a showing of isolated acts, proof of deliberate indifference, generally requires a showing of *more than a single instance* of the lack of training or supervision causing a violation of constitutional rights... Rather, deliberate indifference generally requires that a plaintiff demonstrate at least a pattern of similar violations arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001) (Emphasis provided).

Again, the plaintiff's boilerplate allegation of municipal failure to supervise does not rise to the level of deliberate indifference. Other than the allegation concerning the present matter, the plaintiff does not set forth any other instance in which the City of Danbury failed to supervise in the arrest of an individual, and where such failure resulted in an illegal arrest. (Pl.Comp.)

**C.    The Plaintiff's Claims Against The Defendants In Their Official Capacities Also Fail.**

As stated above, the plaintiff has not specified in his complaint whether he has brought suit against the defendants in their individual or official capacities. Pl.Comp. Even if the plaintiff did so choose to sue the defendants in their official capacity as Chief, officers and detectives of the Danbury Police, such claims would also fail. Such official capacity suits are duplicative of a suit against the municipality. As the Supreme Court held in *Brandon v. Holt*, 469 U.S. 464, 472, 105 S.Ct. 873, 878 (1985), "'official-capacity suits generally represent only another way of pleading an action against an

42

entity of which an officer is an agent'" (*quoting Monell v. Department of Social Services*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2036 (1978)). In other words, "[i]t is not a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099 (1985). Thus, if the claim against the municipality fails, the claim against the employee in his official capacity fails.

### D.    The Defendants Are Protected From A State Constitutional Tort By Qualified Immunity.

The plaintiff has alleged that the defendants' actions violated his rights as established by Article First, §§ 7, 8 and 20 of the Connecticut state constitution. Qualified immunity also insulates the defendants from these claims.

The Connecticut Supreme Court has often looked to federal case law interpreting the Federal Constitution when examining its own Constitution. In fact, the Connecticut Supreme Court expressly analogized the constitutional tort action arising under Article First, §§ 7 and 9, to the that action described by the United States Supreme Court in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 390-7 (1971); *Binette v. Sabo*, 244 Conn. 23, 45-48 (1998); *see also ATC Partnership v. Town of Windham*, 251 Conn. 597, n. 16 (1999).

Given the established precedent, it only makes sense that a state constitutional tort claim should come with an analogous state constitutional qualified immunity defense. Such a defense should be based on federal qualified immunity jurisprudence. Qualified immunity extends to government officials performing discretionary functions. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It has been said that the doctrine strikes a balance "between the need, on one hand, to hold responsible public officials exercising their power in a wholly unjustified manner and, on the other hand, to shield officials responsibly attempting to perform their public duties in good faith from having to explain their actions to the satisfaction of a jury." *Kaminsky v. Rosenblum*, 929 F.2d 922, 924-25 (2d Cir. 1991) *citing Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949). If the Connecticut Supreme Court looks to federal precedent for analogous provisions in that law for guidance interpreting state constitutional issues, it is consistent to conclude that state constitutional torts are properly defended by a state qualified immunity defense.

43

Accordingly, the undersigned defendants incorporate by reference their arguments advanced in Section III. A. 2., *supra*, in support of the present argument that their presence at the execution of the subject arrest was protected by qualified immunity. Thus, if the court concludes that the plaintiffs' federal claims are barred by the doctrine of qualified immunity, the court should grant summary judgment in favor of the undersigned defendants on all of the state constitutional claims for the same reasons.

### E.    The Court Should Decline To Exercise Jurisdiction Over The State Law Claims.

In addition and in the alternative, this Court, having decided that the plaintiff has failed to state valid federal constitutional claims or that defendants are protected by qualified immunity, should decline to exercise jurisdiction over the pendant state constitutional claims, including the claimed violations of Article First, §§ 7, 8 and 20 of the Connecticut constitution. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in the jurisdictional sense, the state claims should be dismissed as well."); *Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir. 1995) (same).

### F.    The Plaintiff Has Failed To State A Claim Under The First, Fifth, Sixth, Eighth, Ninth, Thirteenth, And Fourteenth Amendments Of The Constitution, As Well As Under Title VII.

The plaintiff has also alleged that the defendants' actions violated various rights assigned to the plaintiff under the U.S. Constitution. Specifically, in addition to his Fourth Amendment claims, the plaintiff has claimed violations of the First, Fifth, Sixth, Eighth, Ninth, Thirteenth, and Fourteenth Amendments of the Constitution. The plaintiff has also alleged a violation of Title VII. The defendants are entitled to summary judgment on each and every aforementioned claims, as the plaintiff's additional claims fail as a matter of law.

### 1.    The Plaintiff's Claims Based On The First Amendment Fail As A Matter Of Law.

The plaintiff has alleged in his complaint that his arrest on January 7, 2000 violated his First Amendment rights by "abridging the freedom". Pl. Comp. This

44

allegation of "abridging the freedom" constitutes his sole and single allegation under his First Amendment claim.

The First Amendment guarantees freedom of speech. No where in his complaint does the plaintiff allege that the actions of the defendants violated or endangered his speech rights. The First Amendment is typically plead in the context of an illegal arrest claim, where the plaintiff alleges that his arrest was made in retaliation for the exercise of free speech. Again, the plaintiff has not alleged that the January 7, 2000 arrest was made in retaliation for his exercise of his speech rights. Consequently, the plaintiff has failed to state a claim under the First Amendment.

Even assuming that Mr. Fernandez did, in fact, state a First Amendment claim, the probable cause for his arrest defeats this claim. A plaintiff asserting government conduct in retaliation for the exercise of free speech must demonstrate that: "(i) he has an interest protected by the First Amendment; (ii) the defendant's actions were motivated by or substantially caused by the plaintiff's exercise of that right; and (iii) the defendant's action effectively chilled the exercise of the plaintiff's First Amendment rights." *Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir. 1998). "The Second Circuit has held that a First Amendment claim for retaliation cannot be sustained where there is probable cause for arrest. " *Singer v. Fulton County Sherriff*, 63 F.3d 110, 120 (2d Cir. 1995) (upholding the dismissal of First Amendment retaliation claim: "If the officer ... had probable cause... then we will not examine the officer's underlying motive in arresting and charging the plaintiff").

The plaintiff has failed to demonstrate an interest protected by the First Amendment. He has failed to show that his arrest was motivated by or substantially caused by his exercise of that right. He has failed to show how his arrest chilled the exercise of that right. Furthermore, as demonstrated above, there was probable cause for his arrest. Probable cause defeats his First Amendment claim, if indeed he has actually made such a claim, and therefore the defendants are entitled to summary judgment.

2.    **The Plaintiff's Claims Based On The Fifth Amendment Fail As A Matter Of Law.**

The plaintiff has alleged in his complaint that the execution of the search and his warrantless arrest violated the Fifth Amendment, in that the search and arrest deprived him of "life, liberty or property without due process of law". (Pl. Comp.) As with his First Amendment claim, the plaintiff's allegations under his Fifth claim are equally brief, merely consisting of the allegation that he has been deprived of "life, liberty or property without due process of law." (Pl. Comp.) Accordingly, the plaintiff's claims are properly analyzed under the Fourth Amendment, not the Fifth Amendment.

"Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Chin v. Wilhelm*, page 7 (Md. 2003); citing to *Rich v. United States*, 158 F.Supp.2d 619, 625 (D. Md. 2001). In *Chin*, the court held that "[t]he plaintiffs' claims that Wilhelm conducted an illegal search of Chin's person, business, and vehicles are based on the Fourth Amendment's prohibition against unreasonable searches and seizures. Accordingly, the plaintiffs have no cause of action based on the Fifth Amendment, and summary judgment will be granted for the defendant on this claim." *Chin v. Wilhelm*, page 7. Likewise, in *Westover v. Reno*, 202 F.3d 475 (1st Cir. 2000), the court ruled: "Westover also asserts that her arrest and removal proceedings constitute a violation of due process under the Fifth Amendment. Her constitutional challenge arises from an illegal search and a warrantless arrest, though, and is properly analyzed under the Fourth Amendment." *Id.* at 482.

As in *Chin* and *Westover*, the plaintiff's constitutional challenge, pursuant to the Fifth Amendment, arises from allegations of an illegal search and warrantless arrest. These allegations are based upon the Fourth, rather than the Fifth Amendment, and therefore the defendants are entitled to summary judgment on the plaintiff's Fifth Amendment claim.

### 3.    The Plaintiff's Claims Based On The Sixth Amendment Fail As A Matter Of Law.

The plaintiff has alleged that the defendants' violated his Sixth Amendment rights when they failed to inform him "of the nature and cause of the accusation" at the time of his arrest. Pl. Comp. The Sixth Amendment includes a compact statement of the rights

46

necessary to a full defense: "In all criminal prosecutions, the accused shall enjoy the right...to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense." *U.S. Const. Amend. VI.*

"It has been firmly established that a person's Sixth and Fourteenth Amendment right[s]... attach only *at or after* the time that adversary judicial proceedings have been initiated against him." *Kirby v. Illinois*, 406 U.S. 682, 688, 92 S.Ct. 1877, 1881 (1972) (Emphasis provided). "Adversary judicial criminal proceedings are deemed to have commenced after or at the time of a formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby* at 688. Furthermore, the "Sixth Amendment imposes no duty on an officer to give notice of the charges against the accused at the time of the arrest." *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000). See *Kladis v. Brezek*, 823 F.2d 1014, 1018 (7th Cir. 1987) (Where the police arrested the defendant and took him to the police station without filing charges. Neither the Sixth nor the Fourteenth Amendments afforded Kladis the right to be informed of the reason of his arrest because "the government had not committed itself to prosecution." *Id.* at 1018.)

Likewise, the plaintiff's Sixth Amendment rights in the present matter did not attach at the time of his arrest. The plaintiff has alleged that his rights were violated on January 7, 2000, the day of the search and his arrest. (Pl.Comp.) The plaintiff has not alleged that his rights were violated at or during the time adversary judicial proceedings were initiated against him. (Pl.Comp.) The defendants are therefore entitled to summary judgment on the plaintiff's Sixth Amendment claim.

### 4. The Plaintiff's Claims Based On The Eighth Amendment Fail As A Matter Of Law.

The plaintiff has alleged in his complaint that the defendant officers and detectives violated the Eighth Amendment when they arrested the plaintiff. The plaintiff further alleges that the defendants exhibited "deliberate indifference" in: (1) arresting the plaintiff when they were aware that the plaintiff's name was not cited in the warrant; (2) arresting the plaintiff without probable cause, being aware that they were committing constitutional violations. (Pl. Comp.)

47

"The Eighth Amendment protections against cruel and unusual punishment do not apply until after conviction and sentence. Since the alleged excessive force occurred during plaintiff's arrest, there is no Eighth Amendment claim applicable here." *Graham v. Connor*, 490 U.S. 386, 392 (1989). See also *Roberts v. City of Troy*, 773 F.2d 720 (6th Cir. 1985) ("The Eighth Amendment does not apply to pretrial detainees. Id. at 723).

The Eighth Amendment simply does not apply to the present matter. The scope of the plaintiff's complaint is only concerned with the date of the arrest, January 7, 2000. Therefore, the plaintiff's Eighth Amendment rights are not triggered by any of the allegations within this complaint.

### 5.    The Plaintiff's Claims Based On The Ninth Amendment Fail As A Matter Of Law.

The plaintiff has claimed a violation of his Ninth Amendment rights. The sole allegation accompanying this claim in his complaint is: "ban deny or disparage of rights retained by the people." Pl. Comp.

"The Ninth Amendment acts as a savings clause for the Constitution's Bill of Rights." *Richmond Newspapers v. Virginia*, 448 U.S. 555, 579, 100 S.Ct. 2814 (1980). "In essence the Ninth Amendment was intended to protect those rights that were not expressly guaranteed in other parts of the Bill of Rights." *DeMarco v. Cuyahoga County Dep't of Human Servs.*, 12 F.Supp.2d 715, 723 (N.D. Ohio 1998). Courts have granted summary judgment where the plaintiff alleges a violation of the Ninth Amendment, yet fails to identify any right that has been reserved to individuals or the public. *City of Roseville v. Norton*, 219 F.Supp.2d 130, 154 (D.C. 2000).

Furthermore, "[c]ourts that have addressed the issue of whether the Ninth Amendment can serve as a basis for a § 1983 claim have unanimously held in the negative." See *Rose v. Zillioux* (N.D.N.Y. 2001) As the court explained in *Strandberg v. City of Helena*, 791 F.2d 744 (9th Cir. 1986):

> "[I]t has been argued that the ninth amendment protects rights not enunciated in the first eight amendments, ... the ninth amendment has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim... The Supreme Court has repeatedly voiced concern that a section 1983 claim be based on a specific constitutional guarantee."

48

*Id.* at 748.

In the present matter the plaintiff has not stated what specific right under the Ninth Amendment was violated by the defendants' actions. Furthermore, the present matter constitutes a § 1983 civil rights claim, and therefore the plaintiff may not bring a claim under the Ninth Amendment. The defendants are entitled to summary judgment on the plaintiff's Ninth Amendment claim.

### 6.     The Plaintiff's Claims Based On The Thirteenth Amendment Fail As A Matter Of Law.

The plaintiff has alleged that the January 7, 2000 arrest violated his Thirteenth Amendment right to be free from involuntary servitude. The plaintiff merely alleges a violation of the Thirteenth Amendment in his complaint. (Pl.Comp.) The plaintiff has failed to set forth any factual allegations as a basis for making this claim.

In relevant part, the Thirteenth Amendment provides: "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. Amend. XIII. "A condition of involuntary servitude exists only where the victim has no available choice but to work or be subject to legal sanction." *United States v. Kozminski*, 487 U.S. 931, 943 (1987). "The Thirteenth Amendment reveals that there are two elements which are necessary for a court to conclude that involuntary servitude has occurred: (1) one person providing work or services to another; (2) under some type of compulsion or coercion." *Id.*

It is unclear how or why the defendants' actions amount to a violation of the plaintiff's right to be free from involuntary servitude. Unlike the typical case in which a prisoner alleges that the requirement that he work while incarcerated constitutes involuntary servitude within the purview of the Thirteenth Amendment, the plaintiff in this case has failed to come forward with any facts suggesting that he worked for the defendants in any capacity, much less that such labor was compelled by physical coercion or force. "Accordingly, because plaintiff has provided absolutely no evidence giving rise to a Thirteenth Amendment claim, and further because the court is unable to discern a factual basis for any such claim from any of the papers submitted by the

49

plaintiff to this court, defendants are entitled to summary judgment with respect to plaintiffs Thirteenth Amendment claim." *Brown v. Dietz*, (Kan. 2000)(See **Attached**).

### 7.    The Plaintiff's Claims Based On The Fourteenth Amendment Fail As A Matter Of Law.

The plaintiff also claims that the defendants' actions violated his right to substantive due process guaranteed by the Fourteenth Amendment. After a review of the applicable law, it is apparent that the plaintiff's claims in this regard fail as a matter of law as well.

The controlling precedent for a substantive due process claim is the Supreme Court's decision in *Sacramento v. Lewis*, 523 U.S. 833 (1998). In that case, the Court examined the fifty-year history of the "shocks-the-conscience" test first established in *Rochin v. California*, 342 U.S. 165 (1952). The Court reiterated, "the substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Id*. at 847, *quoting Collins v. Harker Heights*, 503 U.S. 115, 128 (1992). Conduct shocks the conscience where it is so brutal and offensive that it does not comport with traditional ideas of fair play and decency. *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957). Thus, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Sacramento v. Lewis*, at 848, n.8. "If it does not meet that test, the claim fails on that account, with no need to inquire into the nature of the asserted liberty interest." *Hawkins v. Freeman*, 195 F.3d 732, 738 (4th Cir. 1999).

The genesis of the shocks-the-conscience test was *Rochin*, in which evidence was forcibly extracted from the plaintiff's stomach through the use of a "stomach pump." *Rochin*, 342 U.S. at 166. The Court was "compelled to conclude that the proceedings by which [the] conviction was obtained do more than offend some fastidious squeamishness or private sentimentalism about combating crime too energetically. This is conduct that shocks the conscience." *Id*. at 172. Since *Rochin*, courts have generally found conscience shocking conduct "only where the state actors engaged in extreme or intrusive physical conduct." *Brown v. Hot, Sexy & Safer Productions, Inc.*, 68 F.3d 525 (1st Cir. 1995), *quoting, Souza v. Pina*, 53 F.3d 423, 427 (1st Cir. 1995). For example,

conscience shocking conduct was found in *Rogers v. Little Rock*, 152 F.3d 790 (8th Cir. 1998) (Plaintiff raped by police officer), *Harrington v. Almy*, 977 F.2d 37 (1st Cir. 1992) (Suspended police officer required to undergo a penile plethysmograph as a condition of reinstatement) and *Johnson v. Newburgh Enlarged School District*, 239 F.3d 246 (2nd Cir. 2001) (Gym teacher maliciously and sadistically assaulted student).

Certainly, the conduct complained of by the plaintiff does not, as a matter of law, shock the contemporary conscience. The defendant Danbury officers and detectives merely arrested the plaintiff incident to the execution of a search warrant. The plaintiff's complaint merely alleges that the defendant's arrested him without first obtaining an arrest warrant. Pl.Comp. Furthermore, the defendants are protected by Qualified Immunity (see above Legal Argument A(2)).

### 8. The Plaintiff's Claims Based On Title VII Fail As A Matter Of Law.

The plaintiff claims that the defendant officers and detectives violated Title VII because his arrest was based on his description as a Hispanic man with a scar on his face. Pl.Comp. The plaintiff misapplies Title VII. Title VII addresses racial discrimination in the context of *employment*. To establish a prima facie case of retaliation under Title VII, a plaintiff must show: (1) that she was engaged in protected activity by opposing a practice made unlawful by Title VII; (2) that the employer was aware of that activity; (3) that she suffered adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998); see *McMenemy v. City of Rochester*, 241 F.3d 279, 282-83 (2d Cir. 2001). The plaintiff in the present matter has not set forth a prima facie case for retaliation. Indeed, the plaintiff's claim is not related in any way with employment. Consequently, the defendants are entitled to summary judgment on the plaintiff's Title VII claim.

## IV.    CONCLUSION

WHEREFORE, for the aforesaid reasons, the defendants request that the Court grant them summary judgment on all claims in the plaintiff's complaint.

DEFENDANTS,
CHIEF ROBERT PAQUETTE,
DETECTIVE SGT. FISHER,
DETECTIVE RAMOS,
DETECTIVE JOHN MERULLO,
DETECTIVE JOHN KRUPINSKY,
DETECTIVE MARK TROHALIS,
OFFICER KARL MURPHY
OFFICER SELNER and
OFFICER RIOLO

By _____
Thomas R. Gerarde
ct05640
Eric D. Eddy
ct25242
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT  06114
(860) 249-1361
(860) 249-7665 (Fax)
E-Mail: tgerarde@hl-law.com
E-Mail: eeddy@hl-law.com

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following pro se party this 26th day of January, 2004.

Luis Fernandez
Inmate Number 279900
Connecticut Correctional Institution
900 Highland Avenue
Cheshire, CT  06410

_____
Thomas R. Gerarde