United States District Court

FILED
2004 JAN 30  A II: 59
US DISTRICT COURT
BRIDGEPORT CT

## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

LUIS FERNANDEZ : PRISONER
: NO.: 3:02CV2090 (JBA)(JGM)
v. :
:
CHIEF ROBERT PAQUETTE, ET AL : JANUARY 26, 2004

### DEFENDANTS' LOCAL RULE 56(a)1 STATEMENT

Defendants Chief Robert Paquette, Detective Sgt. Fisher, Detective Ramos, Detective John Merullo, Detective John Krupinsky, Detective Mark Trohalis, Officer Karl Murphy, Officer Selner and Officer Riolo respectfully submit the following statement of undisputed, material facts and contend that there exists no genuine issue to be tried.

1. This matter arises out the January 7, 2000 arrest of the plaintiff, Luis Fernandez, incident to the execution of a search warrant for the person of Angel Ramirez and for a second-floor apartment located at 128 Osborne Street, Danbury, Connecticut.

2. The warrant, issued at Danbury Superior Court upon the review and signature of a neutral magistrate on January 6, 2003, specifically lists the place to be searched as the second floor apartment located at 128 Osborne residence. (See January 6, 2000 Affidavit and Application and Search and Seizure Warrant, signed by Affiants Detective Mark Trohalis and Detective John Merullo, and by a neutral magistrate of the Danbury Superior Court, attached as **Exhibit A**). The warrant also names one 'Angel

Ramirez' under that portion of the warrant entitled "search the person described in the foregoing affidavit and application, to wit". (**Exhibit A**).

3. The aforesaid January 6th warrant was the product of a five-month investigation, initiated on July 28, 1999, and thoroughly documented, as evidenced in the Affidavit and Application for the warrant. (**Exhibit A**).

4. The defendant Chief of the Danbury Police Department, Robert Paquette, did not have any official/unofficial involvement in the five-month investigation, in the application process for the search warrant, nor in the actual execution of the search warrant on January 7, 2000. (**Affidavit of Chief Robert Paquette**).

5. During the five-month investigation, members of the Danbury Police Department, including the defendants, Detective Mark Trohalis and Detective John Merullo, retained the services of two confidential informants, reliable and known to the defendant police for several years, to monitor the sale of cocaine from the 128 Osborne Street apartment. (**Exhibit A**, ¶¶ 3,8).

6. During the course of the investigation, using the services of the two aforesaid reliable, confidential informants, the defendant police officers and detectives made five controlled purchases of cocaine from Angel Ramirez and Luis Fernandez, the last purchase occurring just prior to the execution of the warrant. Three of these controlled purchases involved Angel Ramirez. Four of these controlled purchases involved Luis Fernandez. During several of these controlled purchases, both Mr. Fernandez and Mr. Ramirez jointly conducted the sale of cocaine. (**Exhibit A**).

7. On many occasions during the investigation, the informants and defendant detectives and police officers observed both Luis Fernandez and Angel Ramirez, exiting and entering the 128 Osborne residence. (**Exhibit A**).

8. The plaintiff admits in his complaint that he ate and slept at the second floor apartment at 128 Osborne Street, and that he kept his personal effects in the attic bedroom of that apartment. (Plaintiff's Complaint, **Pl.Comp.**, page 8)

9. The investigation was initiated on July 28, 1999, when Detective Trohalis met with the first informant, 'Informant #1'. Informant #1 told Detective Trohalis that he had personal knowledge that a Hispanic male, known to Informant #1 as "Sandy", was currently selling cocaine in the city of Danbury. (**Exhibit A**, ¶3.). He also stated that "Sandy" worked with a partner, known to Informant #1 as "Alex", and that both men conducted the sale of cocaine through use of the same pager, pager number 289-4343 ('the pager number'). (**Exhibit A**, ¶3.).

10. Informant #1 also told Detective Trohalis that he had purchased cocaine from "Sandy" and "Alex" on numerous prior occasions during the recent past. (**Exhibit A**, ¶3).

11. Detective Trohalis asked Informant #1 to make a controlled purchase of cocaine from "Sandy" and "Alex" on the same date, July 28, 1999. (**Exhibit A**, ¶¶ 3,4).

12. Detective Trohalis observed Informer #1 dial the pager number. A short time later, Informant #1 received a telephone call from "Sandy". "Sandy" directed Informant #1 to meet him at a location in approximately fifteen (15) minutes. (**Exhibit A**, ¶ 4).

13. Informant #1 went to the meet location and waited for the arrival of "Sandy". Informant #1 was under constant surveillance by Detectives Trohalis and Ramos during the entire controlled purchase. (**Exhibit A**, ¶ 4).

14. After a short time a brown Honda Accord, bearing Connecticut registration 388NJY (hereinafter referred to as 'the Honda'), arrived at the designated meet location. After speaking with a Hispanic male in the front passenger seat Informant #1 walked away from the vehicle and left the location. Informant #1 then met with Detective Trohalis and turned over a prepackaged quantity of white powder. (**Exhibit A**, ¶¶ 4,5).

15. The informant stated that "Alex" was driving the Honda and that "Sandy" was in the passenger seat of the Honda. (**Exhibit A**, ¶ 5).

16. Detective Trohalis field tested the packaged white powder and determined that it was cocaine. Detective Trohalis sent the package to the State Toxicology Lab for further testing. (**Exhibit A**, ¶ 6).

17. During the third week of October 1999, Detective Trohalis met with the second informant, Informant #2. Informant #2 had been known to Detective Trohalis and other members of the Danbury Police Special Investigation Unit for more than nine years. During these nine years, Informant #2 has provided information that later proved true and accurate during the course of investigation. (**Exhibit A**, ¶ 8).

18. Informant #2 also told Detective Trohalis that he had personal knowledge that a Hispanic male, known to informant #2 as "Sandy", was currently selling cocaine within

the City of Danbury, and lives in the area of Osborne Street, Danbury. Informant #2 also told Detective Trohalis that "Sandy" was assisted in the sale of cocaine by a Hispanic male known to Informant #2 as "Alex". (**Exhibit A**, ¶8).

19.  Informant #2 told Detective Trohalis that "Sandy" and "Alex" utilize a telephone pager, number 289-4343, in the sale of cocaine. (**Exhibit A**, ¶ 8).

20. Informant #2 told Detective Trohalis that "Sandy" drove a white sports utility vehicle, and that "Alex" drove a brown, Honda Accord. (**Exhibit A**, ¶ 8).

21. Informant #2 told Detective Trohalis that he had recently purchased cocaine from both "Sandy" and "Alex" on several prior occasions. (**Exhibit A**, ¶ 8).

22. Detective Trohalis met with Informant #2 a second time during the third week of October, 1999. On October 22, 1999, at this second meeting, Detective Trohalis asked Informant #2 to make a controlled purchase of cocaine from either "Sandy" or "Alex". (**Exhibit A**, ¶ 9).

23. Detective Trohalis observed Informant #2 dial the pager number, and also observed Informant #2 receive a return call from a man identified by Informant #2 as "Sandy". (**Exhibit A**, ¶ 9).  Informant #2 stated that it was routine for "Sandy" to not discuss money or amounts of cocaine over the phone. (**Exhibit A**, ¶ 9).  "Sandy" directed Informant #2 to go to a location in Danbury and wait for him to arrive. (**Exhibit A**, ¶ 9).

24.  Detective Trohalis placed Informant #2 under constant surveillance, as he traveled to the meet location, and while Informant #2 was involved in the arranged meeting. (**Exhibit A**, ¶ 10).

25.  After waiting a short time, a white sports utility vehicle, bearing Connecticut dealer registration XP97, arrived at the location and pulled up to Informant #2.  (**Exhibit A**, ¶ 10).  Detective Trohalis observed Informant #2 lean into the driver's side window of the SUV and speak to the operator of the SUV.  Detective Trohalis also had a clear, unobstructed look at the operator of the SUV as the SUV left the scene.  (**Exhibit A**, ¶ 10).

26.  After the meeting, Informant #2 met with Detective Trohalis and turned over a clear, plastic bag, containing a white substance.  Informant #2 told Detective Trohalis that he had just concluded the purchase of cocaine from "Sandy".  (**Exhibit A**, ¶ 10).

27. Detective Trohalis then drove with Informant #2 to Osborne Street.  Detective Trohalis observed the white SUV, bearing dealer registration XP97, arrive at the 128 Osborne Street address.  He also observed the operator, a heavy set Hispanic male with closely shorn hair, park the SUV and walk-up a rear, exterior stairway and enter the second floor apartment.  (**Exhibit A**, ¶ 11).

28. Detective Trohalis also conducted a field test on the white powder in the clear plastic bag.  The white powder tested positive for cocaine.  (**Exhibit A**, ¶ 12).  Detective Trohalis sent the cocaine to the State Toxicology Lab for further testing.  (**Exhibit A**, ¶ 12).

29. Detective Trohalis and Detective Merullo checked the Danbury Police records during the last week of October, 1999, to determine whether there were any incidents reported at the second floor apartment of the 128 Osborne residence. The detectives uncovered an incident report, numbered 99-21229 and dated July 11, 1999, reporting the arrest of one Angel E. Ramirez for Breach of Peace and Interfering with the duties of a Police Officer, while responding to a complaint by Moya Mercedez, Mr. Ramirez's girl-friend. (**Exhibit A**, ¶ 13).

30. Detective Trohalis again met with Informant #2 during the last week of October, 1999. Detective Trohalis presented Informant #2 with a photograph of Angel Ramirez. Informant #2 identified Mr. Ramirez as "Sandy". (**Exhibit A**, ¶ 14).

31. Detective Trohalis met with Informant #2 during the first week of November, 1999. On November 3, 1999 Detective Trohalis asked Informant #2 to make another controlled purchase of cocaine from either "Sandy" or "Alex". (**Exhibit A**, ¶ 15).

32. Informant #2 again contacted "Sandy" by means of the pager # 289-4343, and "Sandy" informed Informant #2 that "Alex" would meet with him at a location in Danbury. (**Exhibit A**, ¶ 15).

33. Detective Trohalis and Danbury Police Officer Chapman kept Informant #2 under constant surveillance as he proceeded to the meet location, and while Informant #2 was at the meet location. (**Exhibit A**, ¶ 15).

34. Detective Trohalis and Officer Chapman observed the Honda drive to the meet location, and watched as Informant #2 walked-up to the driver's side window and speak to the Honda's operator. (**Exhibit A**, ¶ 15).

35. After the Honda left the meet location, Informant #2 met with Detective Trohalis and turned over a prepackaged quantity of white powder/rock-type substance. (**Exhibit A**, 15). Informant #2 stated that he had purchased the substance from "Alex", and that "Alex" had several small packages of cocaine on his person at the time of the sale. (**Exhibit A**, ¶ 15).

36. Informant #2 described "Alex", to Detective Trohalis, as, "a Hispanic male, thin build, approximately 160 lbs, approximately 5'6" tall, approximately 23 years of age, clean shaven, usually wears a baseball hat and has a large scar on the left cheek of his face." (**Exhibit A**, ¶ 17).

37. Detective Trohalis conducted a field test on the substance and obtained a positive reaction for cocaine. The cocaine was packaged and sent to the State toxicology Lab for further analysis. (**Exhibit A**, ¶ 16).

38. During the investigation, Detective Trohalis and Detective Merullo had been conducting surveillance of the 128 Osborne residence during both day and night hours. Detective Trohalis and Detective Merullo frequently observed both the Honda and the white Nissan Pathfinder, bearing dealer registration XP97, parked in the driveway to the 128 Osborne residence. (**Exhibit A**, ¶ 18).

39. Detective Merullo frequently observed a heavy set Hispanic male exit the second floor apartment of the128 Osborne residence and drive off in the white SUV, bearing dealer registration XP97.  (**Exhibit A**, ¶ 18).

40.  Detective Merullo also frequently observed a small Hispanic male enter and exit the second floor apartment of the 128Osborne residence, and operate both the Honda and the white Nissan Pathfinder, bearing dealer registration XP97.  (**Exhibit A**, ¶18).

41.  Detective Trohalis decided to make yet another controlled purchase, and met with Informant #1 during the second week of November, 1999, and asked Informant #1 to make a controlled purchase of cocaine from either "Sandy" or "Alex".  (**Exhibit A**, ¶ 19).

42.  Detective Trohalis observed Informant #1 dial telephone pager #289-4343, using a Danbury Police telephone. A short time later, Informant #1 received a return call from "Alex".  (**Exhibit A**, ¶ 19).

43.  "Alex" directed Informant #1 to meet at a certain location in Danbury, this time in close proximity to the 128 Osborne residence.  (**Exhibit A**, ¶ 19).

44. Informant #1 told Detective Trohalis that it was routine for "Alex" to withhold all discussion of money or amounts of cocaine while on the telephone.  (**Exhibit A**, ¶ 19).

45. At this time, Detective Merullo established surveillance of the 128 Osborne residence.  He observed both the white Nissan Pathfinder, bearing dealer registration

XP97, and the Honda parked in the driveway of the 128 Osborne Street address. (**Exhibit A**, ¶ 19).

46. At this time, Detective Merullo further identified the white SUV, bearing dealer registration XP97, as being a Nissan Pathfinder.  (**Exhibit A**, ¶ 19).

47. Detective Trohalis kept Informant #1 was under constant surveillance while he proceeded to the meet location, and while at the meet location.  (**Exhibit A**, ¶ 20).

48. While Informant #1 was en route to the meet location, Detective Merullo observed a small, thin Hispanic male leave the second floor apartment of the 128 Osborne residence and enter the white Nissan Pathfinder, bearing dealer registration XP97. (**Exhibit A**, ¶ 20).

49. Detective Merullo kept the white Nissan Pathfinder, bearing dealer registration XP97, under constant surveillance as it traveled to the meet location from the 128 Osborne Street residence.  (**Exhibit A**, ¶ 20).

50. Detective Trohalis and Detective Merullo observed the meeting between Informant #1 and the operator of the white Nissan Pathfinder, bearing dealer registration XP97. SUV, and observed Informant #1 lean into the driver's side window of the SUV and speak to the SUV's operator.  (**Exhibit A**, ¶ 20).

51. As the white Nissan Pathfinder, bearing dealer registration XP97, left the scene of the meet location, Detective Trohalis obtained a clear, unobstructed look at the

operator. Detective Trohalis recognized the operator as the man known to Informant #1 as "Alex". (**Exhibit A**, ¶ 20).

52. After the meeting, Informant #1 met with Detective Trohalis and turned over a clear plastic bag, containing a white powdered substance. (**Exhibit A**, ¶ 20).

53. Detective Trohalis field-tested the white powdered substance, and obtained a positive reaction for cocaine. Detective Trohalis packaged the cocaine and sent it to the State Toxicology lab for further analysis. (**Exhibit A**, ¶ 21).

54. Informant #1 told Detective Trohalis that "Alex" sold the cocaine to Informant #1. (**Exhibit A**, ¶ 20).

55. On November 23, 1999, the defendant detectives and officers obtained a search and seizure warrant, upon review by a neutral magistrate, for the Honda, the white Nissan Pathfinder, bearing dealer registration XP97, the second floor apartment at 128 Osborne Street, Danbury, and for the person of Angel Ramirez. (**Exhibit A**, ¶ 22).

56. Prior to executing the November 23, 1999 warrants, Detective Trohalis and Detective Merullo conducted several surveillances of the 128 Osborne residence. During these surveillances, the defendants did not observe either the white Nissan Pathfinder, bearing dealer registration XP97, or the Honda parked at the 128 Osborne residence. Instead, they observed both "Sandy" Angel Ramirez and "Alex" operating a green Plymouth Breeze, bearing Vermont registration CFF732 ('the Plymouth Breeze'). (**Exhibit A**, ¶ 22).

57.  Detective Trohalis and Detective Merullo observed both "Sandy" and "Alex" coming and going from the second floor apartment at 128 Osborne Street, Danbury. (**Exhibit A**, ¶ 22).

58.  Detective Trohalis and Detective Merullo conducted a registration check of the Plymouth Breeze and determined that the vehicle was registered to "ELRAC Inc." of 155 Polyfly Road, Hackensack, New Jersey.  The defendants believe, based on the registration information, that the Plymouth Breeze was a leased or rental vehicle, being temporarily used by "Sandy" and "Alex", the targets of the investigation. (**Exhibit A**, ¶ 23).

59.  Detective Trohalis and Detective Merullo concluded "Alex" and "Sandy" had changed vehicles in order to avoid detection by Law Enforcement. This conclusion was based on the defendants' training and experience, and their knowledge that drug traffickers use different methods to avoid detection by Law Enforcement, and that one such method is to routinely rent vehicles for short periods of time.  (**Exhibit A**, ¶ 24).

60.  Detectives Trohalis and Merullo decided not to execute the November 23, 1999 warrants because "Sandy" and "Alex" had altered their drug-trafficking operation, and therefore the defendants wished to continue their investigation.  (**Exhibit A**, ¶ 24).

61.  Detective Trohalis met with Informant #1 during the first week of January, on January 3, 2000, and asked Informant #1 to perform a controlled purchase of cocaine from either "Sandy" or "Alex".  (**Exhibit A**, ¶ 25).

62.  Informant #1 placed a call to pager # 289-4343, and was answered by "Sandy". "Sandy" directed Informant #1 to go to a location, where he could purchase a quantity of cocaine.  (**Exhibit A**, ¶ 25).

63.  Detective Trohalis searched Informant #1 for drugs and money and none were found.  Detective Trohalis provided Informant #1 with a sum of Danbury Police evidence money to purchase a quantity of cocaine.  (**Exhibit A**, ¶ 25).

64. Detective Trohalis, Detective Merullo and Detective Ramos kept Informant #1 under constant surveillance as he proceeded to the meet location.  (**Exhibit A**, ¶ 25).

65. Just prior to Informant #1's arrival at the meet location, Detectives Trohalis, Merullo and Ramos observed a white Nissan Pathfinder, now bearing Connecticut registration 569NVH, waiting at the meet location.  (**Exhibit A**, ¶ 25).

66. Detectives Trohalis, Merullo and Ramos observed a meeting take place between Informant #1 and the persons in the white Nissan Pathfinder, CT registration 569NVH. (**Exhibit A**, ¶ 25).

67.  Detective Merullo, Detective Ramos and Officer Murphy, maintained surveillance of the white Nissan Pathfinder, CT registration 569NVH, and observed the vehicle leave the meet location and travel back to the 128 Osborne residence. (**Exhibit A**, ¶ 25).

68.  Detective Merullo observed two Hispanic males enter the second floor apartment of the 128 Osborne Street address.  (**Exhibit A**, ¶ 25)  Detective Merullo recognized,

and had previously identified these two males as Angel "Sandy" Ramirez and as "Alex". (**Exhibit A**, ¶ 25).

69. Detective Trohalis met with Informant #1 after the controlled drug purchase. Informant #1 turned over one clear plastic bag, filled with a white powdered substance. (**Exhibit A**, ¶ 26). Detective Trohalis searched Informant #1 for additional drugs and money and none were found. (**Exhibit A**, ¶ 26).

70. Detective Trohalis field-tested the white powdered substance, and a positive reaction for cocaine was obtained. The cocaine was packaged and sent to State Toxicology for further analysis. (**Exhibit A**, ¶ 26).

71. Informant #1 told Detective Trohalis that he had met with "Sandy" and "Alex", that "Sandy" was driving, and that "Alex" was seated in the front passenger seat of the white Nissan Pathfinder, bearing Connecticut registration 569NVH. (**Exhibit A**, ¶ 26). Informant #1 also told Detective Trohalis that "Alex" was holding the cocaine, and that he handed the cocaine over to "Sandy", who then sold the cocaine to Informant #1. (**Exhibit A**, ¶ 26).

72. Prior to the execution of the January 6, 2000 warrants, the defendants had conducted numerous surveillances of the 128 Osborne residence, and had observed the white Nissan Pathfinder, bearing Connecticut registration 569NVH, parked at the 128 Osborne residence during various times of the day, night and early morning hours. (**Exhibit A**, ¶ 27). The defendants had also observed both "Alex" and "Sandy" operating this vehicle. (**Exhibit A**, ¶ 27).

73. The defendant detectives conducted a check with the Connecticut Department of Motor Vehicles on the CT registration 569NVH.  At the time of the January 6, 2000 application for the warrants, the Department of Motor Vehicles did not have any information on this registration.  (**Exhibit A**, ¶ 28).

74.  Detective Trohalis and Detective Merullo applied for search and seizure warrants for the second-floor apartment at 128 Osborne Street, Danbury, and for the person of Angel Ramirez on January 6, 2000.  (**Exhibit A**, ¶ 29).

75.  In their January 6, 2000 application and affidavits, Detective Trohalis and Detective Merullo submitted that based on their five-month investigation, they believed probable cause existed that Angel Ramirez, also known as "Sandy", was selling cocaine in the City of Danbury.  (**Exhibit A**, ¶ 29).

76.  Detective Trohalis and Detective Merullo believed that probable cause existed that a Hispanic male known as "Alex", being 5"6 tall, thin build, and having a scar on his left cheek, was selling cocaine in the City of Danbury.  (**Exhibit A**, ¶ 29).

77.  Detective Trohalis and Detective Merullo believed that probable cause existed that "Alex" and Angel Ramirez were currently selling cocaine *together*, in the City of Danbury, in violation of Connecticut General Statutes §21a-279(a), the Possession of Cocaine, and Connecticut General Statutes §211-278(b), the Possession of Cocaine with Intent to Sell.  (**Exhibit A**, ¶ 29) (Emphasis provided).

78. Detective Trohalis and Detective Merullo also believed that probable cause existed that Angel "Sandy" Ramirez and "Alex" used a telephone pager number, #289-4343, to facilitate the sale of cocaine. (**Exhibit A**, ¶ 29).

79. Detective Trohalis and Detective Merullo believed that probable cause existed that "Alex" and Angel "Sandy" Ramirez used a white Nissan Pathfinder SUV, Connecticut registration 569NVH, to make deliveries of cocaine. (**Exhibit A**, ¶ 29).

80. Detective Trohalis and Detective Merullo believed that probable cause existed that the second-floor apartment at 128 Osborne Street, Danbury, CT was the residence of Angel Ramirez, and was used as a safe location to store cocaine and monies from drug transactions. (**Exhibit A**, ¶ 29).

81. A neutral magistrate of the Danbury Superior Court *found probable cause* for the issuance of the January 6, 2000 affidavit, and signed and approved the search and seizure warrants for the second-floor apartment at 128 Osborne Street, and for the person of Angel Ramirez, on January 6, 2000. (**Exhibit A**) (Emphasis provided).

82. The plaintiff admits in his complaint that "the warrant for this investigation were obtained January 6, 2000, after review by a Judge at the Danbury Superior Court." (**Pl. Comp.**, page 5).

83. The neutral magistrate also found that "to deliver a copy of this affidavit to the owner, occupant, or person named herein, would jeopardize the personal safety of the person or informant named within this affidavit, and in addition, would reveal the

16

methods of investigation that could jeopardize any future investigation related to this target." (**Exhibit A**).

84.  The January 6, 2000 warrants also authorize the search and seizure of "cocaine, white powdered substances, cutting agents for narcotics, grinders, packaging materials, weighing scales, strainers, U.S. currency, all financial records, safes, documentation of residence, records of identification, records of drug transactions, telephone pagers, and police scanners." (**Exhibit A**).

85.  The search and seizure warrant was executed on January 7, 2000.  Detective Sgt. Fisher, Detective Ramos, Detective Merullo, Detective Krupinsky, Detective Trohalis and Officer Karl Murphy established surveillance of the 128 Osborne Street second-floor apartment at approximately 4:00 p.m.  (Arraignment Report and Affidavit, signed by Detective Mark Trohalis, attached as **Exhibit B**, page 1 of 3).

86.  During the surveillance, Detective Merullo had a clear, unobstructed view of the driveway to the 128 Osborne residence.  (**Exhibit B**, page 1 of 3).  Shortly after setting up surveillance, Detective Merullo observed the white Nissan Pathfinder, bearing Connecticut registration 569NVH, arrive and park in the driveway at 128 Osborne Street.  (**Exhibit B**, page 1 of 3).

87.  Detective Merullo observed a small, thin Hispanic male, with a scar on his face, operating the white Nissan Pathfinder.  (**Exhibit B**, page 1 of 3).  This male had previously been identified as "Alex" during the investigation.  (**Exhibit B**, page 1 of 3) "Alex" was later identified as Luis Fernandez.  (**Exhibit B**, page 1 of 3).

88.  Detective Merullo observed "Alex" speaking on a cellular telephone, as he exited the white Nissan Pathfinder.  (**Exhibit B**, page 1 of 3).  Detective Merullo also observed "Alex" enter the second-floor apartment.  (**Exhibit B**, page 1 of 3).

89. Detective Merullo maintained surveillance, and observed two Hispanic males exit the second-floor apartment a short time later.  (**Exhibit B**, page 1 of 3).  The two Hispanic males were identified as Angel Ramirez and as "Alex", later identified as Luis Fernandez.  (**Exhibit B**, page 1 of 3).

90.  Mr. Ramirez entered the operator's seat, and "Alex" entered the passenger seat of the white Nissan Pathfinder.  (**Exhibit B**, page 1 of 3). The defendants maintained surveillance on the white Nissan Pathfinder as it left the 128 Osborne residence. (**Exhibit B**, page 1 of 3).

91.  The defendants observed the white Nissan Pathfinder turn onto Tamarack Avenue, Danbury, CT.  At this point the defendants decided to execute the search and seizure warrant for Angel Ramirez.  (**Exhibit B**, page 2 of 3).

92. The defendants stopped the white Nissan Pathfinder on Tamarack Avenue. (**Exhibit B**, page 2 of 3)  The white Nissan Pathfinder was stopped at 4:30 p.m. (See Special Investigations Division, Evidence table, complied by Detective John Krupinsky, and authenticated by the attached Affidavit of John Krupinsky.  Both the table and authenticating affidavit have been collectively attached as **Exhibit C**, item #1).  The plaintiff was patted down for weapons and/or contraband.  No items were taken from the plaintiff's person at this time. (Affidavit of Detective Trohalis attached as **Exhibit D**).  Both Mr. Ramirez and "Alex" were detained at this time.  (**Exhibit B**, page 2 of 3).

93. The defendants took the keys from the ignition of the white Nissan pathfinder, and obtained a key to the second-floor apartment at 128 Osborne Street. (**Exhibit B**, page 2 of 3; **Exhibit D**).

94. The detectives also noticed that Mr. Ramirez and "Alex" had a cellular telephone in their possession. (**Exhibit B**, page 3 of 3).

95. Detective Trohalis, Detective Krupinsky, Detective Merullo, and Detective Sgt. Fisher immediately left the white Nissan Pathfinder on Tamarack Avenue, and went to the 128 Osborne residence to execute the search warrant for the second-floor apartment. (**Exhibit B**, page 2 of 3, **Exhibit D**).

96. Officers Selner, Riolo and Murphy remained with Mr. Ramirez, Mr. Fernandez and the white Nissan Pathfinder in the lot of a nearby Mobil station. (**Exhibit D**).

97. The Detectives Trohalis, Krupinsky, Merullo, and Fisher used the key obtained from the ignition to open the door to the apartment at approximately 4:49 p.m. (**Exhibit B**, page 2 of 3, **Exhibit D**).  No other persons were present in the second-floor apartment at the time of the warrant's execution. (**Exhibit B**, page 2 of 3).

98. The second-floor apartment was found to consist of a kitchen, living room, a bedroom, bathroom, and an attic bedroom.  The bedroom was located off of the kitchen.  The attic bedroom was accessed by a stair from the bathroom. (**Exhibit B**, page 2 of 3; **Exhibit D**; Affidavit of John Merullo attached as **Exhibit E**).

99. The attic bedroom was found to be the bedroom occupied by Luis Fernandez. (**Exhibit B**, page 2 of 3; **Exhibit D**; **Exhibit E**).

100. The defendants designated Detective Krupinsky as the evidence officer. (**Exhibit B**, page 2 of 3).   At the conclusion of the execution of the warrant, Officer Krupinsky completed a flow chart of items seized, and of the corresponding areas in the second-floor apartment from which the items were seized.  (**Exhibit B**, page 2 of 3; **Exhibit C**).

101. Detective Sgt. Fischer and Detective Merullo conducted a search of the bedroom at approximately 4:55 p.m.  (**Exhibit B**, page 2 of 3). The defendants identified this room as the bedroom occupied by Angel Ramirez and his live-in girlfriend, Moya Mercedes.  This bedroom was identified as 'bedroom #1' in the evidence table. (**Exhibit B**, page 2 of 3; **Exhibit C**).

102. At 4:55 p.m., Detective Sgt. Fischer found a Nike shoebox on the floor of 'bedroom #1', between a closet and a tall dresser.  (**Exhibit B**, page 2 of 3; **Exhibit C**, item #5).  The Nike shoe-box was found to contain the following: (1) one black plastic bag containing three clear ziplock bags, each containing a white rock-type substance, and having a combined weight of 15.2 ounces; (2) one black plastic bag containing a clear ziplock bag, containing a white rock-type substance and weighing 13.3 ounces; (3) one ziplock bag containing ten (10) smaller plastic bags, each containing white powder, having a combined weight of .4 ounces; (4) one electronic digital scale; (5) sixty-two (62) two dollar bills; and (6) various personal checks made out to cash. (**Exhibit B**, page 2 of 3; **Exhibit C**, item #5).

103.  Officer Krupinsky field-tested the bag containing 13.3 ounces of a white rock-type substance, and a positive reaction for cocaine was obtained.  (**Exhibit B**, page 2 of 3).

104.  At 5:00 p.m., the detectives in the second-floor apartment radioed back to the other officers at the Mobil station, and advised Officer Murphy to transport Mr. Ramirez and Mr. Fernandez to Police Headquarters and place them in custody.  (**Exhibit B**, page 2 of 3; **Exhibit D**).  The defendants also advised Officer Murphy to have the white Nissan Pathfinder towed to Police Headquarters so that an attempt to seize the vehicle under State asset forfeiture could be conducted.  (**Exhibit B**, page 2 of 3).

105. The plaintiff also admits in his complaint that the defendant detectives and officers acquired probable cause for his arrest during their execution of the search warrant at the 128 Osborne apartment: ***"Probable Cause for arrest did not exist until the search was underway."***  (**Pl. Comp.**, page 17) (Emphasis provided).

106.  The interval of time, between the time when the white Nissan Pathfinder was stopped and the time when Mr. Ramirez and Mr. Fernandez were placed in custody, consisted of approximately thirty (30) minutes.  (**Exhibit B**, **Exhibit C**).

107.  The defendant detectives continued to search bedroom #1.  At 5:00 p.m., the defendants located a gray metal box, found in an unlocked drawer, under the bed.  (**Exhibit B**, page 2 of 3; **Exhibit C**, item #6).  The gray metal box contained $5,085, two electronic pagers, and a piece of mail addressed to Angel Ramirez at 128 Osborne Street, Danbury.  (**Exhibit B**, page 2 of 3; **Exhibit C**, item #6).

108.  In addition to the gray metal box, the detectives uncovered one loaded, 9mm handgun, KBI Inc. brand, serial # B46120, located under the bed's mattress.  (**Exhibit B**, page 2 of 3; **Exhibit C**, item #7).  These items were uncovered at approximately 5:05 p.m.  (**Exhibit C**; item #7).

109.  Between 5:10 and 5:15 p.m., the detectives searched the top of a dresser in bedroom #1.  The detectives found a box of blazer 9mm ammunition, a jewelry box containing twelve 9mm rounds, and a passport for Angel Ramirez.  (**Exhibit B**, page 2 0f 3; **Exhibit C**; items # 8-15).  These items lay out in the open, and could be clearly seen.  (**Exhibit B**, page 2 of 3).  The paper pad, itself, contained a list of drug records, as well as $700 in cash.  (**Exhibit B**, page 2 of 3; **Exhibit C**, item #15).

110.  At 5:15 p.m. the detectives found a plastic bottle, stuffed in a shoe in the closet of bedroom #1.  The plastic bottle contained thirty-six (36) small plastic bags of white powder, the powder itself having a combined weight of 1.2 ounces.  (**Exhibit B**, page 2 of 3; **Exhibit C**, item #16).

111.  Between 5:20 and 5:25 p.m., the detectives also uncovered an electronic calculator, a small plastic bag containing a white powder.  They also found a picture of Al Pachino as Tony Montana in the movie 'Scar Face'.  (**Exhibit C**; items #13, 14, 15b).

112.  At 5:20 p.m., the detectives uncovered a further fifteen (15) small plastic bags, containing a white powdered substance, from the pocket of a shirt in bedroom #1.  (**Exhibit B**, pages 2-3 of 3).  The combined weight of the white powder was .5 ounces.  (**Exhibit C**, item #24).

113. The defendant detectives searched the second-floor apartment's kitchen between 5:35 and 5:40 p.m. They located two electronic scales from the kitchen cabinet. They also located six (6) boxes of sandwich bags, used for packaging. (**Exhibit C**, items #19, 22).

114. At 5:40 p.m., the detectives discovered records of occupancy and a Yankee Gas bill in the name of Angel Ramirez and Idenyzes Moya in bedroom #1. (**Exhibit C**, item #21).

115. The detectives also searched the attic bedroom. The door to the attic bedroom was open and unlocked. (**Exhibit D**, **Exhibit E**).

116. The detectives uncovered a plastic bag, located in a shoebox, containing plant-like material at 5:12 p.m. (**Exhibit B**, page 3 of 3; Special Investigation Division Evidence table, compiled by Detective Merullo, and authenticated by Affidavit of Detective John Merullo. Both the table and authenticating affidavit have been collectively attached as **Exhibit F**, item #1). The plant-like material was field-tested, and a positive reaction for marijuana was obtained. (**Exhibit B**, page 3 of 3).

117. At 5:14 p.m., the detectives also seized $461 of U.S. currency from a Polo Sport Ralph Lauren case. The case was located in a shoebox in the attic bedroom. (**Exhibit F**, item #2).

118. At 5:20 p.m., the detectives seized $11 in United States currency from shoe in the attic bedroom. (**Exhibit F**, item #3).

119. At 5:25 p.m., the detectives uncovered an envelope, addressed to "Alex Edwart" of 128 Osborne Street, Danbury, CT. They found the envelope in shoebox in the attic bedroom. (**Exhibit F**, item #4).

120. At 5:35 p.m., the detectives further searched the attic bedroom and located a Spanish passport, passport #007260, for Luis Manuel Fernandez Arias, as well as a Florida drivers license, a New York learner's permit, and Dominican immigration papers under the same name. (**Exhibit F**, item #5).

121. The plaintiff has requested that the defendants admit that they took his passport, Florida Driver's License, and New York learner's permit from the 128 Osborne Street second-floor apartment. (Plaintiff's Fourth Request for Admissions attached as **Exhibit G**, Request for Admission #15).

122. At 6:20 p.m. the detectives concluded their search of the attic bedroom. They also located a Connecticut MVD title, MVD registration papers, and a Social Security card, all in the name of Luis Fernandez. (**Exhibit F**, item #6).

123. The defendants also located a Bell Atlantic Mobile cellular telephone bill in the kitchen at 6:20 p.m. The bill was approximately 40 pages long, account # 103644827, and was for the amount of $891. The bill was in name of Mr. Fernandez. (**Exhibit B**, page 3 of 3; **Exhibit F**, item #7).

124. The detectives concluded their search of the second-floor apartment at 128 Osborne Street at approximately 6:30 p.m. Copies of the search warrants were left on the kitchen table. (**Exhibit B**, page 3 of 3).

125. The detectives returned to Danbury Police headquarters at approximately 6:40 p.m. (**Exhibit F**, item #8).

126. The defendants provided Mr. Ramirez and "Alex" with copies of the search warrants at Police headquarters. (**Exhibit B**, page 3 of 3).

127. The defendants uncovered $333 from Mr. Ramirez's person at Police Headquarters, and $46.00 from Mr. Fernandez's person. (**Exhibit B**, page 3 of 3; **Exhibit F**, item #8). The $333, along with all other cash seized from the 128 Osborne apartment, were checked for the inclusion of Danbury Police evidence monies. One five dollar, taken from Mr. Ramirez's person, was identified as Danbury Police evidence money. (**Exhibit B**, page 3 of 3). All seized monies were secured by Danbury Police and tagged as evidence. (**Exhibit B**, page 3 of 3).

128. The defendants also seized a telephone pager from Mr. Ramirez's person. (**Exhibit B**, page 3 of 3). This pager was identified as being telephone pager #289-4343, the pager number used by Angel Ramirez and Luis Fernandez to facilitate all controlled purchases during the five-month investigation. (**Exhibit B**, page 3 of 3).

129. The defendants also seized a cell phone, which had been found in the possession of Angel Ramirez. (Incident Report of reverse sting operation, signed by Detective Trohalis, attached as **Exhibit H**, page 1 of 3).

130. As a result of the execution of the search warrants on January 7, 2000, the defendants seized a total of $6,751 (six thousand seven hundred fifty-one dollars), and a total of 30.2 ounces, just under two pounds, of high grade cocaine. This cocaine had a total street value of approximately $140,000. (**Exhibit B**, page 3 of 3).

131. Both Angel Ramirez and Luiz Fernandez were processed without incident and held on $250,000 bond. (**Exhibit B**, page 3 of 3).

132. Luis Fernandez was charged with four counts: (1) possession of narcotics in violation of Connecticut General Statutes §21a-27(a); (2) sale of certain illegal drugs in violation of C.G.S. § 21a-278(a); (3) possession of a controlled substance within 1,500 feet of a school/hsg/dy in violation of C.G.S. §21a-278a(b); and (4) possession of a controlled substance greater than four ounces in violation of C.G.S. §21a-279(c). (Judgment File attached as **Exhibit I**).

133. Luis Fernandez plead nolo contendere to Count 1 and was found guilty. He received an eight-year suspended sentence, with four years probation. (**Exhibit I**).

134. Both the pager and the cell continually went off during the night and days following the January 7, 2000 arrest. These telephone numbers were recorded, and Detective Merullo made return calls to those numbers listed on the pager. (**Exhibit B**, page 3 of 3; **Exhibit H**, page 1 of 3).

135. Detective Merullo learned that these calls were being placed by people looking to purchase cocaine from "Sandy" and "Alex". (**Exhibit B**, page 3 of 3, **Exhibit H**, page 1 of 3).

136. Detective Merullo also learned that these same people had also been attempting to contact "Sandy" and "Alex" by means of the cellular telephone, at the very time when the defendants stopped the white Nissan Pathfinder. (**Exhibit B**, page 3 of 3).

137. In what amounted to a "reverse sting" operation, Detective Merullo, Detective Trohalis and Detective Ramos arranged to meet with some of the callers that they had identified by means of the seized pager and cell phone. (**Exhibit H**).

138. Specifically, on January 28, 2000, Detective Ramos continued the reverse sting operation, and noted that the seized pager had received a page from telephone #, identified for the purposes of this Statement as telephone # H. (**Exhibit H**, page 2 of 3). Detective Ramos, acting in an undercover capacity, returned the call and spoke to a male who identified himself by an alias – known for the purposes of this Statement as "Alias H". "Alias H" arranged to meet Detective Trohalis in the North Street parking lot to purchase one gram of cocaine. (**Exhibit H**, page 2 of 3).

139. Detective Ramos and Detective Trohalis, acting in an undercover capacity, met with "Alias H" in the North Street parking lot, and sold "Alias H" a bag of white powder for $50. The detectives then arrested "Alias H", brought him to Danbury Police Headquarters, and identified "Alias H" by his given name (which has not been disclosed in this motion for purposes of police security). (**Exhibit H**, page 2 of 3).

140.  The detectives presented "Alias H" with a set of eight photographs of Hispanic males of similar likeness.  Amongst this set was a photograph of Angel Ramirez.  "Alias H" positively identified the photograph of Angel Ramirez as "Sandy".  (**Exhibit H**, page 2 of 3).

141.  "Alias H" stated that he had purchased cocaine from "Sandy" on numerous occasions, as well as from another Hispanic male, known to "Alias H" as "Alex".  (**Exhibit H**, page 2 of 3).

142.  The detectives presented "Alias H" with a second set of eight photographs of Hispanic males of similar likeness.  A photograph of Luis Fernandez was included in this second set.  "Alias H" identified the photograph of Luis Fernandez as "Alex", and stated that he had purchased cocaine from "Alex" on numerous occasions.  (**Exhibit H**, page 2 of 3).

143.  The detectives also compared the numbers recorded on pager #289-4343, with some of the phone numbers recorded on the pad, seized during the execution of the search warrant.  (**Exhibit H**, page 3 of 3, see **Exhibit C**, item #18).  Some of the numbers on the pager matched the phone numbers recorded on the pad.  (**Exhibit H**, page 3 of 3).

144.  Luis Fernandez was arrested a second time on October 27, 2000.  He was found guilty of multiple narcotics offenses, and on August 24, 2001 he received a twenty-year sentence, in addition to his past, suspended sentence.  (Criminal History attached as **Exhibit J**).

DEFENDANTS,
CHIEF ROBERT PAQUETTE,
DETECTIVE SGT. FISHER,
DETECTIVE RAMOS,
DETECTIVE JOHN MERULLO,
DETECTIVE JOHN KRUPINSKY,
DETECTIVE MARK TROHALIS,
OFFICER KARL MURPHY
OFFICER SELNER and
OFFICER RIOLO

By _____
 Thomas R. Gerarde
 ct05640
 Eric D. Eddy
 ct25242
 Howd & Ludorf
 65 Wethersfield Avenue
 Hartford, CT  06114
 (860) 249-1361
 (860) 249-7665 (Fax)
 E-Mail: tgerarde@hl-law.com
 E-Mail: eeddy@hl-law.com

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following pro se party this 26th day of January, 2004.

Luis Fernandez
Inmate Number 279900
Connecticut Correctional Institution
900 Highland Avenue
Cheshire, CT  06410

Thomas R. Gerarde