UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LUIS FERNANDEZ | : | PRISONER |
| | : | NO.: 3:02CV2090 (JBA)(JGM) |
| v. | : | |
| | : | |
| CHIEF ROBERT PAQUETTE, ET AL | : | MARCH 24, 2004 |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO THE PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

The defendants, Chief Robert Paquette, Detective Sgt. Fisher, Detective Ramos, Detective John Merullo, Detective John Krupinsky, Detective Mark Trohalis, Officer Karl Murphy, Officer Selner and Officer Riolo, hereby oppose the plaintiff's cross-motion for summary judgment ('cross-motion). The plaintiff has failed to comply with the Local Rules of Federal Practice, and has not filed a Local Rule 56(a)(1) Statement with his cross-motion. The defendants forwarded the requisite "Notice to Pro Se Litigant", in accordance with Local Rule 56(B), on January 26, 2004. This Court forwarded an additional copy of the notice to the plaintiff on February 27, 2004.

Nonetheless, the plaintiff has not submitted a proper 56(a)(1) statement, "setting forth in separately numbered paragraphs a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried." As a consequence, the defendants are not only unable to respond with their own Rule 56(a)(2) Statement, but are also unable to properly respond to the plaintiff's cross-motion. The defendants therefore request that the plaintiff's cross-motion for summary judgment be denied in its entirety, as it fails to comply with Local Rule 56(a).

In the alternative, the defendants present the following opposition brief, addressing the plaintiff's cross-motion for summary judgment in its entirety. As the plaintiff has not submitted a Local Rule 56(a)(1) Statement, the defendants incorporate and refer the Court to their own Local Rule 56(a)(1) Statement, filed with the

ORAL ARGUMENT IS REQUESTED

defendants' own motion for summary judgment on 1/26/04. The defendants' 56(a)(1) statement incorporates the plaintiff's exhibits to his cross-motion.

The defendants file this brief in opposition to all claims contained in the plaintiff's cross-motion. These claims include:

(1)     violation of the 4th Amendment in that the plaintiff's arrest was not based on probable cause;

(2)     a "False Evidence" claim;

(3)     a False Arrest / Malicious Prosecution claim;

(4)     an Excessive Force claim;

(5)     violation of the 5th, 6th, 8th, 9th, 13th and 14th Amendments to the US Constitution;

(6)     violation of Article I, Sections 7, 8, and 20 of the Connecticut state constitution;

(7)     violation of Title VII; and

(8)     violation of 18 U.S.C. § 1621, 18 U.S.C. § 3109; 28 U.S.C. § 1746; C.G.S. § 54-36h(b); Rule 41(d); and PA 89-269.

The plaintiff also indicates that his cross-motion has been filed in response to the defendants' 1/26/04 motion for summary judgment. The plaintiff may not properly oppose a motion for summary judgment by filing a cross-motion for summary judgment. The plaintiff has not complied with Local Rule 56(a), and has not filed a 56(a)(2) Statement in response to the defendants' 56(a)(1) Statement. The plaintiff has not submitted a legal brief that addresses the legal arguments raised in the defendants' motion. The plaintiff has failed to file a brief in opposition to the defendants' motion for summary judgment, accompanied by a Local Rule 56(a)(2) Statement, and the Court should grant the defendants' summary judgment for want of opposition from the plaintiff.

## I.  **PROCEDURAL BACKGROUND**

This matter arises out of the arrest of plaintiff, Luis Fernandez, on January 7, 2000. The plaintiff's complaint, consisting of a 22 page document ripe with detailed factual allegations, and dated November 25, 2002, contains the following legal claims:

(1) violation of the 1st Amendment; (2) violation of the 4th Amendment in that the plaintiff's arrest was not based on probable cause; (3) violation of the 5th Amendment; (4) violation of the Sixth Amendment; (5) violation of the Eighth Amendment; (6) violation of the Ninth Amendment; (7) violation of the Ninth Amendment; (8) violation of the Thirteenth Amendment; (9) violation of the Fourteenth Amendment; (10) violation of Article I, §§ 7, 8, and 20 of the Connecticut State constitution; and (11) violation of Title VII. (See Plaintiff's Complaint attached as **Exhibit A**).

The plaintiff has brought suit against eight police officers and detectives of the Danbury Police Department, and against the Chief of the Danbury Police department. The plaintiff's 'waiver of service returned unexecuted' indicates that he has sued the defendants Chief Robert Paquette, Det. Sgt. Fisher, Det. Ramos, Det. John Merullo, Det. John Krupinsky, Det. Mark Trohalis, Officer Karl Murphy, Officer Selner, and Officer Riolo only in their *INDIVIDUAL* capacities.[1]  (See 'waiver of service returned unexecuted', attached as **Exhibit B**).  The plaintiff has not named the City of Danbury as a defendant in this matter.

The defendants moved for summary judgment on all claims in the plaintiff's complaint on January 26, 2004.  In response to the defendants' motion for summary judgment the plaintiff has filed a single page, cover motion placing the Court on notice of his opposition to the defendants' motion for summary judgment, as well as an affidavit in opposition to the defendants' motion for summary judgment, dated February 13, 2004.  Additionally, Fernandez has also filed a motion for cross summary judgment, also dated February 13, 2004.   The plaintiff has not submitted a Local Rule 56(a)(1) Statement with his memorandum in support of cross-summary judgment.  However, the plaintiff has indicated that his Affidavit in Opposition to Summary Judgment has also been submitted in support of his motion for cross-summary judgment.  The defendants now respond in opposition to the plaintiff's motion for cross-summary judgment.

---

[1] The defendants first received this document, **Exhibit B**, on March 1, 2004, in an electronic communication from CMECF. If the defendants had received this document earlier, they would not have inserted a *Monell* argument within their motion for summary judgment. At the time they moved for summary judgment, the defendants had not been placed on notice as to whether the plaintiff was suing the defendants in their individual or official capacities. (see defendants' motion for summary judgment, dated January 26, 2004).

## II.    **FACTUAL BACKGROUND**

The bulk of the undisputed facts in this case are contained in the January 6, 2000 warrant affidavit and application ('the warrant affidavit') and the arraignment report and affidavit ('the arraignment affidavit') of the plaintiff's January 7, 2000 warrantless arrest. This warrantless arrest is the subject of the present suit.  The defendants' comprehensive January 26, 2004 motion for summary judgment primarily relies upon these two pieces of evidence.  The defendants' accompanying Local Rule 56(a)(1) Statement is largely a compilation of the undisputed facts contained in these two documents.  In his motion for cross-summary judgment, the plaintiff has not submitted any evidence, in the form of affidavits, sworn testimony, and/or other admissible evidence, which places any material facts in dispute with those facts contained in the warrant affidavit.  In fact, the plaintiff has attached both the warrant affidavit and arraignment affidavit to his motion as supporting exhibits, contained within his Exhibit #5. As the plaintiff has failed to submit a 56(a)(1) Statement with his motion for cross-summary judgment, the defendants refer the Court to their own 56(a)(1) Statement, attached to their January 26, 2004 motion for summary judgment.

Additionally, the plaintiff has not submitted a proper statement of material facts with his motion for cross-summary judgment.  Accordingly, the defendants are unable to reply in the manner dictated by Local Rule 56(a)(2).  Most of the plaintiff's factual allegations are scattered throughout his legal arguments, contained in his memorandum in support of cross-summary judgment.  Most of these allegations are blank assertions and conclusory statements.  The plaintiff rarely points to any specific evidence in support of his assertions.  Rather the plaintiff makes open references to those documents, which he has attached to his brief as supporting exhibits, i.e. "see Exhibit #1", "see Exhibit #2", etc.  He does not specifically identify any of the facts contained in these exhibits.  Most of these exhibits include sworn testimony and affidavits, which the defendants' have relied upon in their own January 26, 2004 motion for summary judgment.  As explained in the below sections A, B and C of Section II of this brief, the Court is better served by referring to the defendants' own Local Rule 56(a)(1) Statement, when reviewing the plaintiff's motion for cross-summary judgment and this opposition brief.

4

In order to respond to the plaintiff's motion for cross-summary judgment, the defendants are forced to organize the plaintiff's allegations into a form to which a response is possible. Accordingly, in this Section II of their memorandum in opposition to cross-summary judgment, the defendants have: (a) identified those documents, which the plaintiff has incorporated into his cross-summary judgment; and (b) listed those specific factual allegations which the plaintiff has submitted in support of his cross-motion for summary judgment. As indicated below, within Section II, these specific factual allegations are either immaterial to the plaintiff's lawsuit, or are not supported and/or are contradicted by the plaintiff's very own exhibits.

A.    **The Plaintiff's Evidence.**

The plaintiff's 'Statement of Facts' section within his memorandum in support of cross-summary judgment (pgs 2-5 of cross-summary judgment memorandum) does not contain a statement of material facts in support of his legal arguments. Rather, this section merely lists and identifies all those documents attached to the plaintiff's brief as supporting exhibits. (See Exhibits #1-#17 of the plaintiff cross-summary judgment). These documents include:

(a) The Incident Report of the plaintiff's 1/07/04 arrest (plaintiff's Exhibit #1, and #10);

(b) The January 6, 2000 warrant affidavit (plaintiff's Exhibit # 5);

(c) The January 6, 2000 search warrant for the person of Angel Ramirez and for the second-floor apartment at 128 Osborne Street, Danbury, signed by a neutral magistrate (plaintiff's Exhibit # 5);

(d) The Return for and Inventory of Property Seized on Search and Seizure Warrant (plaintiff's Exhibit # 5, and #14);

(e) The Arraignment Report and Affidavit of Warrantless Arrest, signed on January 8, 2000 (plaintiff's Exhibit #5);

(f) Special Investigations Division, Evidence Table compiled by Det. John Merullo (plaintiff's Exhibit # 12); and

(g) Special Investigations Division, Evidence Table compiled by Det. Krupinsky (plaintiff's Exhibit #13);

5

The remainder of the plaintiff's exhibits consist of his responses to the defendants' discovery requests (Exhibit #17), as well as the defendants' responses to the plaintiff's discovery requests and requests for admissions (see plaintiff's Exhibits # 1, 2, 3, 4, and 5). The defendants' responses, contained in the plaintiff's Exhibits # 1-5, merely confirm the facts contained in the above listed documents (documents (a) through (g); also plaintiff's Exhibits # 1, 5, 10, 12, 13 and 14).

The defendants have also relied on (a) the Incident Report; (b) the January 6, 2000 warrant affidavit; (c) the January 6, 2000 search warrant for Angel Ramirez and for the second-floor apartment at 128 Osborne Street; (d) the Return for and Inventory of Property Seized on Search and Seizure Warrant; (e) The Arraignment Report and Affidavit of Warrantless Arrest; (f) Special Investigations Division, Evidence Table compiled by Det. John Merullo; and (g) Special Investigations Division, Evidence Table compiled by Det. Krupinsky as evidence in support of their January 26, 2004 motion for summary judgment. The facts contained in these documents have been incorporated into the defendants' Local Rule 56(a)(1) Statement.

The defendants now proceed on the assumption that by referencing these documents, the plaintiff has submitted them in support of the arguments contained in his cross-summary judgment brief. The defendants state that they do not dispute the facts contained in these documents, and also rely upon them in support of their own legal arguments (See defendants' January 26, 2004 motion for summary judgment).

The plaintiff has also submitted an Affidavit signed by a Bristout Bourguignon, purporting to represent the testimony of a fact-witness to Fernandez's arrest on January 7, 2000. (See plaintiff's Exhibit #8). The affidavit has been submitted in support of the plaintiff's excessive force claim. The defendants have moved to strike this affidavit as it is irrelevant and immaterial to the plaintiff's suit, and lies outside of the scope of the pleadings and outside of the scope of discovery. The plaintiff's complaint does not, in addition to its multiple legal claims, make a claim of excessive force. (See **Exhibit A**) Furthermore, the allegations contained in the affidavit do not appear within the plaintiff's detailed 22-page complaint (**Exhibit A**), nor have they been disclosed in the plaintiff's discovery responses (see plaintiff's Exhibit # 17). The plaintiff may not now attempt to

6

bring an entirely new cause of action by means of his motion for cross-summary judgment. (See defendants' Motion to Strike Affidavit in Support of Witness Statement).

### B.    Plaintiff's Factual Allegations.

As indicated above, the plaintiff has not submitted a proper statement of facts in support of his motion for cross-summary judgment. The only document, submitted by the plaintiff, approximating a statement of facts, is the plaintiff's 'Affidavit in Opposition to Defendants' Motion for Summary Judgment.' Paragraph 9 of the opposition affidavit contains the plaintiff's statement of "material facts":

(a) That the plaintiff was visiting Angel Ramirez and Mr. Ramirez's girl friend, Mercedez Moya, at their residence in the second-floor apartment at 128 Osborne Street, Danbury Connecticut. The plaintiff had arrived from the Dominican Republic.

(b) The plaintiff "was allowed" to sleep in the "Attic Apt./Unit", "next to another guest room" in the second-floor apartment[2].

(c) That the white Nissan Pathfinder was in a repair shop on or about November 20, 1999. (*this date, of course, is over a month prior to the date upon which the Pathfinder was stopped on Tamarack Avenue).

(d) That a brown Honda Civic was sold to Angel Ramirez's friend, who was also a houseguest at the second-floor 128 Osborne Street apartment.

(e) On January 7, 2000 the plaintiff contacted his friend, known to the plaintiff for approximately ten (10) years. This "friend" witnessed the plaintiff's "illegal brutal arrest" at Tamarack Avenue[3].

---

[2] The plaintiff has continually argued that the attic room was not part of the second-floor apartment, and therefore falls outside the scope of the 1/06/00 search warrant. However, the plaintiff has submitted no evidence to challenge the incident report and arraignment report's characterization of the attic as an additional bedroom, located in the second-floor apartment. He has not submitted evidence of a separate address, phone number, means of egress/ingress to the attic, nor has he shown that the attic was furnished with a separate set of keys and locks, bathroom, and/or other living quarters. This attic room appears to have been used as an additional guestroom. The plaintiff's own affidavit undermines his argument, as he admits that the attic was located "next to another guestroom. There exist no material facts which indicate that the attic did not fall within the scope of the search warrant.

[3] The defendants have moved to strike this affidavit. See defendants' Motion to Strike Affidavit in Support of Witness Statement.

(f) That the police Incident Reports, and other documents mailed to the plaintiff by the State's Attorney, are "relevant to this case."

This single paragraph contains the only comprehensive statement of facts, submitted by the plaintiff in support of his motion for cross-summary judgment. In addition to Paragraph #9, the plaintiff's affidavit also contains several scattered references to other allegations that he submits in support of his brief. However, these allegations are blank assertions and conclusory statements that are not supported by, and in some instances are contradicted by the very exhibits that he has attached in support of his cross-motion for summary judgment. These allegations include:

(a) In Paragraph 2 of the plaintiff's opposition affidavit, the plaintiff alleges that Mercedes Moya was the owner of the "white Nissan Pathfinder SUV 569 NVH". The plaintiff has not submitted any documents, including registration and/or title, in support of this assertion.

(b) In Paragraph 4 of the plaintiff's opposition affidavit, the plaintiff makes the blank assertion that the investigation leading up to his January 7, 2000 arrest was only 5 days in duration. However, the plaintiff's evidence, specifically the Warrant Affidavit (plaintiff's Exhibit # 5) and plaintiff's Exhibit #11 (a letter from the Special Investigations Division of Danbury Police) document a five-month investigation. The plaintiff has not produced any evidence, in the form of affidavits, sworn testimony, and/or other admissible evidence, showing that the investigation was any time less than five months in duration.

(c) In Paragraph 5 of the plaintiff's opposition affidavit, the plaintiff states that the defendants claim to have observed the plaintiff holding packages of cocaine in his lap, when they pulled the white Nissan Pathfinder over on Tamarack Avenue. The plaintiff misstates the defendants' testimony and the facts presented in plaintiff's Exhibit #5, the 1/06/00 warrant affidavit. The warrant affidavit states that a confidential and reliable informant observed the plaintiff holding a package of cocaine, during a controlled purchase of cocaine from the plaintiff on January 3, 2000. (See plaintiff's Exhibit #5, ¶ 26 of the warrant affidavit). The plaintiff has not submitted any evidence, in the form of affidavits, sworn testimony, and/or admissible evidence, which challenges the facts contained in ¶ 26 of the warrant affidavit.

8

(d) The plaintiff also makes the blank assertion in Paragraph 5 of his opposition affidavit that the defendants removed money from his wallet when they pulled the white Nissan Pathfinder over on Tamarack Avenue. In fact, the plaintiff's evidence consistently shows that $46.00 was removed from the plaintiff's person AFTER the plaintiff had been arrested and transported to Danbury Police Headquarters. Plaintiff's Exhibit #4, specifically, response #14 to plaintiff's request for admissions, states that "$46.00 was removed from the plaintiff's person after he had been placed in custody and transported to Danbury Police Headquarters on January 7, 2000."

Moreover, plaintiff's Exhibits #12 (Evidence Table compiled by Detective Merullo); and #13 (Evidence Table Compiled by Detective compiled by Detective Krupinsky) show that the $46.00 was removed from the plaintiff's person after 6:00 p.m., at which time the plaintiff's other Exhibits (see Arraignment Report, Incident Report, etc...) indicate that the plaintiff had been placed in custody and had been transported to Danbury Police Headquarters. The plaintiff has not produced any other evidence stating that a sum of more than $46.00 was taken from his wallet, or that this sum was taken from his wallet prior to being placed in custody.

(e) The plaintiff states in Paragraph 6 of his opposition affidavit that he was "pulled-out of the white Nissan Pathfinder to the floor and pulled his pants down and seized his property", when the defendants pulled the white Nissan Pathfinder over on Tamarack Avenue. Again, the plaintiff's Exhibits #12 and 13 indicate that no money was seized from his person until after he had been placed in custody.

Though he neglects to cite to it, the other two allegations, concerning being pulled-out of the SUV and having his pants pulled down, derive from the affidavit signed by Bristout Bourguignon. The defendants have moved to strike this affidavit, and the allegations contained within. (See Motion to Strike Affidavit in Support of Witness Statement).

(f) In Paragraph #8, the plaintiff states that the only physical description linked with his alias is that of a "man or woman" wearing a baseball hat. Again, the plaintiff's assertion is not supported by his very own exhibits. Plaintiff's Exhibit #5, specifically ¶ 17 of the warrant affidavit, describes the plaintiff as being "a Hispanic male, thin build, approximately 160 lbs, approximately 5"6 tall, approximately 23 years of age, clean

shaven, usually wears a baseball hat and has a large scar on the left cheek of his face." In addition, ¶ 3 of the warrant affidavit describes the plaintiff as jointly conducting the sale of cocaine with Angel Ramirez, using the pager number: 289-4343. The plaintiff has not submitted any evidence, in the form of affidavits, sworn testimony, and/or other admissible evidence, to challenge the contents of his Exhibit #5.

(g) The plaintiff also makes the blank assertion in Paragraph 1 of his opposition affidavit that the defendants' have left out certain material facts from their motion for summary judgment. The plaintiff fails to state what these "material facts" are. As stated, the defendants' Local Rule 56(a)(1) Statement incorporates all those facts contained within the very same exhibits attached to the plaintiff's motion for cross-summary judgment.

The plaintiff has also submitted additional allegations, scattered throughout the body of the legal arguments contained in his cross-summary judgment brief. Like the allegations contained in his opposition affidavit, these additional allegations are not supported, and in some instances are contradicted by the plaintiff's own exhibits. For the sake of clarity, the defendants will address these additional allegations as they appear in the plaintiff's brief, within their own corresponding legal arguments in response to the plaintiff's legal arguments on cross-summary judgment. (See defendants' legal arguments below in <u>Section IV</u> of this brief).

### C.   <u>Summary Of The Plaintiff's "Statement of Facts" In Support Of His Motion For Cross-Summary Judgment.</u>

The bulk of the plaintiff's facts appear to be contained in his supporting exhibits. These exhibits include: the 1/06/00 warrant affidavit, the 1/06/00 search warrant signed by a neutral magistrate, the incident report of the 1/07/00 arrest, the arraignment report and affidavit of the 1/07/00 warrantless arrest, the return for and inventory of property seized on search and seizure warrant, and evidence tables compiled by Detectives Merullo and Krupinsky . The plaintiff has not submitted a statement laying out these facts in the form dictated by Local Rule 56(a)(1). The plaintiff merely makes generalized citations to these exhibits; i.e. "see Exhibit 1", or "see Exhibit 2, paragraph 2", etc.

Such generalized references are confusing and deceptive, and may mislead the Court into believing that the plaintiff is relying upon a set of facts, separate and distinct from those contained in the defendants' own Local Rule 56(a)(1) Statement (see defendants' January 26, 2004 Motion for Summary Judgment). In fact, the defendants rely upon these very same documents, and ALL of the facts contained within, in their own 56(a)(1) Statement and motion for summary judgment. The defendants therefore refer the Court to their Local Rule 56(a)(1) Statement, dated January 26, 2004, as a statement of those facts which are relevant to both the review of the plaintiff's cross-motion for summary judgment and the defendants' opposition to cross-summary judgment.

In addition, the plaintiff has also submitted several other allegations in support of his motion for cross-summary judgment. These allegations include:

(a) That the plaintiff was visiting Angel Ramirez and Mr. Ramirez's girl friend, Mercedez Moya, at their residence in the second-floor apartment at 128 Osborne Street, Danbury Connecticut. The plaintiff had arrived from the Dominican Republic.

(b) The plaintiff "was allowed" to sleep in the "Attic Apt./Unit", "next to another guest room" in the second-floor apartment.

(c) That the white Nissan Pathfinder was in a repair shop on or about November 20, 1999.

(d) That a brown Honda Civic was sold to Angel Ramirez's friend, who was also a houseguest at the second-floor 128 Osborne Street apartment.

(e) That Mercedez Moya was the owner of the white Nissan Pathfinder SUV 569 NVH.

(f) That the plaintiff's January 7, 2000 arrest was the product of a five-DAY investigation.

(g) That the defendants removed money from the plaintiff's wallet when they pulled the white Nissan Pathfinder over on Tamarack Avenue.

(h) That the plaintiff was only identified during the investigation as a "man or woman" wearing a baseball hat.

As demonstrated in the above Section II, B of this brief, these allegations are either immaterial to his legal claims, or are not supported and/or contradicted by his exhibits. The plaintiff has not submitted any evidence, other than that contained in his exhibits, in support of these bare assertions.

The plaintiff has failed to present ANY evidence, in the requisite form of affidavits, sworn testimony, and/or other admissible evidence, which support his motion for cross-summary judgment. Rather, the plaintiff has submitted evidence, in the form of exhibits attached to his memorandum in support of cross-summary judgment, which support the defendants' own January 26, 2004 motion for summary judgment.

## III.    STANDARD OF REVIEW

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried, and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir. 1994). The determination of which facts are material to a particular claim is made based upon the substantive law upon which those claims rest. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In determining whether there is a genuine issue as to any material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *See Anderson*, 477 U.S. at 255; *Gallo*, 22 F.3d at 1223; *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir. 1983). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).).

However, a party "*may not rest upon mere conclusory allegations or denials.*" *See Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir. 1997) (internal citations omitted) (emphasis provided). On a motion for summary judgment, a

court cannot try issues of fact; it can only determine whether there are issues to be tried. *See Anderson*, 477 U.S. at 255; *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987). The function of the court at this stage is not to weigh the evidence and determine what is true, but rather to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

If a party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. *Accord, Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d. Cir. 1995) (movant's burden satisfied if it can point to an absence of evidence to support an essential element of nonmoving party's claim).

## IV.    LEGAL ARGUMENT

The plaintiff has presented a multiplicity of claims in his brief in support of cross-summary judgment. These claims have not been presented in an organized fashion, as the legal arguments in support of these claims lie scattered in fragments throughout the extent of the plaintiff's brief. In an attempt to respond to each claim, the defendants have re-organized the plaintiff's arguments and gathered them together in groups. Each group of arguments corresponds to the particular legal claim to which they pertain. For clarity sake, the defendants have also addressed each argument as they appear in the plaintiffs' brief. As a consequence, the defendants' arguments may appear a bit disjointed.

It is also important to note at the outset of this section, that the plaintiff has failed to support his legal claims and corresponding arguments with any evidence, in the form of affidavits, sworn testimony, and/or other admissible evidence, in accordance with the standard of review. Most of the plaintiff's cross-summary judgment brief consists of conclusory statements. Most of these statements are brief synopses of the plaintiff's

13

understanding of the legal cases that he cites to in support of his claims. The plaintiff has not produced a proper legal analysis, applying relevant law to a series of facts, supported by evidence in the form of affidavits, sworn testimony, and/or other admissible evidence. As noted above, the plaintiff merely makes general reference to his exhibits; i.e. "see Exhibit 1", "see Exhibit 2, paragraph1", etc. He does not point to specific evidence in support of his arguments.

## A.   PLAINTIFF'S 4TH AMENDMENT CLAIM

The gravamen of the plaintiff's complaint appears to be his claim that the defendants violated the 4th Amendment by arresting the plaintiff without probable cause. The majority of the plaintiff's allegations, in both his 22-page complaint and 55-page cross-summary judgment brief, are concerned with this 4th Amendment claim. The plaintiff has presented his 4th Amendment claim as a series of "sub-claims", involving various 4th Amendment issues. These sub-claims are as follows:

### 1.    The defendants lacked probable cause for the plaintiff's arrest.

The plaintiff claims that he was arrested on January 7, 2000 without probable cause. (p. 37 of cross-summary judgment, "cross-motion"). The defendants have already presented a lengthy 4th Amendment analysis in their January 26, 2004 motion for summary judgment. (See Section III, A, 1. of the January 26, 2004 motion for summary judgment). As stated above, the defendants' analysis incorporates the very same documents included in the plaintiff's supporting exhibits. Like the plaintiff, the defendants primarily rely upon the warrant affidavit and arraignment report as their source for the undisputed facts in this matter. These two affidavits document a thorough five-month investigation, including multiple controlled purchases of cocaine from the plaintiff, and resulting in a search warrant signed by a neutral magistrate. The evidence clearly establishes probable cause for the search of the person of Angel Ramirez , the second-floor apartment at 128 Osborne Street, including the plaintiff's bedroom; and for the arrest of the plaintiff. The plaintiff has not introduced any additional evidence, which would place any material facts in dispute and/or alter the defendants' analysis. Nonetheless, the defendants hereby respond to the plaintiff's 4th

14

Amendment arguments in the order in which they are presented in his motion for cross-summary judgment:

(a.)    The plaintiff claims that his arrest was invalid in that the subject January 6, 2000 search warrant did not contain his name. (pages 7 and 29 of cross-motion). The defendants have already addressed this issue in <u>Section III, A, 1., b.</u> (page 22) of their January 26, 2004 motion for summary judgment. The defendants now incorporate and direct the Court to <u>Section III, A, 1., b.</u> (page 22) of their January 26, 2000 motion, in response to the plaintiff's cross-motion.

Other than pointing out this alleged deficiency, the plaintiff presents no other evidence in support of his argument, other than making a general reference to his Exhibit 5, ¶4; Exhibit 7; and Exhibit 1, ¶ 1.

(b.)    The plaintiff argues that the investigation leading to his arrest did not produce probable cause for his arrest as the defendants had "only" conducted five controlled purchases of cocaine from the plaintiff, and these controlled purchases had been conducted "without proper equipments (for surveillance), no finger prints from alleged evidence recovered, and failed to provide quantity of the alleged evidence recovered." (p. 8 of the cross-motion).

The defendants do not dispute that they conducted five controlled purchases of cocaine prior to executing the subject search warrant on January 7, 2000. The defendants have already demonstrated that these five controlled purchases of cocaine provided probable cause of the issuance of the January 6, 2000 search warrant, and eventually for the arrest of the plaintiff. The defendants incorporate and direct the Court's attention to <u>Section III, A., 1.</u> (page 18) of their January 26, 2004 motion for summary judgment as their response to the plaintiff's cross-motion.

In addition, the plaintiff fails to cite to any legal authority which states that controlled purchases of cocaine must record the exact quantity of contraband seized, and that the contraband must be fingerprinted, and that the failure to do so deprives officers of probable cause for an arrest. The defendants are not certain how a record of exact quantity and/or fingerprinting is relevant to deciding the validity of a controlled purchase. As indicated in plaintiff's Exhibit 5, the January 6, 2000 warrant affidavit, the

controlled purchases were conducted with two reliable and confidential informants, with the actual sales being observed by one or more of the defendants. Both the informants and the defendant detectives were eyewitnesses to the plaintiff's involvement in the purchases. Also, the plaintiff fails to specifically identify what "proper equipment" the defendants allegedly failed to use during the controlled purchases.

Furthermore, the plaintiff fails to cite to any evidence in support of his argument. The plaintiff merely refers to his Exhibit 6, which he characterizes as "Paragraph 4 Affidavit and Application Search and Seizure Warrant." Plaintiff's Exhibit 6 is in actuality a one-page letter from Danbury's corporate counsel, forwarding documents to the plaintiff. It appears that the plaintiff is attempting to cite to the January 6, 2000 warrant affidavit. Again, this very same piece of evidence has already been attached as a supporting exhibit to the defendants' motion for summary judgment, and has been incorporated in the defendants' Local Rule 56(a)(1) Statement. This exhibit thoroughly establishes probable cause for the plaintiff's arrest. (See Section III, A., 1. of the defendants' motion for summary judgment).

(c.)     The plaintiff claims that the defendants discovered "information" on November 23, 1999 that "destroyed" their probable cause to execute the January 6, 2000 search and seizure warrant. (pages 8-9 of cross-motion). Again, the plaintiff fails to cite to any specific facts in support of his argument, other than making a general reference to the January 6, 2000 warrant affidavit.

It appears that the plaintiff is referring to that part of the warrant affidavit that refers to the defendants' decision to hold off executing their November 23, 1999 search warrant. Section I., F. (page 6 of brief) of the defendants' January 26, 2004 motion for summary judgment fully incorporates the plaintiff's Exhibit 5, the January 6, 2000 warrant affidavit. Section I., F. and the January 6, 2000 warrant affidavit show that the defendants had acquired a search warrant for the person of Angel Ramirez, for the second-floor apartment at 128 Osborne Street, for a brown Honda, and for the white Nissan Pathfinder on November 23, 2000, some four months into the investigation. (¶22 of the 1/06/00 warrant affidavit). The corresponding warrant affidavit was also reviewed and signed by a neutral magistrate. (¶22 of the 1/06/00 warrant affidavit). The

defendants decided to hold off executing the warrant when they observed the plaintiff and Mr. Ramirez operating a different motor vehicle (a green Plymouth Breeze). (¶¶ 22-23 of the 1/06/00 warrant affidavit).

The defendants never executed the November 23, 2000 warrant. They chose to continue the investigation. (¶24 of the 1/06/00 warrant affidavit). The defendants continued their surveillance of the second-floor apartment at 128 Osborne Street, and conducted yet another controlled purchase of cocaine from both the plaintiff and Mr. Ramirez on January 3, 2000, prior to seeking another search warrant. (¶¶ 25-26 of the 1/06/00 warrant affidavit). This next search warrant, the subject January 6, 2000 warrant, was for the person of Angel Ramirez and for the second-floor apartment at 128 Osborne Street. (see plaintiff's Exhibit 5, the 1/06/00 search warrant). The plaintiff admits in his cross-motion that the January 6, 2000 warrant was also reviewed and signed by a neutral magistrate. (page 8 of cross-motion). The undisputed facts, as evidenced by the plaintiff's very own exhibit, show that the subject January 26, 2004 search warrant was issued upon a finding of probable cause. There is no evidence of any information that challenged and/or "destroyed" the 1/06/00 finding of probable cause.

(d.)    The plaintiff claims that his arrest was an invalid "search incident to arrest", because "the search was conducted more than 2 hours 75 minutes after arrest of the plaintiff." (page 30 of cross-motion). The plaintiff once again cites to evidence which contradicts his argument. The plaintiff's evidence actually shows that the plaintiff's *ARREST* was incident to the execution of the search warrant, not vice versa.

The plaintiff references the warrant affidavit and arraignment affidavit (contained in plaintiff's Exhibit 5), as well as the evidence table compiled by Detective Krupinsky. Both documents state that the defendants executed the search warrant for Angel Ramirez at approximately 4:30 p.m.(see evidence table compiled by Detective Krupinsky, plaintiff's Exhibit 13), executed the search warrant for the second-floor apartment at approximately 4:49 p.m. (see page 2 of 3 of the arraignment affidavit, plaintiff's Exhibit 5), and had the plaintiff transported to Danbury Police Headquarters and placed in custody at approximately 5:00 p.m (see page 2 of 3 of arraignment

affidavit). The plaintiff has not submitted ANY evidence supporting his blank assertion that the "search was conducted more than 2 hours 75 minutes after arrest of the plaintiff."

The plaintiff's arrest was a valid arrest incident to the execution of a search. The defendants have already provided a comprehensive legal analysis of this issue in Section III, A., 1., g. (page 30 of brief) of the defendants January 26, 2004 motion for summary judgment. The plaintiff has not submitted any material facts which would alter/dispute the defendants' legal argument.

(e.)    The plaintiff also repeatedly argues in his motion for cross-summary judgment that his arrest was invalid, and in violation of the 4th Amendment, because the defendants had not obtained an arrest warrant for Luis Fernandez. This argument appears scattered throughout his brief (see page 30 and 45 of cross-motion for example), and is usually backed by a legal citation to boilerplate law. Judging by his multiple references, this argument appears to be the CORE/primary basis of the plaintiff's entire lawsuit. The plaintiff's legal analysis is incorrect. The defendants have already addressed this argument in Section III, A. 1., g. (page 30 of brief) of their January 26, 2004 motion for summary judgment.

(f.)    The plaintiff argues that "[t]he warrantless searches and seizures of the plaintiff and property inside Angel Ramirez home are presumptively unreasonable absent consent and probable cause." (page 45 of cross-motion). Once again the plaintiff cites to the warrant affidavit and arraignment affidavit, by making a blank reference to his Exhibit 5.

The plaintiff's argument and legal analysis is simply incorrect. The plaintiff's very own evidence, the warrant affidavit and arraignment affidavit, document a thorough five-month investigation, which produced ample basis for a finding of probable cause for the search of the second-floor apartment. Furthermore, the January 6, 2000 warrant was signed and approved by a neutral magistrate, upon finding probable cause for the January 7, 2000 search. The defendants have already addressed this issue in Section III, A., (page 18 of brief) of their January 26, 2004 motion for summary judgment. The defendants also rely upon the warrant affidavit and arraignment affidavit in support of

their arguments.  The plaintiff has not submitted any additional evidence, in the form of affidavits, sworn testimony, and/or other admissible evidence, disputing the defendants' legal analysis.

Though referencing the warrant affidavit in its entirety, the plaintiff challenges its validity, citing to *U.S. v. Wilhelm*, 80 F.3d 116, 119-20 (4th Cir. 1996) "(No probable cause for search warrant when police relied on information from an unnamed informant, had no indication of the informant's truthfulness or reliability, and had little or no corroboration)." (page 14 of cross-motion).  The defendants are not certain how this legal citation challenges the validity of the January 6, 2000 warrant.  The warrant affidavit, incorporated in full by the plaintiff, documents the involvement of TWO confidential and reliable informants in the five-month investigation.  Furthermore, the warrant affidavit documents the corroborating information supplied by these informants. The defendants have already addressed this issue in Section III, A., 1.,a. (page 20 of the brief) of their January 26, 2004 motion for summary judgment.

The plaintiff's entire 4th Amendment claim, as represented in both his complaint and motion for cross-summary judgment, consists of little more than the blank assertion that he was arrested without probable cause (see bottom of page 36 of cross-motion), accompanied by equally blank references to his exhibits.  The plaintiff cites to the very same affidavits as those incorporated in the defendants' own January 26, 2004 motion for summary judgment.  Unlike the defendants, the plaintiff does not point to any of the specific material facts contained in the warrant affidavit and arraignment report, and in any of the other above listed documents provided by the Danbury Police.  Instead, the plaintiff makes blank citations to boilerplate law.  He does not provide a proper legal analysis, applying specific case law to specifically identified facts.  The defendants have already provided a comprehensive legal analysis in Section III, A. of their motion for summary judgment.  The defendants' motion for summary judgment clearly shows that the defendants had probable cause for the plaintiff's arrest on January 7, 2000.

   2.    **The January 6, 2000 warrant was insufficient.**

The plaintiff argues that the January 6, 2000 warrant was insufficient and therefore invalid.  The plaintiff's argument is based on three general assertions: (a.) that

the warrant does not demonstrate probable cause for finding narcotics at the 128 Osborne second-floor apartment; (b.) that his Attic room was not mentioned in the warrant; (c.) that his name is not mentioned in the warrant, nor does the warrant provide a sufficient description of the plaintiff; and (d.) that the warrant (presumably meaning the warrant affidavit) has left out "material facts". Again, the plaintiff has not backed his arguments with any material facts. The defendants respond to each of these three assertions as follows:

(a.)    The plaintiff makes the blank assertion that the warrant affidavit "do not establish probable cause to believe that narcotics would be found in the second floor apartment 128 Osborne St. Danbury Ct or Attic/unit." (page 43 of cross-motion). On the contrary, the warrant affidavit documents a thorough five-month investigation, consisting of multiple controlled purchases of cocaine, surveillance of the plaintiff and the 128 Osborne apartment, and documentation of the plaintiff and Mr. Ramirez coming and going from the second-floor apartment during the controlled purchases of cocaine. The plaintiff has not introduced any evidence challenging the contents of the warrant affidavit. In fact, the plaintiff incorporates the warrant affidavit in his cross-summary judgment brief as a supporting exhibit! (see plaintiff's Exhibit 5).

In addition, warrant shows, and the plaintiff admits that a neutral magistrate signed and approved the January 6, 2000 warrant upon a finding of probable cause that narcotics and/or other contraband was contained within. The defendants, also relying upon the warrant affidavit, have addressed this issue in Section III, A. (page 18 of brief) of their January 26, 2004 motion for summary judgment.

In support of his argument, the plaintiff also cites to *Steagaid v. U.S.*, 451 U.S. 204, 212 (1981) (page 13 of cross-motion). The plaintiff represents the *Steagaid* opinion as: "warrant invalid because supporting affidavit was devoid of any basis from which magistrate could infer that evidence of drug activity would be found at [defendant's] address. Especially since affidavit gave no information as to proximity of alleged narcotics sales to defendant's residence." The *Steagaid* opinion actually bolsters the defendants' own motion for summary judgment. As just argued, the warrant affidavit is ripe with information documenting the sale of narcotics from the

second-floor apartment at 128 Osborne Street. Furthermore, the warrant affidavit documents that one of the meet locations for the controlled purchase of cocaine was "in close proximity to 128 Osborne St. Danbury." (see ¶ 19 of warrant affidavit, plaintiff's Exhibit 5). The plaintiff's own law supports a finding of probable cause for the January 7, 2000 search.

(b.)    The plaintiff argues that his expectation of privacy in his Attic bedroom, and in his property contained within, was violated by the January 7, 2000 search of the second-floor apartment at 128 Osborne Street. (see pages 28, 31-32 of cross-motion). The plaintiff argues that his bedroom comprised a totally separate "apartment/unit", and therefore the search of his bedroom fell outside the scope of the January 6, 2000 search warrant. The plaintiff further argues that the warrant was therefore insufficient as it fails "to differentiate the items seized" from his room from those items seized from the rest of the second-floor apartment. (see page 33 of cross-motion).

The plaintiff claims that the defendants were "on notice that house divided into 2 apartments before executing search." (page 28 of cross-motion). It is undisputed that the 128 Osborne Street address was divided into two apartments: a first-floor apartment and a second-floor apartment. The warrant affidavit shows that the plaintiff resided in the second-floor apartment with Mr. Ramirez. The plaintiff may not attempt to confuse the Court by now suggesting that the "2 apartments" consisted of the second-floor apartment and the attic "unit", as this characterization fails to take into account the first-floor apartment.

Again, the defendants have already addressed this argument in <u>Section III, A., 1., a., i.</u> (page 22 of brief) of their January 26, 2004 motion for summary judgment. The plaintiff's attic bedroom was clearly part of the 128 Osborne second-floor apartment. The plaintiff has failed to present any evidence that his Attic bedroom comprised a separate address. He has not submitted any evidence that his attic bedroom had a separate mailing address; a separate means of ingress/egress; a separate phone line; a separate rental agreement requiring separate rental payment; a separate key and lock; etc... The plaintiff's attic bedroom, and the contraband seized within, clearly fell within the scope of the January 6, 2000 search warrant.

(c.)    The plaintiff claims that the January 6, 2000 warrant was insufficient in that it did not contain his name (page 28 of cross-motion). It is undisputed that the defendants did not ascertain the plaintiff's name until they had executed the search warrant. However, the warrant affidavit contains the plaintiff's alias, "Alex", as well as a detailed physical description of the plaintiff: "a Hispanic male, thin build, approximately 160 lbs, approximately 5'6 tall, approximately 23 years of age, clean shaven, usually wears a baseball hat and has a large scar on the left cheek of his face." (¶17 of warrant affidavit, plaintiff's Exhibit 5). The defendants have already addressed this issue in Section III, A., 1., b. (page 22 of brief) of their January 26, 2004 motion for summary judgment.

The defendants have also submitted evidence, in the form of police incident reports of a reverse sting operation, which decisively link the plaintiff, Luis Fernandez, with his alias "Alex". (see defendants' Exhibit H, Incident Report of reverse sting operation, signed by Detective Trohalis and attached to January 26, 2004 motion for summary judgment). The plaintiff has not submitted any evidence, in accordance with the standard of review for summary judgment, disputing the results of the reverse sting operation.

(d.)    The plaintiff claims that the warrant affidavit left-out "material facts", and these deficiencies prevented a finding of probable cause. (pages 10, 16 and 45 of cross-motion). The plaintiff's argument largely consists of the blank assertion that material facts were left out of the warrant affidavit. The plaintiff does not specifically identify these over-looked material facts. Nor does the plaintiff present evidence of these neglected material facts, in accordance with the standard of review for summary judgment. Rather, he merely points out the TYPES of information, which he argues should have been included. He does not point to the actual information itself. In other words, the plaintiff is attempting to support his cross-motion with a negative; with the absence of information.

The plaintiff provides a list of these information types on page 10 of his cross-motion brief. These types include: the exact sums of Danbury police evidence moneys supplied to the informants during the controlled purchases; the quantity and weight of the packages purchased from the plaintiff and Mr. Ramirez; sworn or written statements

22

from the informants (the plaintiff does not specify what these statements should address); the testing of the packages of cocaine (purchased during the controlled purchases) for fingerprints; "surveillance photographs" of the informants, Mr. Ramirez and the plaintiff; and a description of the types of equipment used during the surveillance.

The inclusion, or failure to include this information in the warrant affidavit has no bearing on the neutral magistrate's finding of probable cause. Nor does the plaintiff cite to any case law stating that these types of information must be included in a warrant affidavit prior to a finding of probable cause.

There is only one, specific piece of information which the plaintiff submits in support of his argument. He states that the warrant affidavit fails to identify the registered owner of the white Nissan Pathfinder, "registration 569 NVH", as Mercedez Moya, the live-in girlfriend of Angel Ramirez. This fact is not material to the question of whether or not there was probable cause for the January 7, 2000 search. The January 6, 2000 search warrant was not issued for the search of the white Nissan Pathfinder. Nor does this fact place in dispute those facts, as documented in the warrant affidavit, that clearly link narcotics activity to the second-floor apartment at 128 Osborne Street.

### 3.    **Arrest based on an unexecuted warrant.**

The plaintiff argues that the magistrate's finding of probable cause was improper in that it was based upon an unexecuted warrant. (page 9 of cross-motion). The plaintiff's argument is either the product of his failure to read and understand the warrant affidavit, or is a deliberate attempt to misrepresent the contents of the January 6, 2000 warrant affidavit. All evidence submitted by the plaintiff demonstrates that the subject January 6, 2000 search warrant was issued upon a finding of probable cause by a neutral magistrate, after the magistrate had reviewed the January 6, 2000 warrant affidavit. The unexecuted warrant, which the plaintiff refers to, is the November 23, 1999 warrant for the search of the second-floor apartment, for the brown Honda, for the white Nissan pathfinder, and for the person of Angel Ramirez. The defendants did not execute this warrant when the plaintiff and Mr. Ramirez altered their narcotics operation. Rather, the defendants continued the investigation, conducting yet another controlled

purchase of cocaine from the plaintiff on January 3, 2000. The subject January 6, 2000 warrant affidavit documents this subsequent period of investigation, as well as incorporating the contents of the November 23, 1999 warrant. See above <u>Section IV., A., 1., (c.)</u> of this brief for further discussion.

Inclusion of the evidence contained in the November 23, 1999 warrant did not invalidate the January 26, 2000 warrant affidavit, nor did it invalidate the neutral magistrate's finding of probable cause. The defendants did not execute the subject January 7, 200 search pursuant to the November 23, 1999 warrant. Rather, the defendants had applied for and received a new, active warrant on January 6, 2000.

### 4.    Plaintiff subjected to an invalid "Terry" frisk.

The plaintiff claims that he was subjected to an invalid "Terry" frisk when the defendants stopped the white Nissan Pathfinder on Tamarack Avenue. (pages 17-18 of cross-motion). This claim appears to contradict the plaintiff's additional claim on page 17 of his brief that he was *NOT* subjected to a pat down. The defendants have already provided an in-depth analysis of this issue, using the very same evidence as cited to by the plaintiff, in <u>Section III, A., 1., d.</u> (page 26 of brief) of their January 26, 2004 motion for summary judgment. The defendants have demonstrated that the defendants had reasonable and articulable suspicion to conduct a "Terry" frisk of the plaintiff on Tamarack Avenue.

Specifically, the plaintiff argues that the pat down on Tamarack Avenue "exceeded" the scope of Terry, in that money was removed from his wallet. (page 19 of cross-motion). The plaintiff's own exhibits refute that money was taken from the plaintiff's person at this time. Plaintiff's Exhibits 12 and 13, the evidence tables compiled by Detectives Merullo and Krupinsky, indicate that $46.00 was taken from the plaintiff's person after 6:00 p.m., at which time the plaintiff had been transported to Danbury Police Headquarters and placed in custody. (See above <u>Section II, B. (d)</u> of this brief for further discussion). The plaintiff has not submitted any additional evidence, which disputes his own Exhibits 12 and 13.

## 5.    Plaintiff subjected to an invalid, investigatory detention.

The plaintiff's cross-motion also appears to make the argument that the defendants did not have "reasonable suspicion" to detain the plaintiff in the parking lot of a gas station, while the defendants executed the search warrant for the second-floor apartment. (page 13-14 of cross-motion). The defendants have already addressed this issue and established the validity of the investigatory detention of the plaintiff, in Section III, A., 1., e. (page 27 of brief) of their January 26, 2004 motion for summary judgment. The defendants have cited to the same evidence, as relied upon by the plaintiff in his cross-motion, in support of their own legal arguments.

Specifically, the plaintiff appears to be arguing that his detention was invalid in that (a) it was unreasonably long; and (b) other than race, the defendants had no suspicion of illegal activity to merit/justify the detention. The defendants respond as follows:

(a)    The plaintiff claims that his investigatory detention was two hours and 75 minutes in duration. (page 17 of cross-motion). The plaintiff appears to confuse the time when he was he was detained with the time he was placed in custody. On page 17 of his cross-motion he describes his detention as occurring at police headquarters. On page 15 of his cross-motion, the plaintiff states that his detention occurred at police headquarters, and was approximately one hour in duration.

Regardless of the plaintiff's blank assertions on pages 15 and 17 of his brief, the plaintiff's own exhibits demonstrate exactly when, where and how long the plaintiff was detained. The warrant affidavit and arraignment affidavit (plaintiff's Exhibit 5), clearly show that the plaintiff was detained in the parking lot of a nearby Mobil station on Tamarack Avenue, while the defendants executed the search warrant for the second-floor apartment at 128 Osborne Street. The plaintiff was detained in this lot sometime just after 4:30 p.m. The defendants executed the warrant at 4:49 p.m. Upon finding cocaine in the apartment, the defendants radioed back to those officers who had remained with the plaintiff and Mr. Ramirez in the parking lot, and advised them to place the plaintiff and Mr. Ramirez in custody. The approximate time of this phone call was 5:00 p.m. (see warrant affidavit, arraignment affidavit, evidence table compiled by

Detective Krupinsky, and defendant's Exhibit D, affidavit of Detective Trohalis, attached to their 1/26/04 motion for summary judgment). The plaintiff's very own evidence shows that his detention only occurred for a mere 30 minutes. The detention occurred at the gas station, not at police headquarters. Again, please see defendants' argument on investigatory detention in <u>Section III, A., 1., e.</u> (page 27 of brief) of their January 26, 2004 motion for summary judgment.

(b)     The plaintiff claims that his detention was based on a "generalized suspicion of criminal activity base solely on race…" (pages 15-16 of cross-motion). Again, the plaintiff's own evidence refutes his argument. The warrant affidavit, plaintiff's Exhibit 5, documents five months of police surveillance and observation of the plaintiff coming and going from the second-floor apartment. The warrant affidavit contains a particularized, physical description of the plaintiff: "a Hispanic male, thin build, approximately 160 lbs, approximately 5"6 tall, approximately 23 years of age, clean shaven, usually wears a baseball hat and has a large scar on the left cheek of his face." (¶17 of warrant affidavit, plaintiff's Exhibit 5). The warrant affidavit also documents multiple controlled purchases of cocaine from the plaintiff, witnessed and observed by two confidential informants as well as by some of the defendant detectives. All the undisputed evidence clearly shows that the defendants had reason to believe that the plaintiff resided in the second-floor apartment; that criminal activity was occurring within this apartment; and therefore had reasonable suspicion to detain the plaintiff while they executed the search warrant. (See <u>Section III, A., 1., e.</u> – page 27 – of defendants' motion for summary judgment).

   **6.     The alleged 'Knock and Announce' violation.**

   The plaintiff argues that the 1/07/00 search of the second-floor apartment violated the 4th Amendment in that the defendants failed to knock and announce their presence, prior to executing the warrant. On page 22 of his brief, the plaintiff argues that the defendants did not have "reasonable suspicion of anyone in the apartment, danger or destructive to the investigation." He proceeds in the very same sentence to contradict himself, arguing that defendants had knowledge that Mr. Ramirez' live-in girlfriend, Mercedez Moya, was within the apartment. (page 22 of cross-motion).

Regardless, the plaintiff has failed to submit any evidence, in the form of affidavits, sworn testimony, and/or admissible evidence that: the police did not knock and announce their presence (both Mr. Ramirez and the plaintiff were detained in the parking lot of a gas station at the time, and were not present when the police entered their apartment); that the police did not have "reasonable suspicion of anyone in the apartment, danger or destructive to the investigation"; or that Mercedez Moya, or any other person for that matter, was present within the second-floor apartment when the warrant was executed (the warrant affidavit and arraignment affidavit, plaintiff's Exhibit 5, indicate that no one was within the apartment at the time of the search).

Even if the plaintiff was able to present evidence that the police failed to knock and announce, the circumstances of the present matter excused the knock and announce requirement. The defendants have already addressed this issue in <u>Section III, A., 1., f.</u> (page 29 of brief) of their 1/26/04 motion for summary judgment.

### 7.    <u>Arrest based on race.</u>

The plaintiff argues that his 1/07/00 arrest violated the 4th Amendment in that it was solely based on his race. (pages 15-16 of cross-motion). Again, the plaintiff fails to cite to any evidence in support of this claim. In fact, the plaintiff's very own evidence, Exhibit 5 – the warrant affidavit and the arraignment report, disproves his claim. Plaintiff's Exhibit 5 documents five months of police surveillance and observation of the plaintiff coming and going from the second-floor apartment, en route to designated meeting locations for the controlled purchase of cocaine. The warrant affidavit contains a particularized, physical description of the plaintiff: "a Hispanic male, thin build, approximately 160 lbs, approximately 5"6 tall, approximately 23 years of age, clean shaven, usually wears a baseball hat and has a large scar on the left cheek of his face." (¶17 of warrant affidavit, plaintiff's Exhibit 5). The warrant affidavit also documents multiple controlled purchases of cocaine from the plaintiff, witnessed and observed by two confidential informants as well as by some of the defendant detectives. All the undisputed evidence clearly shows that the defendants had reason to believe that the plaintiff resided in the second-floor apartment; that criminal activity was occurring within this apartment; and therefore had probable cause to arrest the plaintiff. The defendants

have already addressed this issue in <u>Section III, A., 1.</u> of their 1/26/00 motion for summary judgment.

### 8.    <u>Improper 'Inventory/Administrative search'.</u>

The plaintiff also claims that he was subjected to an improper "Inventory/Administrative search". The plaintiff claims that this "inventory" search was improper in that his property, located in the second-floor apartment, fell outside the scope of this "Inventory/Administrative search". The defendants are not certain what the plaintiff is referring to. All of the plaintiff's evidence indicates that the only search that occurred on January 7, 2000, was the search of the person of Angel Ramirez and of the second-floor apartment at 128 Osborne Street, pursuant to the January 6, 2000 warrant. The plaintiff has not presented any evidence of a second, "Inventory/Administrative" search. The defendants have already demonstrated that the plaintiff's property fell within the scope of the 1/06/00 search warrant in the above <u>Section IV, A., 2., (b.)</u> of this brief, and <u>Section III, A., 1., a., i.</u> (page 22of brief) of their 1/26/04 motion for summary judgment.

### 9.    <u>The plaintiff's *Monell*-style claim.</u>

The plaintiff appears to be making a *Monell*-style claim against the City of Danbury on page 37 of his cross-motion. The plaintiff's *Monell* claim solely consists of: (1) his 'boiler-plate' citation: "[a] municipality such as Danbury may be liable under §1983 for the unconstitutional acts of its employees if some custom or policy of the municipality was the moving force behind the Constitutional violation" (page 37 of cross motion); and (2) his allegation that the defendants violated "procedure" by "failing to order the plaintiff out of the vehicle" (page 15 of cross-motion).

The plaintiff fails to specifically identify the policy(ies) that have been allegedly violated. The defendants have already presented a complete *Monell* analysis in <u>Section III, B.</u> (page 38 of brief) in their 1/26/04 motion for summary judgment.

Moreover, the plaintiffs are barred from making a *Monell*-style claim against Danbury, as they have not named the City of Danbury as a defendant in this matter, and

they have only sued the defendants in their INDIVIDUAL capacities. (See attached <u>'Waiver of Service Returned Unexecuted'</u>).

### 10.    <u>The plaintiff's qualified immunity analysis.</u>

The plaintiff attempts to respond to the defendants' special defense with his own legal analysis of qualified immunity. The plaintiff's qualified immunity argument comprises merely one paragraph on page 41 of his cross-motion, consisting of a brief synopsis of boilerplate law on qualified immunity. The plaintiff has not submitted any evidence in support of his qualified immunity analysis. The defendants have already shown that they are entitled to a qualified immunity defense in <u>Section III, A., 2.</u> (page 32 of brief) of their 1/26/04 motion for summary judgment. The plaintiff has only sued the defendants in their individual capacities. (See attached **<u>Exhibit B</u>**, 'Waiver of Service Returned Unexecuted'). Therefore, qualified immunity applies to the entirety of the plaintiff's claims.

On page 40 of his cross-motion, the plaintiff addresses the doctrine of qualified immunity specifically in reference to defendant Robert Paquette, Chief of Police. The plaintiff argues that Chief Paquette is not entitled to the defense of qualified immunity as he "should have known or knew that subordinates actions violated clearly established constitutional rights." (page 40 of cross-motion). The plaintiff has not submitted any evidence in support of this argument. Again, the defendants have already demonstrated that defendants are entitled to qualified immunity in <u>Section III, A., 2.</u> (page 32 of brief) of their 1/26/04 motion for summary judgment.

Furthermore, Chief Paquette need not even invoke the qualified immunity defense, as he is not a proper party to this lawsuit. In support of their legal argument, the defendants have submitted Chief Paquette's affidavit. The affidavit indicates Chief Paquette had no personal involvement: in the five-month investigation; in the warrant application process; and in the execution of the warrant on January 7, 2000. (See Affidavit of Chief Paquette, attached as a supporting exhibit to the defendants' 1/26/04 motion for summary judgment). The plaintiff has not submitted any evidence, disputing the contents of the Chief's affidavit. Once again, the plaintiff has only sued the Chief in

29

his individual capacity. (See attached **Exhibit B**, 'Waiver of Service Returned Unexecuted').

### 11.    Plaintiff's attempt to challenge the warrant affidavit.

In a last effort to challenge the neutral magistrate's finding of probable cause on January 7, 2000, the plaintiff argues that the facts contained in the warrant affidavit did not in fact give rise to probable cause. Though he incorporates the warrant affidavit in whole as a supporting exhibit (plaintiff's Exhibit 5), the plaintiff also challenges the contents of the warrant on pages 43 to 44 of his cross-motion.

The plaintiff argues that the warrant affidavit does not "establish probable cause" in that : (a) contains no statement that either of the affiant officers, or the informants, were ever inside the second-floor apartment; (b) contains no indication that "anyone saw the plaintiff carrying a package when he exited from that apartment"; and (c) no evidence that his baseball cap was recovered. (pages 43-44 of cross-motion).

The plaintiff is attempting to support his cross-motion with the absence of evidence. Rather, the standard of review for summary judgment states that a party may only prevail upon a positive showing of evidence, in the form of affidavits, sworn testimony, and/or admissible evidence. The plaintiff has not submitted any evidence, which disputes the contents of the warrant affidavit.

The defendants have already demonstrated in Section III, A., 1., a. (page 19 of brief) of their 1/26/04 motion for summary judgment that the warrant affidavit, even with those deficiencies pointed out by the plaintiff, established probable cause for the January 7, 2000 search. The deficiencies pointed out by the plaintiff do not place into dispute the neutral magistrate's January 6, 2000 finding of probable cause.

### B.    PLAINTIFF'S FALSE EVIDENCE CLAIM

The plaintiff claims on pages 5 and 39 of his cross-motion that the defendants obtained the January 6, 2000 warrant by making "material false statements." This claim merely consists of a blank assertion. The plaintiff does not identify what these "material false statements" actually were. Nor, does the plaintiff cite to any evidence in support of this claim.

The plaintiff also attempts to transform this blank assertion into a *Monell*-style claim at the bottom of page 39 of his cross-motion. As asserted in the defendants' above arguments, the plaintiff may not bring a *Monell*-style claim as: (1) he has failed to set forth the allegations necessary for bringing a *Monell* claim against a municipality; (2) he has only brought suit against the defendants in their individual capacities (See attached '<u>Waiver of Service Returned Unexecuted</u>'); and (3) he did not name the City of Danbury as a defendant in this matter, and therefore his claim lies outside the scope of the pleadings. (See <u>Section III, B.</u> of the defendants' 1/26/04 motion for summary judgment).

## C.    PLAINTIFF'S FALSE ARREST / MALICIOUS PROSECUTION CLAIM

The plaintiff also appears to 'hint' of a false arrest and malicious prosecution claim on page 42 of his cross-motion. The plaintiff's claim merely consists of the words "false arrest" and "malicious prosecution". Reference to these two "claims" occurs within the context of his discussion on damages. (page 42 of cross-motion). The plaintiff has not submitted any evidence in support of these claims. Nor has the plaintiff even made claims for false arrest / malicious prosecution within the body of his comprehensive, twenty-two page complaint. (See attached **Exhibit A**, <u>plaintiff's Complaint</u>). The plaintiff's discovery responses to the defendants contention interrogatories are equally devoid of any reference to a false arrest / malicious prosecution claim. (See attached <u>12/13/03 plaintiff's discovery responses</u>). The plaintiff may not now attempt to prevail on these claims, as they lie outside of the scope of the pleadings, and outside of the scope of discovery.

The plaintiff may not use a dispositive motion as vehicle for bringing additional claims. Moreover, any attempt by the plaintiff, at this point, to 'relate back' and amend his complaint to add this new claim is barred by the resultant prejudicial effect on the defendants. "*Duggins* establishes that courts look unfavorably upon motions seeking to add new claims after opposing counsel has already conducted discovery and expended the costs of filing a summary judgment motion on the original theories… it is not reasonable to require the defendants to anticipate potential amendments during the discovery period… The defendants would be prejudiced by the lost opportunity for

discovery on the new claim." *Williams v. City of Sagninaw* (E.D. Mich. 2002) (attached); citing to *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828 (6th Cir. 1999). The time has already passed for the completion of discovery. (The Court's First Scheduling Order indicates all discovery requests must be filed by November of 2003 – also attached to this brief).

Additionally, the plaintiff is barred from bringing a claim for false arrest / malicious prosecution by the applicable three-year statute of limitations. See *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (Applying a three-year statute of limitations to a Section 1983 claim).

## D.    PLAINTIFF'S EXCESSIVE FORCE CLAIM

The plaintiff now attempts to bring an excessive force claim within the body of his cross-motion for summary judgment. In support of his claim, the plaintiff submits an affidavit provided by one Bristout Bourguignon. Mr. Bourguignon is a fellow inmate of the plaintiffs' at the MacDougall-Walker Correctional Institution, currently serving time for sexual assault. Immigration records show that Mr. Bourguignon has been legally residing in the United States as a permanent resident since 1986. (see attached Bristout Bourguignon – immigration papers). Whereas, immigration records for Luis Fernandez, indicate that he was admitted to the United States in 1999 as a non-immigrant. His non-immigrant status was only good for one year, and expired in 2000. (see attached Luis Fernandez – immigration papers). Nevertheless, Mr. Bourguignon's affidavit states that he has known the plaintiff for 10 years, and that he was in the process of meeting his "friend" just at the moment when the police pulled the white Nissan Pathfinder over on Tamarack Avenue on 1/07/00.

Mr. Bristout's affidavit is dated February 2, 2004, over two years after the 1/07/00 arrest. Mr. Bourguignon's affidavit supplies the only factual allegations in support of the plaintiff's new excessive force claim (with the one exception of the plaintiff's allegation of "arrest at gun point", see rest of argument below). These allegations consist of Mr. Bourguignon's claim to have witnessed the police stop the plaintiff's vehicle, and:

(1)    pull the plaintiff out through the vehicle's window;

(2)    throw the plaintiff down hard on the "pavement floor";

32

(3)    hand-cuff the plaintiff;

(4)    pull the plaintiff's pants down at gun-point and search his body and take money from his wallet; and

(5)    "drag and shove" the plaintiff at gun-point, and slam him into a police car. (See plaintiff's Exhibit 8).

The plaintiff may not attempt to assert a new claim in the body of his cross-motion. The plaintiff's comprehensive, twenty-two-page complaint, consisting of a virtual "Pandora's Box" of civil rights claims, makes no mention of an excessive force claim. Furthermore, the plaintiff's complaint, which is also ripe with detailed factual allegations in support of his claims, is devoid of any reference to the above allegations contained in Mr. Bourguignon's affidavit.

The parties have already conducted discovery. The defendants served the plaintiff with a comprehensive set of discovery requests, including contention interrogatories. These interrogatories requested that the plaintiff state his claims, and state the factual bases of his claims. The plaintiff's responses, dated December 13, 2003, are equally devoid of any reference to the allegations contained in Mr. Bourguignon's affidavit. His responses also fail to place the defendants on notice of an excessive force claim. (See plaintiff's Exhibit 17, plaintiff's 12/13/03 responses).

The defendants object to the plaintiff's excessive force claim on the grounds that it lies outside of the scope of the pleadings and outside of the scope of discovery. The defendants have also moved to strike Mr. Bourguignon's affidavit. (See defendants' Motion to Strike Affidavit in Support of Witness Statement). The plaintiff may not use a dispositive motion, such as his motion for cross-summary judgment, as a vehicle for bringing additional claims. Moreover, any attempt by the plaintiff, at this point, to 'relate back' and amend his complaint to add this new claim is barred by the resultant prejudicial effect on the defendants. "*Duggins* establishes that courts look unfavorably upon motions seeking to add new claims after opposing counsel has already conducted discovery and expended the costs of filing a summary judgment motion on the original theories... it is not reasonable to require the defendants to anticipate potential amendments during the discovery period... The defendants would be prejudiced by the

lost opportunity for discovery on the new claim." *Williams v. City of Sagninaw* (E.D. Mich. 2002) (attached); citing to *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828 (6th Cir. 1999). The time has already passed for the completion of discovery. (The Court's First Scheduling Order indicates all discovery requests must be filed by November of 2003 – also attached to this brief).

The plaintiff has had ample opportunity to bring a claim of excessive force. The defendants do not understand why such seemingly crucial allegations, as evidenced in Mr. Bristout's affidavit, have not been mentioned once in the year and a half since the plaintiff filed his complaint. In fact, all of the plaintiff's exhibits, barring the affidavit itself, make no mention of Mr. Bourguignon and his allegations of excessive force. Mr. Bourguignon's name and his allegations of excessive force do not appear in any of the police reports, warrant affidavit, arraignment affidavit, nor in the plaintiff's copy of the asset forfeiture hearing transcript (plaintiff's Exhibit 17).

Additionally, the plaintiff is now barred from bringing a claim for excessive force by the applicable three-year statute of limitations. See *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (Applying a three-year statute of limitations to a Section 1983 claim).

Assuming that the plaintiff's complaint and discovery responses did in fact place the defendants on notice of an excessive force claim, the plaintiff has nevertheless failed to submit evidence in support of this claim. An allegation in support of an excessive force claim only occurs once within the entirety of both the plaintiff's complaint and discovery responses. In response to defendants' Interrogatory #25: 'Please list and identify each injury you claim to have sustained as a result of the incidents alleged in the Complaint'; the plaintiff responds: "Loss of sleep, shock, humiliation do [sic] to the emotional distress inflicted in the arrest without a warrant or probable cause, nervous and restless do [sic] to the illegal search and seizure, **excessive force do [sic] to the arrest at gun point**." (plaintiff's Exhibit 17) (Emphasis provided).

The defendants still maintain that this response is not sufficient to place them on notice of an entirely new claim. However, even if the Court should rule that the plaintiff

might bring an additional claim by way of an obscure discovery response, the plaintiff's allegation of "arrest at gun point" is not sufficient to sustain a claim of excessive force. Arrest of a suspect in a narcotics/drug-trafficking investigation does not rise to the Constitutional level of 'unreasonableness', necessary for a showing of excessive force. As noted in *U.S. v. Lalor*, 996 F.2d 1578, 1584 (4th Cir. 1993): "drugs and guns go together". The plaintiff's very own evidence, especially Exhibit 5 (the warrant affidavit and the arraignment affidavit) demonstrates that the plaintiff was involved in a substantial narcotics operation. Arrest of the plaintiff in this matter did not constitute excessive force, as it was reasonable for the defendants to suspect that the plaintiff was armed, and it was reasonable for the defendants to take the necessary precaution of conducting the plaintiff's detention at gunpoint. The force used by the defendants in the present matter did not exceed that force reasonably necessary to meet the force imposed by the party to be detained or arrested.

E.    **PLAINTIFF'S ADDITIONAL US CONSTITUTIONAL CLAIMS**

In addition to his 4th Amendment claim, the plaintiff has also alleged violations of the 1st, 5th, 6th, 8th, 9th, 13th and 14th Amendments to the U.S. Constitution. The plaintiff has not cross-moved for summary judgment on his First Amendment claim. See Section III, F., 1. (page 44 of brief) of the defendants' 1/26/04 motion for summary judgment for their discussion of the plaintiff's First Amendment claim.

The plaintiff's discussion of his 5th (page 46 of cross-motion), 6th (pages 46-47 of cross-motion), 8th (page 47 of cross-motion), 9th (pages 47-48 of cross-motion), 13th (page 48 of cross-motion) and 14th Amendment (page 48 of cross-motion) claims merely consist of one paragraph per each claim. Each paragraph simply presents a blank assertion that the corresponding Amendment has been violated. The plaintiff does not cite to any evidence in support of his claims. Nor does the plaintiff submit a proper legal analysis, complete with the application of law to a specific set of undisputed material facts.

The defendants have moved for summary judgment on each of these claims. Please refer to Sections III, F., 2. through 7. of the defendants' 1/26/04 motion for

35

summary judgment for a complete analysis of the plaintiff's 5th, 6th, 8th, 9th, 13th and 14th claims.

## F.    THE PLAINTIFF'S STATE CONSTITUTIONAL CLAIMS

The plaintiff has cross-moved for summary judgment on Article I, Sections 7, 8 and 20 of the Connecticut state constitution. The plaintiff's discussion of these claims occurs on pages 48 to 49 of his cross-motion. Once again, the plaintiff's arguments consist of blank assertions, unsupported by any evidence. He has not supplied a proper legal analysis, complete with the application of relevant law to a specific set of undisputed material facts.

The defendants have already moved for summary judgment on the plaintiff's state constitutional claims. The correct legal analysis of the plaintiff's state constitutional claims may be found in Section III, D. (page 43 of brief) and E. (page 44 of brief) of their 1/26/04 motion for summary judgment.

## G.    THE PLAINTIFF'S TITLE VII CLAIM

The plaintiff has also moved for cross-summary judgment on his Title VII claim. The plaintiff's discussion of this claim is merely comprised of a one-sentence, blank and conclusory assertion on page 49 of his cross-motion. Again, the plaintiff has not submitted any evidence in support of this claim.

The defendants have already moved for summary judgment on the Title VII claim in Section III, F., 8. (page 51 of brief) of their 1/26/04 motion.

## H.    THE PLAINTIFF'S ASSORTED STATUTORY CLAIMS

The plaintiff has also cross-moved for summary judgment on: (1) 18 U.S.C. § 1621 (page 49 of cross-motion); (2) 18 U.S.C. § 3109 (page 22 of cross-motion); (3) 28 U.S.C. § 1746 (page 50 of cross-motion); (4) C.G.S. § 54-36h(b) (page 32 of cross-motion); (5) PA 89-269 (page 32 of cross-motion); and Rule 41(d) (page 35 of cross-motion). None of these statutes and/or acts give rise to a private cause of action. The plaintiff may not attempt to bring a claim under any of these statutes/acts. Furthermore, the plaintiff has not submitted any evidence in support of these claims.

## I.    THE PLAINTIFF'S CLAIMED DAMAGES

The plaintiff has claimed damages in the form a psychological injury. (page 42 of cross-motion). Evidence submitted in support of this claim consists of a single medical intake sheet, dated 3/28/00, upon which the prison psychiatrist notes that the plaintiff is "depressed". (plaintiff's Exhibit 17).

The note does not provide a causal-link between the subject incident of this lawsuit, the plaintiff's 1/07/00 arrest, and his claimed psychological injury. The prison psychiatrist does not offer an opinion that the plaintiff was traumatized as a result of his 1/07/00 arrest. The note merely observes that the plaintiff appears to be in a depressed state, while incarcerated. It does not specifically attribute this state to the events of the 1/07/00 arrest. As the plaintiff himself notes: "Partee v. Lane, 528 F.Supp. 1254 (N.D. III. 1981)…No doubt most, if not all prisoners are depressed some if not all the time." (page 51 of cross-motion). The plaintiff has failed to submit any evidence that he was injured, physically or mentally, as a result of his January 7, 2000 arrest.

## V.    CONCLUSION

WHEREFORE, for all of the foregoing reasons, the defendants request that the Court deny the plaintiff's cross-motion for summary judgment in its entirety. The plaintiff has failed to file a motion in accordance with Local Rule 56(a). The plaintiff has failed to cite to any evidence, in accordance with the standard of review for summary judgment, in support of his claims. The plaintiff has failed to show that the defendants injured his civil rights. And, the plaintiff has failed to show that he was injured in any manner, either psychologically or physically, as a result of his January 7, 2000 arrest.

DEFENDANTS,
CHIEF ROBERT PAQUETTE,
DETECTIVE SGT. FISHER,
DETECTIVE RAMOS,
DETECTIVE JOHN MERULLO,
DETECTIVE JOHN KRUPINSKY,
DETECTIVE MARK TROHALIS,
OFFICER KARL MURPHY
OFFICER SELNER and
OFFICER RIOLO


By_____
    Eric D. Eddy
    ct25242
    Howd & Ludorf
    65 Wethersfield Avenue
    Hartford, CT  06114
    (860) 249-1361
    (860) 249-7665 (Fax)
    E-Mail:  eeddy@hl-law.com

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following pro se party this 24th day of March, 2004.

Mr. Luis Fernandez
Inmate Number 279900
MacDougall-Walker
  Correctional Institution
1153 East Street, South
Suffield, CT 06080

Eric D. Eddy