## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT


LUIS FERNANDEZ                    :
                                  :              **PRISONER**
        v.                        :  Case No.  3:02cv2090(JBA)(JGM)
                                  :
ROBERT PAQUETTE, et al.[1]        :

### <u>RULING ON PENDING MOTIONS</u>

Plaintiff, Luis Fernandez, currently confined at the MacDougall Correctional Institution in Suffield, Connecticut, commenced this civil rights action pursuant to 28 U.S.C. § 1915. He alleges that on January 7, 2000, the defendants arrested him without probable cause and unlawfully searched his residence. Pending before the court are cross motions for summary judgment and motions to strike affidavits.  For the reasons set forth below, the defendants' motion for summary judgment is granted and the plaintiff's motion for summary judgment and all motions to strike affidavits are denied.

I.    <u>Standard of Review</u>

"The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to

---

[1]The named defendants are Chief P. Robert Paquette, Detective Sergeant Fisher, Detective Ramos, Detective John Menullo, Detective Krupinsky, Detective Mark Trohalis, Officer Karl Murphy, Officer Selner and Officer Riolo.

issue-finding; it does not extend to issue-resolution." <u>Gallo v. Prudential Residential Servs. Ltd. P'ship</u>, 22 F.3d 1219, 1224 (2d Cir. 1994). The burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56(c), <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986), <u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 286 (2d Cir. 2002) (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970)). Not all factual disputes are material. The court considers the substantive law governing the case to identify those facts which are material. "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248.

A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .'" <u>Miner v. Glen Falls</u>, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted). An asserted dispute over a material fact is considered "genuine," so as to defeat the motion for summary judgment, "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>McCarthy v. American Int'l Group, Inc.</u>, 283 F.3d 121, 124 (2d Cir. 2002).

Even though the burden is on the moving party to demonstrate the absence of any genuine factual dispute, the party opposing summary judgment "may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (internal quotation marks and citations omitted).  It "'must do more than simply show that there is some metaphysical doubt as to the material facts.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).  The non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 428 (2d Cir. 2002) (internal quotation marks and citation omitted).  Instead, the non-moving party must produce admissible evidence that supports its pleadings. See First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289-90 (1968).  A "'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Anderson, 477 U.S. at 252).

In reviewing a motion for summary judgment the court resolves all ambiguities and draws all inferences in favor of the nonmoving party. See Niagara Mohawk, 315 F.3d at 175.  Thus,

3

"[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991). See also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992).  Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein.  See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  Despite this liberal interpretation, however, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary judgment.  Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).  A motion for summary judgment cannot be defeated "merely . . . on the basis of conjecture or surmise."  Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F.2d 186, 188 (2d Cir. 1992) (citation and internal quotation marks omitted).

When cross-motions for summary judgment are presented to the court, summary judgment should not be granted "unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely in dispute." Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975).

II.  Facts[2]

On July 28, 1999, the Danbury Police Department began an
investigation of Angel Ramirez, also known as Sandy, and Luis
Fernandez, also known as Alex.  Detective Trohalis met with an
informant who stated that he had personal knowledge that Sandy
and Alex were selling cocaine in Danbury, Connecticut.  The
informant was reliable and known to the police department for
several years.  The informant stated that he had purchased
cocaine from Sandy and Alex on prior occasions and that Sandy and
Alex used the same pager number.  Detective Trohalis asked the
informant to purchase cocaine from Sandy and Alex that day.

The informant called the pager number and later received a
telephone call from Sandy.  Sandy directed the informant to meet
him at a particular location.  The informant went to the location
and waited for Sandy.  When a brown Honda Accord appeared, the
informant spoke to a Hispanic male in the passenger seat and
received a package.  The informant later stated that Alex was
driving the vehicle and Sandy was in the passenger seat.  After
the vehicle left the location, the informant gave Detective
Trohalis a package of white powder.  Detective Trohalis field-

---

[2]The facts are taken from the defendants' Local Rule 56(a)1
Statement of Material Facts Not in Dispute [doc. # 60-4], the
Affidavits of Robert Paquette, Mark Trohalis, John Merullo and
John Krupinsky [doc. # 60-5], the plaintiff's affidavit [doc. #
66-1], the exhibits attached to plaintiff's motion for summary
judgment and reply to defendants' opposition to his motion for
summary judgment [docs. ## 69, 85].

tested the substance in the package, concluded that it was cocaine and then sent the package to the State Toxicology Lab for additional testing. Detective Trohalis and Ramos placed the informant under constant surveillance during the entire drug transaction.

During the third week of October 1999, Detective Trohalis met with a second informant who stated that he had personal knowledge that Sandy and Alex were selling cocaine in Danbury, Connecticut, that Sandy lived in the area of Osborne Street and drove a white sports utility vehicle ("SUV") and Alex drove a brown Honda Accord ("Honda"). The second informant had provided accurate information to the police department in the past and had known Detective Trohalis for more than nine years. The second informant stated that he had purchased cocaine from Sandy and Alex on prior occasions and that Sandy and Alex used the same pager number. On October 22, 1999, Detective Trohalis arranged a controlled buy and observed the second informant meet with Sandy, the driver of an SUV, and purchase from Sandy a white substance that tested positive for cocaine. Detective Trohalis placed the informant under constant surveillance during the entire drug transaction. Detective Trohalis and the informant then followed the SUV and observed it arrive at 128 Osborne Street. Sandy got out of the SUV and entered the second floor apartment.

A check of Danbury Police Department records by Detectives

Trohalis and Merullo revealed that in July 1999, Angel Ramirez had been arrested at the second floor apartment at 128 Osborne Street ("apartment") for Breach of Peace and Interfering with the Duties of a Police Officer. Detective Trohalis met with the second informant during the last week of October and showed him a photograph of Angel Ramirez. The informant identified Ramirez as Sandy.

On November 3, 1999, Detective Trohalis asked the second informant to purchase cocaine from either Sandy or Alex. The second informant called the pager number and later received a telephone call from Sandy. Sandy indicated that Alex would meet the informant at a particular location in Danbury. The informant went to the location and waited for Alex. Detective Trohalis and Officer Chapman placed the informant under constant surveillance during the entire drug transaction. When a Honda appeared, the informant spoke to the driver of the vehicle. After the vehicle left the location, the informant gave Detective Trohalis a package of white powder/rock-type material. The informant stated that he had purchased the cocaine from Alex and that he observed that Alex had several small packages of cocaine on his person at the time of the purchase. Detective Trohalis field-tested the substance in the package, concluded that it was cocaine and then sent the package to the State Toxicology Lab for additional testing. The informant described Alex as a clean shaven Hispanic

male with a large scar on his left cheek who weighed approximately 160 lbs., was approximately 5'6" in height, twenty-three years old and usually wore a baseball cap.

Detectives Trohalis and Merullo conducted surveillance of the apartment both night and day. They observed both the SUV and the Honda in the driveway of the apartment. They frequently observed the heavy set Hispanic male, Angel Ramirez, enter and exit the apartment and drive away in the SUV and the small Hispanic man enter and exit the apartment and drive away in either the Honda or the SUV.

During the second week of November 1999, Detective Trohalis asked the first informant to purchase cocaine from either Sandy or Alex. The informant called the pager number and later received a telephone call from Sandy. Sandy directed the informant to wait at a particular location in Danbury. As the informant was on his way to the location, Detective Merullo observed a small, thin Hispanic man get in the SUV and drive towards the meeting location. Detective Merullo identified the SUV as a Nissan Pathfinder ("Pathfinder"). When the Pathfinder pulled up at the location, the informant spoke to the driver. Detective Trohalis recognized the driver as Alex.

After the vehicle left the location, the informant gave Detective Trohalis a clear plastic bag of white powdered substance. Detective Trohalis field-tested the substance in the

package, concluded that it was cocaine and then sent the package to the State Toxicology Lab for additional testing. The informant indicated to Detective Trohalis that Alex had sold him the cocaine. Detective Trohalis placed the informant under constant surveillance during the entire drug transaction.

On November 23, 1999, the defendants obtained a search warrant for the Honda, the Pathfinder, the apartment and for Angel Ramirez also known as Sandy. Detectives Merullo and Trohalis subsequently decided not to execute the warrant when they learned that Sandy and Alex had changed the vehicle used in their drug-trafficking operation.

On January 3, 2000, Detective Trohalis asked the first informant to purchase cocaine from either Sandy or Alex. The first informant called the pager number and Sandy answered. Sandy directed the informant to wait at a particular location. Detectives Trohalis, Merullo and Ramos observed a Pathfinder waiting for the informant at the meeting location. Detectives Trohalis, Merullo and Ramos observed a meeting take place between the persons in the Pathfinder and the informant and later observed the Pathfinder travel back to 128 Osborne Street. Detective Merullo observed Sandy and Alex enter the apartment.

The informant gave Detective Trohalis a clear plastic bag of white powdered substance. Detective Trohalis field-tested the substance in the bag, concluded that it was cocaine and then sent

the package to the State Toxicology Lab for additional testing. The informant told Detective Trohalis that he had met with Sandy and Alex and that Alex was holding the cocaine before he handed to Sandy who then sold it to him. Sandy was driving and Alex was in the passenger seat. The Department of Motor Vehicles had no information concerning the registered owner of the Pathfinder. Detectives Trohalis, Merullo and Ramos placed the informant under constant surveillance during the entire drug transaction.

On January 6, 2000, Detectives Trohalis and Merullo applied for search warrant for the apartment and Angel Ramirez. In the affidavit accompanying the warrant application, Detectives Trohalis and Merullo averred that their five-month investigation supported their belief that probable cause existed that Angel Ramirez, also known as Sandy, and a Hispanic male known as Alex, were selling cocaine together in the City of Danbury. Detectives Trohalis and Merullo described Alex as a 5' 6" tall Hispanic male with a thin build and a scar on his left cheek. Detectives Trohalis and Merullo also believed that probable cause existed that Sandy and Alex used a telephone pager, number 289-4343, to facilitate their cocaine sales, that they used a Pathfinder to make deliveries of the cocaine and that they used the apartment to store cocaine and the proceeds from drug sales.

On January 6, 2000, a neutral magistrate of the Danbury Superior Court found probable cause for the issuance of search

10

warrants for the apartment and Angel Ramirez.  The warrants also
authorized the seizure of "cocaine, white powdered substances,
cutting agents for narcotics, grinders, packaging materials,
weighing scales, strainers, United States currency, all financial
records, safes, documentation of residence, records of
identification, records of drug transactions, telephone pagers,
and police scanners."  Ex. A, Defs.' Local Rule 56(a)1 Statement,
Aff. and Appl. Search and Seizure Warrant at 5.  The judge also
determined that the requirement that a copy of the affidavit in
support of the warrant be given to the owner or person named in
the affidavit should be waived because delivery of the affidavit
would jeopardize both the safety of the informant named in the
affidavit and any continuing investigation of the subjects of the
affidavit.

Detectives Fisher, Ramos, Merullo, Krupinsky, Trohalis and
Officer Murphy executed the warrant on January 7, 2000.  They set
up surveillance of the apartment at approximately 4:00 p.m.
Detective Merullo observed the Pathfinder arrive at the
apartment.  Alex was driving the vehicle.  He left the vehicle
and went into the apartment.  A short time later, Detective
Merullo observed Angel Ramirez and Alex leave the apartment and
get into the Pathfinder.  Angel was driving the vehicle and Alex
was in the passenger seat.  The defendants observed the
Pathfinder turn onto Tamarack Avenue in Danbury, Connecticut and

decided to execute the search and seizure warrant for Angel
Ramirez.

The defendants stopped the Pathfinder on Tamarack Avenue at
approximately 4:30 p.m.  Detective Trohalis patted down Alex for
weapons and/or contraband.  Detective Trohalis avers that no
items were taken from Alex at that time.  In contrast, plaintiff
claims that his wallet, money and identification were seized from
him at this time.  Both Angel Ramirez and Alex were detained.
The defendants took the keys from the ignition of the Pathfinder
and found a key to the apartment.

Detectives Fisher, Merullo, Krupinsky, Trohalis immediately
went to the apartment to execute the search warrant.  Officers
Selner, Riolo and Murphy remained with Angel Ramirez and Alex and
the Pathfinder in the lot of a nearby Mobil station.  At 4:49
p.m. Detectives Fisher, Merullo, Krupinsky, Trohalis used the key
to open the door to the apartment.  No one was present in the
apartment.  The apartment consisted of a kitchen, living room,
bedroom, bathroom and an attic bedroom reached from a stairway in
the bathroom.  At 4:55 p.m., in the first bedroom identified as
having been used by Angel Ramirez and his girlfriend, Detective
Fisher found a shoebox filled with various plastic bags
containing white rock-type substances and powder, an electronic
scale, cash and personal checks made out to cash.  Detective
Krupinsky field-tested one of the bags containing a white rock-

12

type substance and the substance tested positive for cocaine.

Detective Trohalis reported that at approximately 5:00 p.m., the detectives in the apartment radioed to the officers at the Mobil Station and advised Officer Murphy to transport Angel Ramirez and Alex to the police station and place them in custody. The detectives also advised Officer Murphy to have the Pathfinder towed to the police station so that an effort to seize the vehicle under State asset forfeiture could be made. According to police records, approximately thirty minutes expired between the time the Pathfinder was stopped and the time that Angel Ramirez and Alex were transferred to police headquarters and placed in custody.

Detectives continued to search the first bedroom and located records of occupancy, a gas bill in the name of Angel Ramirez and Idenyzes Moya, an electronic calculator, a small plastic bag containing white powder, a gray metal box containing over $5,000 in cash, two electronic pagers and a piece of mail addressed to Angel Ramirez at 128 Osborne Street. The detectives also found a loaded 9mm handgun under the mattress of the bed, two boxes of ammunition, a list of drug records, $700.00 in cash and a passport for Angel Ramirez on top of the dresser. They discovered a plastic bottle stuffed in a shoe in the closet containing thirty-six bags of white powder and fifteen plastic bags of white powder in a pocket of a shirt in the bedroom. They

located two electronic scales in a cabinet in the kitchen and six boxes of plastic bags.

The detectives began to search the attic bedroom at 5:12 p.m. The attic bedroom could only be accessed from inside the apartment and did not have a separate entrance or exit. The door to the attic bedroom was open and unlocked. The detectives found one shoebox containing a plant-like material and another shoebox containing a case with over $400.00 in cash, and a shoe containing $11.00 in cash. The plant-type material tested positive for marijuana. The detectives also found an envelope addressed to Alex Edwart, a Spanish passport for Luis Manuel Fernandez Arias, a Florida driver's license, a New York learner's permit and Dominican Immigration papers under the same name, a Connecticut Motor Vehicle Department title and registration papers and a Social Security card in the name of Luis Fernandez. The detectives also found a Bell Atlantic Mobile cellular telephone bill in the kitchen in the name of Luis Fernandez in the amount of $891.00.

The detectives finished their search of the second floor apartment at 128 Osborne Street at approximately 6:30 p.m. and left copies of the search warrants on the kitchen table. They returned to the police station at approximately 6:40 p.m. The defendants provided the Angel Ramirez and Alex with copies of the search warrants at the police station.

14

Either at the time the defendants pulled the Pathfinder over or after the search of the apartment, the defendants searched Angel Ramirez and seized over $300.00, a telephone pager and a cellular telephone from him.[3]  Both Angel  Ramirez and Alex were processed and held on $250,000.00 bond.

The plaintiff was charged with one count of possession of narcotics in violation of Connecticut General Statutes § 21a-27(a), one count of sale of certain illegal drugs in violation of Connecticut General Statutes § 21a-278(a), one count of possession of a controlled substance within 1,500 feet of a school in violation of Connecticut General Statutes § 21a-278a(b), and one count of possession of a controlled substance greater than four ounces in violation of Connecticut General Statutes § 21a-279(c).  The plaintiff pleaded nolo contendere to count one and the judge found him guilty.  The judge sentenced him to an eight year suspended sentence with four years of probation.  The plaintiff was arrested a second time on October 27, 2000.  The court found him guilty of multiple narcotics

---

[3] The evidence log indicates that the defendants seized a wallet containing $328.00 and a pager from Angel Ramirez and a cellular telephone from the vehicle at 4:35 p.m., just after they pulled the vehicle over.  The arrest and arraignment report indicates that Ramirez was searched at the police station after the search of the apartment had been concluded and $333.00, a pager and a cellular telephone was seized from him at that time. Although this evidence is inconsistent, it has no bearing on the plaintiff's claims.  It is not contested that the defendants had a valid search warrant for Angel Ramirez.

offenses.  On August 24, 2001, the court imposed a twenty year sentence.

Chief of the Danbury Police Department Robert Paquette did not have any involvement in the five-month investigation, the application for the search and seizure warrants or the actual execution of the warrants.

III. <u>Discussion</u>

The defendants move for summary judgment on nine grounds. In opposition to their motion, plaintiff filed his own motion for summary judgment.  Because the parties have also filed several motions relating to the adequacy of affidavits filed in support of both motions for summary judgment, the court considers these preliminary motions before addressing the motions for summary judgment.

A.    <u>Motions to Strike [Docs. ## 91, 92, 93, 103]</u>

The plaintiff asks the court to strike the affidavits of John Krupinsky, John Merullo, Mark Trohalis and Robert Paquette pursuant to several Connecticut Rules of Evidence.  The federal court is not bound by the Connecticut Rules of Evidence.  Rule 56(e), Fed. R. Civ. P. provides, in part, that: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  The plaintiff claims that the

16

affidavits of Krupinsky and Merullo should be stricken because
they contradict responses by these defendants to requests for
admission concerning evidence flow charts.[4]  The plaintiff does
not contend that the affidavits of Krupinsky and Merullo are not
made on personal knowledge or that the facts in the affidavits
would not be admissible at trial.  Thus, the plaintiff has failed
to set forth a valid basis to strike these affidavits and the
motions are denied.

The plaintiff also seeks to strike the affidavit of Mark
Trohalis.  The plaintiff does not contend that Detective
Trohalis' Affidavit is not made on personal knowledge or that the
facts in the affidavits would not be admissible at trial.
Instead, the plaintiff claims that the exhibit attached to the

---

[4] The plaintiff clearly misunderstands the defendants'
responses to his requests for admissions.  In his December 8,
2003 requests for admission, plaintiff asks the defendants to
admit that certain exhibits are authentic copies of a flow chart
of items seized by Detective Krupinsky during the January 7, 2000
search of the apartment on Osborne Street.  The plaintiff also
asks the defendants to admit that a particular exhibit is an
authentic copy of a flow chart of items seized by Detective
Merullo during the January 7, 2000 search of the apartment on
Osborne Street.  The defendants denied both requests because
neither Detective Krupinsky nor Detective Merullo seized every
item referenced in the flow charts.  The items were seized by
various officers and/or detectives involved in the search of the
apartment.  In their affidavits, both detectives aver that they
compiled evidence tables documenting the items found during the
search of the Osborne Street apartment, the time the items were
found, the location of the items and the identity of the officer
who found the items.  The detectives also aver that the evidence
tables attached to their affidavits are authentic copies of the
original evidence tables prepared by them at the time of the
search of the apartment.

17

affidavit is incomplete.  Detective Trohalis avers that the
Arraignment Report and Affidavit attached to his affidavit as
Exhibit B is an authentic copy of the Arraignment Report and
Affidavit of the January 7, 2000 arrest of Angel Ramirez and Luis
Fernandez.  The document attached as Exhibit B, however, appears
to be parts of both arraignment reports.  The first page
references Angel Ramirez and the second two pages reference Luis
Fernandez.  There is no evidence to suggest that the failure to
attach all pages of the arraignment reports was intentional.  The
court notes that the defendants have admitted that the three-page
Arraignment Report and Affidavit attached to the plaintiff's
December 8, 2003 request for admissions is an authentic copy of
the report and affidavit for the arrest of the plaintiff.  (See
Mot. Strike Aff. Krupinsky, Ex. 1.)  In addition, the plaintiff
attaches the full Arraignment Report and Affidavit for his arrest
to his complaint.  The complete Arraignment Report and Affidavit
for the arrest of Angel Ramirez does not appear to have been
submitted by either party as an attachment to any other document
filed in this case.  Thus, the court will disregard Exhibit B to
Detective Trohalis' affidavit because it is incomplete.  Because
the complete Arraignment Report and Affidavit for the arrest of
the plaintiff has been submitted by the plaintiff as an
attachment to his complaint and a copy of the report and
affidavit has been authenticated by the defendants in their

18

response to plaintiff's request for admissions, the court will consider the report and affidavit in ruling on the cross motions for summary judgment.

The plaintiff also moves to strike the affidavit of Chief of Police Robert Paquette because it does not include statements that he knew or should have known about the investigation and subsequent arrest of the plaintiff.  The plaintiff does not contend that the affidavit was not made on personal knowledge or that the facts in the affidavit would not be admissible at trial.  Accordingly, the plaintiff has failed to provide the court with a basis on which to grant the motion and the motion is denied.

    B.    Cross Motions for Summary Judgment

The defendants raise nine arguments in support of their motion for summary judgment.  They contend that: (1) probable cause supported the issuance of the search warrant; (2) the "pat-down" search of the plaintiff and his detainment did not amount to an arrest in violation of the Fourth Amendment; (3) the plaintiff failed to submit evidence to support his claim that they failed to knock and announce their presence prior to execution of the search warrant; (4) they had probable cause to arrest the plaintiff pursuant to the execution of a valid search warrant for the plaintiff's residence (5) they are entitled to qualified immunity as to the federal and state law claims; (6) the plaintiff fails to state a claim against the City of Danbury

and the defendants in their official capacities pursuant to
Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); (7) the
plaintiff fails to state a claim under the First, Fifth, Sixth,
Eighth, Ninth, Thirteenth, Fourteenth Amendments to the
Constitution and under Title VII; (8) the plaintiff fails to
state a claim of excessive force; and (9) the court should
decline to exercise jurisdiction over the plaintiff's state law
claims.

The plaintiff seeks summary judgment in his favor because
defendants arrested him and searched his apartment without
probable cause.  He has filed a memorandum and exhibits in
support of his motion.[5]  On the issue of whether the "pat-down"
search of the plaintiff and his detainment amounted to an arrest
in violation of the Fourth Amendment, the court finds that

---

[5] The plaintiff has not filed in support of his motion for
summary judgment a statement of material facts as to which he
contends there is no genuine issue to be tried, as is required by
D. Conn. Loc. Civ. R. 56(a)1.  The court issued two notices to
the plaintiff informing him that he must file a Rule 56(a)
Statement in support of and in opposition to a motion for summary
judgment.  (See docs. ## 57, 62.)  In addition, the defendants
included a notice with their motion for summary judgment.
Nevertheless, in deciding a summary judgment motion, it is
necessary to look to the record evidence, and inappropriate to
rely solely on statements in the parties' 56(a)1 and 56(a)2
statements.  See Giannullo v. City of New York, 322 F.3d 139, 142
(2d Cir. 2003).  The court will thus consider the exhibits
submitted by plaintiff, and the legal arguments in plaintiff's
motion and memorandum in support of the motion for summary
judgment, in conjunction with defendants' motion for summary
judgment.

material facts remain in dispute.  As to all other claims in
plaintiff's complaint, the court concludes that there is no
genuine dispute of material fact, and grants summary judgment in
favor of the defendants.

    1.  <u>Probable Cause to Issue Search Warrant</u>

The defendants first argue that there was probable cause to
issue the search warrant for Angel Ramirez and the apartment.
"Normally, the issuance of a warrant by a neutral magistrate,
which depends on a finding of probable cause, creates a
presumption that it was objectively reasonable for the officers
to believe that there was probable cause, and a plaintiff who
argues that a warrant was issued on less than probable cause
faces a heavy burden."  <u>Golino v. City of New Haven</u>, 950 F.2d
854, 870 (2d Cir. 1991).

The plaintiff claims that the affidavit in support of the
search warrants contained false statements.  To prevail on this
claim, the plaintiff

> must make the same showing that is required
> at a suppression hearing under <u>Franks v.
> Delaware</u>, 438 U.S. 154, 155-56, 98 S. Ct.
> 2674, 57 L. Ed. 2d 667 (1978): the plaintiff
> must show that the affiant knowingly and
> deliberately, or with a reckless disregard of
> the truth, made false statements or material
> omissions in his application for a warrant,
> and that such statements or omissions were
> necessary to the finding of probable cause.
> <u>Golino [v. City of New Haven]</u> 950 F.2d [864,]
> 870-71 [(2d Cir. 1991), <u>cert. denied</u>, 505
> U.S. 1221 (1992)]; <u>Franks</u>, 438 U.S. at 171-
> 72, 98 S. Ct. 2674.  Unsupported or

> conclusory allegations of falsehood or
> material omission cannot support a <u>Franks</u>
> challenge; to mandate a hearing, the
> plaintiff must make specific allegations
> accompanied by an offer of proof.  <u>See</u>
> <u>Franks</u>, 438 U.S. at 171, 89 S. Ct. 2674.

<u>Velardi v. Walsh</u>, 40 F.3d 569, 573 (2d Cir. 1994).

    The defendants have offered evidence that the search warrant
for Angel Ramirez and the second floor apartment at 128 Osborne
Street in Danbury was properly issued by a neutral state court
judge.  The affidavit in support of the application for the
search warrant included documentation of a Hispanic male named
"Alex" and Angel Ramirez entering and exiting the apartment on
numerous occasions, proceeding to locations to sell cocaine to
confidential informants on five different occasions, and then
returning to the apartment after completing the sales.  The
surveillance occurred over a five month period.  The plaintiff
does not identify the allegedly false statements in the affidavit
in support of the warrant.  He also fails to provide any evidence
to support his claim of false statements.  Accordingly, the
plaintiff has not established a genuine issue of material fact as
to the veracity of the affidavit in support of the warrant, and
has not met his burden of demonstrating that the search warrant
for Angel Ramirez and the second floor apartment at 128 Osborne
Street in Danbury was not supported by probable cause.

    The plaintiff also contends that the warrant did not specify
that the attic bedroom where he kept his belongings was the

22

subject of the search warrant.  He claims that the attic bedroom
was a separate apartment and was not part of the second floor
apartment that was described in the search warrant.

The second floor apartment is described in the affidavit in
support of the search warrant as being part of a two family house
that is accessible from an exterior stairway.  The defendants
have offered evidence that the attic bedroom where the
plaintiff's belongings were found was accessed by a stairwell
from the apartment's bathroom and did not have a separate
entrance or exit.  See Ex. D, Defs.'s Local Rule 56(a)1
Statement, Aff. Det. Trohalis at ¶¶ 10, 11.  In addition, at the
time of the search, the door to the attic bedroom was open and
unlocked.  See id. at ¶ 12.  Furthermore, the plaintiff
acknowledges that his living space encompassed both the second
floor and the attic bedroom.  In his affidavit, he claims that he
ate in the second floor apartment and slept in the attic bedroom
next to another guest room.  (See doc. # 66.)

The plaintiff has offered no evidence to support his claim
that the attic bedroom was a separate apartment.  He does not
indicate that he had a separate key to the bedroom, that the
bedroom had a separate entrance and exit, that the bedroom had a
separate address or that the room had separate utilities from the
rest of the second floor apartment.  Accordingly, the court
concludes that the plaintiff has failed to demonstrate a dispute

23

of material fact as to whether the search of the attic bedroom
was or was not within the scope of the search warrant for Angel
Ramirez and the second floor apartment at 128 Osborne Street in
Danbury.  The defendants' motion for summary judgment is granted
on this ground.

   2.  <u>Probable Cause for Arrest</u>

   Plaintiff's Fourth Amendment claims of false arrest and
illegal search fault defendants' conduct both at the time of his
initial detainment and his formal arrest.  As to his initial
detainment, plaintiff argues that stopping the vehicle in which
he and Angel Ramirez were traveling, searching him, and detaining
him pending execution of a search warrant on a residence where he
lived, constituted arrest without probable cause.  He describes
the encounter as one in which approximately ten officers took him
out of the vehicle at gunpoint, searched him for contraband and
weapons, took his wallet, money and identification from him,
placed him in handcuffs, and put him in a police vehicle before
transporting him to police headquarters.  <u>See</u> Complaint [Doc. #
2] at 15; Plaintiff's Affidavit in Opposition to Defendant's
Motion for Summary Judgment [Doc. # 66-1] at 3.[6]

---

[6] The Court notes that the plaintiff verified his complaint
by attesting under penalty of perjury that the statements in the
complaint were true to the best of his knowledge.  (<u>See</u> Compl. at
18, 22.)  The Second Circuit has held that "a verified complaint
is to be treated as an affidavit for summary judgment purposes,
and therefore will be considered in determining whether material
issues of fact exist, provided that it meets the other

In moving for summary judgment, defendants contend that they acted within constitutional parameters when temporarily detaining the plaintiff, whom they had under surveillance as part of a five-month investigation and who was an occupant of the apartment for which they had a valid search warrant.  The Court agrees, and concludes that even if plaintiff's detention and search exceeded the scope of Terry v. Ohio, 392 U.S. 1 (1968), and were incident to a warrantless arrest, the police had ample probable cause for the arrest at the time they pulled over the vehicle.  "[P]robable cause for arrest 'exists where the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that and offense has been or is being committed." United States v. Cruz, 834 F.2d 47, 50 (2d Cir. 1987) (quoting Brinegar v. United States, 338 U.S. 160, 175-76 (1949)) (internal quotation omitted).  To establish probable cause for an arrest, the officer need only establish a "probability or a substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 244 n.13 (1983).  Warrantless arrests if supported by probable cause are permissible under the Fourth Amendment even if the officer has adequate opportunity to procure a warrant after

---

requirements for an affidavit under Rule 56(e)." Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).

developing probable cause.  See United States v. Watson, 423 U.S. 411, 423 (1976) (upholding arrest without warrant on the basis of information provided by informant several days earlier).  "[A] policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest." Gerstein v. Pugh, 420 U.S. 103, 113-14 (1975).

Here, defendants' unrefuted evidence establishes that at the time police stopped the Nisson Pathfinder in which plaintiff and Angel Ramirez were traveling, they had a valid search warrant for Ramirez and information based on a five-month investigation that Ramirez and a companion known as "Alex" used the Pathfinder when selling narcotics.  In the course of the investigation, the officers had come to recognize and identify the plaintiff as "Alex," and had both the Pathfinder and a second floor apartment at 128 Osborne Street in Danbury, Connecticut under surveillance. The officers worked with two reliable confidential informants and observed several controlled buys of cocaine from the plaintiff and Ramirez taking place in the Pathfinder.  See Affidavit in Support of Search and Seizure Warrant [Doc. # 60-5, Ex. A].  One such controlled buy occurred just days before plaintiff's arrest, in which Detectives Trohalis, Merullo, and Ramos observed the informant meet with persons in the Pathfinder before returning to

Trohalis with a package that tested as cocaine.  The officers followed the Pathfinder and observed as it returned to 128 Osborne Street, and as the two men left the S.U.V., Merullo informed the other officers he had previously identified the two men as Angel Ramirez and "Alex."[7]  <u>See</u> Affidavit in Support of Search and Seizure Warrant [Doc. # 60-5, Ex. A] at ¶¶ 25-26.

On the day of the arrest, the police were prepared to execute a search warrant for the second floor apartment at 128 Osborne Street in Danbury, Connecticut, and Detectives Merullo, Fisher, Ramos, Krupincki, and Trohalis, along with Officer Murphy, had the residence under surveillance.  Detective Merullo observed the Nisson Pathfinder arrive at the residence and park in the driveway, and observed the plaintiff exit the vehicle, enter the second floor apartment, and then a short time later leave the apartment with Ramirez and begin to drive away in the Pathfinder.  The officers followed the Pathfinder and stopped it a short distance away on Tamarack Avenue, whereupon plaintiff was searched, handcuffed, and detained while Detectives Trohalis, Krupisky, Merullo, and Fisher returned to 128 Osborne Street to execute the search warrant.

---

[7]Plaintiff was identified as Alex in November 1999, when, after observing a controlled buy between a confidential informant and the driver of the Nisson Pathfinder, the officers "had a clear unobstructed look at the operator as he drove away," and "could see that the Hispanic male known to the informant as 'Alex' was operating the vehicle."  <u>See</u> Affidavit in Support of Search and Seizure Warrant [Doc. # 60-5, Ex. A] at ¶20.

Thus, present on the scene were officers who had personally observed the plaintiff engage in criminal activity, or who relied on the information provided by other officers or confidential informants participating in the five-month investigation.  Given the officers' collective knowledge of the nature and scope of the drug trafficking business conducted by Ramirez and the plaintiff, there is an objective basis for finding probable cause at the time they pulled over the Pathfinder and forcibly detained the plaintiff.  See Cruz, 834 F.2d at 51 (finding probable cause to arrest Cruz at the time they stopped his truck based on "the collective knowledge of all of the officers involved in the surveillance efforts.")  Moreover, it is notable that the affidavit supporting the issuance of the search warrant for 128 Osborne Street and for Angel Ramirez was based in large part on the activities of "Alex," whom the officers had previously identified as the plaintiff.  The fact that a neutral magistrate had found probable cause on these facts strongly supports the conclusion that they were sufficient to arrest the person known as "Alex."  Thus, assuming that the initial detention described by plaintiff constituted an arrest, and not simply a temporary investigatory detention pending execution of the search warrant on the residence, the Court concludes on the undisputed facts that it was supported by probable cause.  As such, the search that took place at the scene, which is described by defendants as

a patdown search for weapons, and by plaintiff as a search of his pockets and seizure of his wallet, was permissible as a procedure incident to arrest.[8] See Gerstein, 420 U.S. at 14.

Plaintiff was formally placed under arrest after the police completed the search of his residence and seized cocaine, drug paraphernalia, and plaintiff's identification documents, and he challenges the arrest as lacking probable cause.  This argument is meritless, in light of the probable cause that existed from the time plaintiff was stopped, and particularly given the nature of the evidence seized at plaintiff's residence. Pursuant to a valid warrant, defendants seized a total of 30.2 ounces of cocaine, over $6,000.00 and various drug paraphernalia including electronic scales, a list of drug sales, and packaging materials. In addition, the defendants discovered plaintiff's passport, Dominican immigration papers, a drivers license and learner's

---

[8]The plaintiff has submitted the affidavit of a witness who observed the defendants take the plaintiff out of the car, take money from his wallet, handcuff him and put him in a police vehicle.  See Affidavit in Support of Witness Statement [Doc. # 69-1, Ex. 8].  Defendants dispute that they removed plaintiff's wallet at the time of the initial stop and detention, and point to the evidence tables complied by Detectives Merullo and Krupinsky, which indicate that $46.00 was taken from plaintiff at 6:40 p.m., which was after plaintiff had been placed under arrest and transported to Danbury Police Headquarters.  See Responses to Plaintiff's Fourth Request for Admissions Dated December 31, 2003 [Doc. # 69-1, Ex. 4] at ¶ 14; Special Investigations Division Evidence Table [Doc. # 69-1, Ex. 12].  The factual dispute over the nature of the search is not material, given this Court's conclusion that defendants had probable cause for a warrantless arrest.

permit, a Connecticut Motor Vehicle Department title, a social security card and a cellular telephone bill in the name of the plaintiff.  The defendants' motion for summary judgment is granted as to plaintiffs' claims that he was arrested and searched without probable cause.

    3.  <u>Violation of Knock and Announce Rule</u>

    The plaintiff claims that the defendants failed to knock and announce their presence before entering the apartment in violation of the Fourth Amendment and 18 U.S.C. § 3109.[9]  The defendants claim that the plaintiff has presented no evidence or proof that they failed to knock and announce themselves prior to entering the apartment.  The defendants also argue that even if the plaintiff was able to offer evidence of their failure to announce their presence, there were exigent circumstances excusing their obligation to knock and announce prior to entering the apartment.

    In <u>Wilson v. Arkansas</u>, 514 U.S. 927 (1995), the Supreme Court held that an officer's failure to announce his presence is "among the factors to be considered in assessing the

---

[9] 18 U.S.C. § 3109 provides:
> "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

reasonableness of a search and seizure [and] in some circumstances an officers unannounced entry into a home might be unreasonable under the Fourth Amendment." Id. at 934.   In Richards v. Wisconsin, 520 U.S. 385 (1997), the Supreme Court held that "whenever the reasonableness of a no-knock entry is challenged" the police must show that they had "ha[d] a reasonable suspicion that knocking and announcing their presence under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of a crime, by, for example, allowing destruction of evidence." Id. at 394.[10]   Here, the plaintiff alleges that he had been taken into custody and placed in a police vehicle at the time the defendants went to the apartment to execute the search warrant.   He does not dispute that he was not present at the time the defendants entered the apartment.   He also does not dispute that no one was in the apartment when the police entered it.   Because the arrest and arraignment and incident reports do not include information concerning whether the defendants knocked on the door and announced themselves before entering the apartment, the plaintiff

---

[10]In United States v. Banks, 124 S.Ct. 521 (2003), the Supreme Court's most recent expression of the Fourth Amendment principles at issue in executing a search warrant, the Court held that a 15 to 20 second wait between the time when police announce themselves and force entry into an apartment is reasonable in executing a narcotics trafficking search warrant.   As the issue here is whether the police announced their presence in the first instance, Banks is not applicable.

assumes the defendants did not knock and announce their presence. The plaintiff offers no affidavit or deposition testimony of a witness who was present at the apartment who could testify at trial that he or she did not hear the defendants knock or announce themselves prior to entering the apartment.

The court concludes that the plaintiff has failed to submit evidence to support his claim that the defendants did not knock on the door and announce themselves prior to entering the apartment in violation of the Fourth Amendment and 18 U.S.C. § 3109, and therefore has not made a prima facie case of a Fourth Amendment violation.  Accordingly, the defendants' motion for summary judgment is granted on this ground.[11]

      4.   <u>First, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendment Claims</u>

      a.   <u>First Amendment</u>

---

[11] It has been recognized in other circuits that section 3109 only applies to federal officers.  <u>See</u> <u>United States v. Gatewood</u>, 60 F.3d 248, 249 (6th Cir.1995) (holding federal knock and announce statute, 18 U.S.C. § 3109, does not apply where the case involves application of a state warrant by state law enforcement officers), <u>cert. denied</u>, 116 S. Ct. 546 (1995); <u>United States v. Moore</u>, 956 F.2d 843 (8th Cir.1992), (holding that section 3109 does not apply to a state search conducted by state officers); <u>United States v. Andrus</u>, 775 F.2d 825, 844 (7th Cir.1985) ("[s]ection 3109 regulates execution of a federal warrant by federal officers, but does not govern the conduct of state or local police officers executing state warrants."); <u>United States v. Valenzuela</u>, 596 F.2d 824, 830 (9th Cir.), <u>cert. denied</u>, 441 U.S. 965 (1979).  Here, it is undisputed that the defendants were municipal police detectives or police officers.  Thus, the plaintiff's claim pursuant to 18 U.S.C. § 3109 must be dismissed also because the officers involved in the entry and search of the apartment were local police officers.

The plaintiff alleges the defendants violated his First Amendment rights when they arrested him without probable cause. The defendants contend that the plaintiff has failed set forth any evidence supporting his claim of a violation of his First Amendment rights.  The plaintiff does not address this argument.

The First Amendment to the United States Constitution guarantees that "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. Const. amend I.  The plaintiff has failed to present any evidence demonstrating that the defendants violated his right to exercise his religion, his speech, to assemble or to petition the government.  Thus, the defendants motion for summary judgment is granted as to the plaintiff's First Amendment claim.

b.    <u>Fifth Amendment</u>

The plaintiff alleges the defendants arrested him and searched his residence in violation of his rights to life, liberty and due process under the Fifth Amendment to the United States Constitution.  The defendants argue that the plaintiff's claims are properly analyzed under the Fourth and Fourteenth Amendments.  The Court agrees.

The Due Process Clause of the Fifth Amendment applies to the

federal government, not to the states. See Flowers v. Webb, 575 F. Supp. 1450, 1456 (E.D.N.Y. 1983) (citing cases). Because the defendants are all municipal police officers, the plaintiff has alleged no "federal action." The defendants' motion for summary judgment is granted as to any claims for violation of rights guaranteed by the Fifth Amendment.

     c.   Sixth Amendment

     The plaintiff alleges that the defendants arrested him without informing him of the "nature and cause of the accusation" against him in violation of the Sixth Amendment to the United States Constitution. Compl. at 8. The defendants contend that the Sixth Amendment is inapplicable to the facts in the complaint.

     The Sixth Amendment attaches only at the initiation of adversary criminal proceedings. See United States v. Gouveia, 467 U.S. 180, 187 (1984) (The arraignment signals "the initiation of adversary judicial proceedings" and thus the attachment of the Sixth Amendment). The Supreme Court has clarified that such adversary criminal proceedings are initiated "'by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" Gouveia, 467 U.S. at 188 (quoting Kirby v. Illinois, 406 U.S. 682, 689 (1972) (plurality opinion)). In this case, the plaintiff claims the defendants violated his Sixth Amendment rights during his arrest. He makes no allegations and

34

has presented no evidence concerning any adversarial criminal proceedings that the State of Connecticut may have subsequently commenced against him.  Thus, the Sixth Amendment is not applicable.  The defendants' motion for summary judgment is granted as to the Sixth Amendment claim.

     d.   <u>Eighth Amendment</u>

The plaintiff claims that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when they arrested him without a warrant and without probable cause. The Eighth Amendment's prohibition against the infliction of cruel and unusual punishment is designed to protect those convicted of crimes and thus applies only after convictions.  <u>See Graham v. Connor</u>, 490 U.S. 386, 395 n.10 (1989) (Eighth Amendment right to free from cruel and unusual punishment applies only to the post-conviction stage); <u>City of Revere v. Massachusetts General Hospital</u>, 463 U.S. 239 (1983) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law."); <u>Soltis v. Kotenski</u>, 63 F. Supp. 2d 187, 189 (D. Conn. 1999) ("Eighth Amendment only applies to convicted persons").  Because the plaintiff had not been convicted of the crime for which he was being arrested at the time the defendants were allegedly deliberately indifferent to his rights, his claims are not

35

cognizable under the Eighth Amendment.  The defendants' motion
for summary judgment is granted as to all Eighth Amendment
claims.

      e.   <u>Ninth Amendment</u>

     The plaintiff claims that the defendants violated his rights
under the Ninth Amendment.  The Ninth Amendment provides: "The
enumeration in the Constitution, of certain rights, shall not be
construed to deny or disparage others retained by the people."
U.S. Const. amend IX.  The Ninth Amendment concerns only
unenumerated rights.  Plaintiff has not explained the nature of
his Ninth Amendment claim.  Because a section 1983 claim must be
premised on the violation of a specific right guaranteed by the
United States Constitution or federal law, the Ninth Amendment
does not "independently secur[e] any constitutional right, for
purposes of pursuing a civil rights claim." <u>See</u> <u>Strandberg v.</u>
<u>City of Helena</u>, 791 F.2d 744, 748 (9th Cir. 1986); <u>Khalid v.</u>
<u>Reda</u>, No. 00Civ.7691(LAK)(GWG), 2003 WL 42145, at *6 (S.D.N.Y.
Jan. 23, 2003); <u>see also</u> <u>DeLeon v. Little</u>, 981 F. Supp. 728, 734
(D. Conn. 1997) (holding that "'the [Ninth Amendment] does not
guarantee any constitutional right sufficient to support a claim
under 42 U.S.C. § 1983.'"(citation omitted)).  The defendants'
motion for summary judgment is granted as to the Ninth Amendment
claim.

      f.   <u>Thirteenth Amendment</u>

The plaintiff alleges that his arrest without probable cause violated his right to be free from involuntary servitude.  The Thirteenth Amendment states in pertinent part that "[n]either slavery or involuntary servitude, except as punishment for a crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."   U.S. Const. amend. XIII, § 1.  In <u>United States v. Kozminski</u>, 487 U.S. 931, 942 (1988), the Supreme Court stated that the term involuntary servitude "necessarily means a condition of servitude in which the victim is forced to work for the defendant by the use of threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process."  <u>Id.</u> at 952.  Here, the plaintiff does not set forth any evidence that the defendants have forced him to work.  Accordingly, the defendants' motion for summary judgment is granted as to the Thirteenth Amendment claim.

g.  <u>Fourteenth Amendment</u>

The plaintiff alleges that his arrest and the seizure of his property by the defendants violated his rights to life, liberty and property under the Fourteenth Amendment to the United States Constitution.  Fourteenth Amendment Claims for unlawful seizure and arrest are governed by the Fourth Amendment, which is applicable to the defendants through the Fourteenth Amendment. They do not arise solely under the Fourteenth Amendment.  "Where

37

a particular Amendment 'provides an explicit textual source of
constitutional protection' against a particular sort of
government behavior, 'that Amendment, not the more generalized
notion of 'substantive due process,' must be the guide for
analyzing these claims.'" <u>Albright v. Oliver</u>, 510 U.S. 266, 273
(1994) (plurality opinion of Rehnquist, C.J.) (quoting <u>Graham v.
Connor</u>, 490 U.S. 386, 395 (1989)); <u>see also</u> <u>Tenenbaum v.
Williams</u>, 193 F.3d 581, 600 (2d Cir. 1999).  Thus, the
plaintiff's claims of arrest and seizure of his personal property
without probable cause are not cognizable as arising solely under
the Fourteenth Amendment.  The defendants' motion for summary
judgment is granted as to the Fourteenth Amendment claims.

    h.  <u>Title VII</u>

The plaintiff alleges that the defendants "violated Title
VII Federal Act by discrimination because of plaintiff race."
Compl. at 27.  Title VII of the Civil Rights Act of 1964, 42
U.S.C. § 2000e, <u>et seq</u>., prohibits discrimination in employment
decisions.  Because the plaintiff is not challenging an
employment decision in this case, his Title VII claim fails.  The
defendants' motion for summary judgment is granted as to the
Title VII claim.

    i.  <u>Arrest Based on Race</u>

The plaintiff alleges that the defendants arrested him
solely because of his race.  The defendants contend that the

plaintiff has submitted no evidence to support this claim.  Other jurisdictions have recognized such a claim under 42 U.S.C. § 1981.  See, e.g., Hardin v. Meridien Foods, No. 98 CIV. 2268(BSJ), 2001 WL 1150344, at *7-8 (S.D.N.Y. Sept. 27, 2001); Conway v. City of Philadelphia, No. CIV. A. 96-8112, 1997 WL 129024, at *3 (E.D. Pa. Mar. 20, 1997).

To establish such a claim, however, the plaintiff must present some evidence to show that his arrest was racially motivated.  "'[N]aked assertion[s] by plaintiff[s] that race was a motivating factor without a fact-specific allegation of a causal link between defendant's conduct and the plaintiff's race [are] too conclusory....'" Hardin, 2001 WL 1150344, at *8 (quoting Carson v. Lewis, 35 F. Supp. 2d 250, 269 (E.D.N.Y. 1999).

The plaintiff's verified complaint includes a conclusory statement that his arrest was based solely on his race.  He provides no evidence to support his claim.  The documents that he attaches to his complaint and to his motion for summary judgment demonstrate that the arrest of the plaintiff was made based on multiple factors including: the observations of police detectives during the five-month long surveillance of the plaintiff and Angel Ramirez, the drug sales by the plaintiff to confidential informants and the description of the plaintiff by one of the informants.  (See Pl.'s Mot. Summ. J., Exs. 1, 5 and Compl. Ex.

A.  In the absence of any evidence demonstrating that any defendant was motivated by racial animus in arresting the plaintiff, the plaintiff has not met his burden of demonstrating the existence of a genuine issue of material fact regarding this claim.  The defendants' motion for summary judgment is granted as to the claim that plaintiff was arrested solely on the basis of his race.

### j. Claim Under 18 U.S.C. § 1621

The plaintiff also attempts to bring this action pursuant to 18 U.S.C. § 1621 alleging that the defendants are guilty of perjury.  This statute, however, is a federal criminal statute.  This criminal statute does not afford the plaintiff a private right of action.  See Chrysler Corp. v. Brown, 441 U.S. 281, 316 (1979) (courts have "rarely implied a private right of action under a criminal statute"), Estate of Moser v. Exeter Township Borough Council Members, No. CIV. A. 98-3525, 1998 WL 575109, at *1 n.1 (E.D. Pa. Sept. 4, 1998).  Because no private right of action exists, the perjury claim is dismissed.  The defendants' motion for summary judgment is granted to any claim brought pursuant to 18 U.S.C. § 1621.

### 5.  Excessive Force Claim

The plaintiff alleges that the defendants removed him from the vehicle in which he and Angel Ramirez were riding at gunpoint.  The defendants claim that the conduct complained of is

40

insufficient to state a claim for excessive force.

Claims that law enforcement officers used excessive force in the course of an arrest, investigatory stop or other pre-arraignment seizure are analyzed under the Fourth Amendment's prohibition against unreasonable seizures of the person.  See Graham v. Connor, 490 U.S. 386, 395 (1986), Powell v. Gardner, 891 F.2d 1039, 1044 (2d Cir. 1989) (Fourth Amendment standard applies through time of arraignment or formal charge).  To determine whether a use of force is reasonable, the court must balance the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  Graham, 490 U.S. at 396 (internal quotation marks omitted; citation omitted). The court must determine, therefore, "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  Id. at 397.  Thus, reasonableness must be measured "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396.  To make this determination, the court examines "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting

41

arrest or attempting to evade arrest by flight." Id.

Here, the plaintiff states that the defendants forced him
from the vehicle at gunpoint. He does not assert that he
suffered any physical or emotional injuries as a result of the
defendants' requiring him to exit the vehicle with their guns
drawn. Nor has the plaintiff submitted any evidence to support a
claim of emotional or physical injury[12]. The defendants have
presented evidence demonstrating that they were unaware of
whether the plaintiff or Angel Ramirez might be armed when they
pulled over the vehicle and that the plaintiff and Angel Ramirez
had made several sales of cocaine to confidential informants
during a five month period before the vehicle was pulled over.
The plaintiff has not offered any evidence to contradict these
facts.

The court concludes that it was objectively reasonable for
the defendants to require the plaintiff to exit the vehicle with
their guns drawn because it was possible that the plaintiff
and/or Angel Ramirez, who were known to have dealt drugs, might
be armed. See Smith v. Fields, No. 95 CIV. 8374(DAB), 2002 WL

---

[12] The plaintiff did submit two pages of medical records in
support of his cross motion for summary judgment. Those records
indicate that the plaintiff was referred for a mental health
evaluation at the end of March 2000, because the doctor observed
that the plaintiff was depressed. The plaintiff submits no other
evidence or records from a psychiatrist or psychologist
concluding that the plaintiff was depressed or that the
depression was in any way linked to the arrest at gunpoint.

342620, at *5 (S.D.N.Y. Mar. 4, 2002) ("Plaintiff's allegation that he was dragged out of the car, thrown to the ground, and threatened at gunpoint . . . does not constitute the use of excessive force); Aderonmu v. Heavey, No. 00 Civ. 9232, 2001 WL 77099, at *3 (S.D.N.Y. Jan 26, 2001) (interrogation at gun point does not amount to use of excessive force).  Accordingly, the defendants' motion for summary judgment is granted as to the plaintiff's excessive force claim.

   6.  State Law Claims

   Having dismissed the federal claims providing this Court with subject matter jurisdiction, this Court declines to exercise its supplemental jurisdiction over the remaining state law claims.  See 28 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise supplemental jurisdiction over a claim where "the district court has dismissed all claims over which it has original jurisdiction"), United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("[N]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."), Valencia ex rel. Franco v. Lee, 316 F.3d 299, 306 (2d Cir. 2003) (dismissal of federal claims at a

relatively early stage in the proceedings supports denial of exercise of supplemental jurisdiction).

<u>Conclusion</u>

The plaintiff's Motions to Strike [**docs. ## 91, 92, 93, 103**] are **DENIED.** Defendants' Motions to Strike [**docs. ## 84, 82**] are **DENIED** as moot.  The plaintiff's motion for summary judgment [**doc. #69**] is **DENIED.**  The defendants' motion for summary judgment [**doc. #60**] is **GRANTED.**  The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/

_____

Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut, this 30th day of September, 2004.**