UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2004 OCT -6 P 4: 29
U.S. DISTRICT COURT

Luis Fernandez
Pro Se

V.

Chief Robert Paquette, et al

PRISONER
Case 3:02 CV 2090
(JBA) (JGM)

Sept. 23, 2004

## MOTION FOR PLAINTIFF MANUAL FILING EXHIBITS IN SUPPOR OF SUMMARY JUDGMENT FOR APPOINTMENT OF Conusel PRO BONO.

The plaintiff pro se holding to "less stringent standards than formal pleading drafted by lawyers", citing, Hughes v. Rowe, 449 U.S. 5, 101 S.Ct. 173 (1980), pursuant under Rule 56 (A)(3) presents the following Manually filed Exhibits in support of Plaintiff Summary Judgment for Appointment of Pro Bono Counsel :

1. EXHIBIT "A" ——————> Docket proceeding page 2 of 4 date 10/1/03 Granting I.F.P.

2. EXHIBIT "B" ——————▷ Plaintiff Affidavit date Feb. 13, 2004 IN opposition To defendants MOTION for Summary Judgment.

1 of 3

3. EXHIBIT "C" ————————▷ Deputy Commissioner Brian K. Murphy Memo date March 25, 2004

4. EXHIBIT "D" ————————▷ Case log Copy ALLAH V. SEIVERLING, (3rd 2000).

5. EXHIBIT "E" ————————▷ AFFIDAVIT IN SUPPORT OF WITNESS STATMENT

6. EXHIBIT "F" ————————▷ MEDICAL EVALUATION.

7. EXHIBIT "G" ————————▷ Attempts to obtain Counsel.

These Exhibits are true Copies filed in support of Plaintiff Summary Judgment for Appointment of Pro Bono Counsel.

RESPECTFULLY SUBMITTED,

Luis Fernandez  Pro Se
1153 east st. South,
suffield, CT 06080

## CERTIFICATION

I hereby Certify that a Copy of the foregoing was mailed to the following defendants Attorneys this 23 day of Sept. 2004.

Attorney David W. Colwick,
Howd & Ludorf,
65 wethersfield Ave,
Hartford, CT 06114

Luis Fernandez
Pro se

3 of 3



KARL MURPHY, Ofcr            Thomas R. Gerarde
    defendant            (See above)

                                [COR LD NTC]

SELNER, Ofcr                Thomas R. Gerarde
    defendant            (See above)
                                [COR LD NTC]

RIOLO, Ofcr                 Thomas R. Gerarde
    defendant            (See above)
                                [COR LD NTC]

ROBERT PAQUETTE, Chief of   Thomas R. Gerarde
Police                      (See above)
    defendant            [COR LD NTC]

JOHN MENULLO, Det           Thomas R. Gerarde
    defendant            (See above)
                                [COR LD NTC]

# DOCKET    PROCEEDINGS

## DATE    #            DOCKET    ENTRY

11/25/02 1      MOTION by Luis Fernandez to Proceed in Forma Pauperis (sad)
                [Entry date 11/26/02]

11/25/02 2      COMPLAINT (sad) [Entry date 11/26/02]

12/12/02 3      NOTICE to petitioner re: papers returned for insufficient
                PAF. Case to be dismissed by 1/11/03 if insufficiency not
                corrected ( by Mag. Judge Holly B. Fitzsimmons ) (rjj)
                [Entry date 12/12/02]

12/23/02 --     COMPLIANCE With Insufficiency re [3-1] notice . Prisoner
                Authorization Form. (mel) [Entry date 12/27/02]

12/23/02 4      Prisoner Authorization Form by Luis Fernandez (mel)
                [Entry date 12/27/02]

1/7/03   --     ENDORSEMENT granting [1-1] motion to Proceed in Forma
                Pauperis ( signed by Mag. Judge Holly B. Fitzsimmons ) (rjj)
                [Entry date 01/07/03]

3/17/03  5      MOTION by Luis Fernandez for Appointment of Counsel (mic)
                [Entry date 03/18/03]

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Luis FERNANDEZ                    :        PRISONER
                                           Case. 3:02CV2090
V.                                :        (JBA)(JGM)

CHIEF Robert Paquette, et al      :        Feb. 13, 2004

## PLAINTIFF'S AFFIDAVIT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Luis Fernandez delcares under penalty of penjury:

1. I am the plaintiff in the above-entitled case. I make this declaration in opposition to defendant's Motion for Summary Judgment were material facts have been left out, undisputed and factual allegations are not correct and incomplete when Entitles the plaintiff Cross-summary Judgment.

2. The defendants before and after the Execution of the warrant for Angel Ramirez person, second floor Apartment 128 osborne St. Danbury CT and vehicle suv white Nissan pathfinder 569 WWH dated 1/6/00 ON 1/7/00 did not identifyed the owner of the white Nissan pathfinder suv 569 WWH which was returned to Mercedez Moya the owner and girlfriend of

1 of 6

Angel Ramirez who defendants had executed the warrant dated 1/6/00 on 1/7/00.

3. The defendants claim in their motion that they believe the motor vehicle contained contraband as to excuse failure to obtain a search warrant. In fact, the Incident reports don't provide this as reason for stope and search and seized. In reality, the stope of the motor vehicle at Tamarac Ave. was to execut warrants? for Angel Ramirez person, second floor Apartment 128 Osborne St. Danbury. CT and white Nissan Pathfinder NUV 569 without information on registration owner

4. The defendants claim in their motion that a five-month investigation was documented for search warrant dated 1/6/00. In fact, only 5 days out of the allegedly "five-month" was a surveillance conducted without proper equipment, no finger prints from the alleged evidence recovered, failed to provide the quantity of the alleged evidence recovered and did not Identifyed the plaintiff.

5. The defendant claim in their motion that no items were taken from the plaintiff on 1/7/00 when the white Nissan pathfinder was stopped at Tamarack Ave. and alleged to observed the plaintiff seated in the white Nissan pathfinder holding packages of Cocaine. In fact, none of the defendants

2 of 6

Confirmed on the 1/6/00 Affidavit and Application search and seizure warrant of seeing the plaintiff holding packages of Cocaine, defendants did not Identify the plaintiff as Luis Fernandez to be scated in the Nissan pathfinder SUV 569 NVH during any of the controlled purchase. Alleged Neither on 1/3/00. Furthermore; In fact, the plaintiff wallet and moneys I.D. were removed.

6. The defendants claim in their motion that they had authority to detain the plaintiff and Angel Ramirez while they created the search warrant for the second floor apartment and that detention lasted thirty (30) minutes. In fact, the plaintiff had already been pulled-out of the white Nissan pathfinder to the floor and pulled his pants down and seized his property in his person then thrown into a police car without informing him of the Acusation or cause and taken to the police headquarter for interrogation were defendants admit to the plaintiff detention does rise to the level of a constitutional violation.

7. The defendants claim in their motion that they requirement to waived the knock and announce into the second floor apartment. In fact, defendants had no reasonable suspicion if their were any occupants at the second floor apartment that would lead to the immediate destruction of

3 of 6

the evidence on 1/7/00 while knowing of
the Incident Report dated July 11, 1999 reporting
Arrest of one Angel E. Ramirez to a Complaint by
Moya Mercedez, MR. Ramirez girl-friend and
defendants made no justification of the evidence
destruction in the Incident Reports dated
1/7/00 Already Admitted.

8. The defendants claim they had probable cause
for the warrantless Arrest of the plaintiff on
1/7/00. In fact, the plaintiff detention rised
to an Arrest before executing the warrant for
second floor Apartment 928 Osborne St. Danbury CT
on 1/7/00, the defendant had no reasonable
information of the plaintiff identity nor did
the defendants linked a baseball hat to the
plaintiff. when seized and searched illegaly on
1/7/00 and none of the Alleged informant(s)
identified the plaintiff who is Luis Fernandez.
The defendants had no warrants to conduct
A "Reverse-Sting" operation nor had Authorization
to seized the plaintiff Identification and use it
to commit crimes. The only physically description
of the man or woman known to the defendants
As "Alex" is with a baseball hat and the defendants
Admitted that they did not know the plaintiff name
during the Alleged investigation.

9. The plaintiff MATERIAL FACTS are that he was visiting Angel Ramirez and girl friend Mercedez Moya at the second floor 128 Osborne st. Danbury CT when arriving legaly from the Dominican Republic., He was allowed to sleep in the Attic Apt (unit next to another guest Room and sat the thes dwelling. ON About NOV. 20 1999. the white NISSAN pathfinder was in a repair shope getting fixed do to a SMALL accident whch Mencedez Moyas and Angel Ramirez can testify and provide documentation of such and the Brown Honda Civic was sold to Angel Ramirez friend and also house guest at the second floor Apt. 128 Osborne St. Danbury CT. ON 1/7/00 the plaintiff contacted a friend known to him for Approx 10 years who is a witness to the illegal brutal Arrest At. Tamarack Ave and Attorney Joseph Romvella can present testimony to documents presented at Trial concerning plaintiff legal documents and property. Fother Attorney Raymond P. Yamin can provide testimony to the Actual Incident Reports and documents mailed to the plaintiff All relevant to thes CASE.

10. These factual desputes Cannot be resolved without a Jury Trial. Wherefore, defendants MOTION for Summary Judgment should be denied.

RESPECTFULLY SUBMITTED

Luis Fernandez Pro Se
M. W. C. I.
1153 East St South,
Suffield, CT 06080

I declare under the penalty of perjury that the foregoing is true and correct.

Signed this 13 day of February, 2004.

Luis Fernandez

CERTIFICATION

I hereby certify that a copy of the foregoing was mailed to the following defendants Attorney this 13. day of February 2004.

Thomas R. Gerarde Ct. 05640
Howd & Ludorf
65 Whethersfield Ave.
Hartford, CT 06114

Luis Fernandez

# NOTICE TO THE INMATE POPULATION
## REGARDING ACCESS TO CONNECTICUT COURTS
### March 25, 2004

The Connecticut Department of Correction is not obligated to provide inmates with access to court by maintaining law libraries or legal forms in the various correctional institutions. Any such material that may be located in DOC facilities is not intended to serve as a method of providing inmates access to court.

Any inmate who wishes to seek assistance or advice concerning his or her criminal case(s) should contact the attorney or Public Defender's Office, which is representing or assisting you now or has represented or assisted you in the past.

The Department of Correction contracts for the provision of legal assistance to inmates in __civil__ legal matters for issues arising from terms and conditions of confinement. For a description of the extent of such legal service and the format for its provision you should read that section of your Inmate Handbook which is entitled, "Access to Court." If you require assistance in reading or in understanding this section you should contact:

Inmate's Legal Assistance
P.O. Box 260237
Hartford, CT 06126-0237
1-800-301-ILAP (4527)

These calls shall be deemed "privileged" in accordance with Administrative Directive 10.7 – Inmate Communications.


Brian K. Murphy
Deputy Commissioner


Rev. 3/24/04



# STATE OF CONNECTICUT
## Department of Correction
## Operations Division
### 24 Wolcott Hill Road
### Wethersfield, CT 06109

**TO:**  DISTRICT ADMINISTRATORS
       WARDENS

**FROM:**  Brian K. Murphy, Deputy Commissioner *(signature)* 3-25-04

**DATE:**  March 25, 2004

**RE:**  INMATE ACCESS TO CONNECTICUT COURTS

*Attached please find a notice to the inmate population regarding access to Connecticut courts. In addition to the memo, you will find additional related information regarding access to courts. Please be advised that you are to take the following action:*

1. *Post both the Notice to the Inmate Population and the related information in all housing units and Libraries;*
2. *Educate and have copies available for staff that deal with the inmate population; i.e. unit managers and counselors;*
3. *Add the enclosed notice and related information to the Inmate Handbook, in its entirety;*
4. *Provide the attached habeas form in locations where other court related forms are currently stored;*
5. *All other court related forms are to be removed from the facility.*

*In regards to photocopying for inmates, such requests shall be processed in accordance with Administrative Directive 3.10, Fees, and Reimbursements, specifically Section 8C.*

*Please contact my office if you have any questions.*

BM/llm

Attachment

cc:  Theresa C. Lantz, Commissioner
    Carol Salsbury, Deputy Commissioner
    Dennis Jones, Director
    Mary Johnson, Director
    Brian Garnett, Director
    Steve Strom, Assistant Attorney General
    file



Ex. D

**220**



urgent case for statutory protection would no doubt arise in cases where financial hardships followed from default, but we find no reason to believe that New York's statute was intended to apply only to such cases. Especially when the policy's terms are construed in the insured party's favor, Mr. Moore's contract with Guardian appears formally to have "required[d]" payment of his insurance premium on Sunday, August 4. And we find that New York law protects contracting parties from any "required[d]" payment on Sunday, even when no direct financial burden falls on those who fail to pay.

C. Mr. Moore's Grace Period Began on Tuesday

Having concluded that Mr. Moore could have paid his premium on Monday, August 5 without falling into default, the final task is to explain how this conclusion affects the policy's grace period. Guardian's policy provides for "a grace period of 31 days after the due date for payment of premiums," and it further defines the term "due date" as "the date of default." Since the "date of default," by the operation of § 25, did not occur until Monday, August 5, it is reasonable to construe the contractually-defined "due date" as also having moved to August 5. Hence, by the policy's terms, the thirty-one day grace period began on Tuesday, August 6, and Mr. Moore's life insurance coverage with Guardian had not yet lapsed on September 5, the day he died.

For the foregoing reasons, the District Court's decision granting summary judgment to Guardian is reversed, and the case is remanded for further proceedings consistent with this opinion.

---

Michael Malik ALLAH, Appellant,

v.

Thomas SEIVERLING; Robert Sparbanie; John D'Elletto; Ben Varner

Commonwealth of Pennsylvania, Amicus Curiae.

United States of America, Intervenor.

No. 97-3627.

United States Court of Appeals, Third Circuit.

Argued July 20, 2000.

Filed Sept. 28, 2000.

Prisoner filed compliant alleging that he was being kept in administrative segregation in retaliation for filing civil rights lawsuits against prison officials and was denied meaningful access to the courts. The United States District Court for the Western District of Pennsylvania, Robert J. Cindrich, J., dismissed the complaint for failure to state a claim, and prisoner appealed. The Court of Appeals, Sloviter, Circuit Judge, held that prisoner's claims alleging denial of the constitutional right to administrative segregation, and that he was kept in administrative segregation in retaliation for filing civil rights suits against prison officials, were not foreclosed by Sandin.

Vacated and remanded.

1. Federal Courts ⚖️13

At least prisoner's claims for damages for placement in administrative segregation in alleged retaliation for filing civil rights claims survived his release from administrative segregation, and were not moot.

---

**ALLAH v. SEIVERLING**

**221**

2. Federal Courts ⚖️763.1, 794

Review of the district court's sua sponte dismissal for failure to state a claim, under in forma pauperis statute, is plenary, but Court of Appeals must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom. 28 U.S.C.A. § 1915(e)(2)(B)(ii).

3. Prisons ⚖️13(6)

Though a prisoner's discipline in segregated confinement does not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest, this does not foreclose other claims challenging the constitutionality of official actions. U.S.C.A. Const. Amends. 1, 8, 14.

4. Constitutional Law ⚖️228
   Prisons ⚖️4(10.1), 13(6)

State prisoner's claims alleging denial of his constitutional right to meaningful access to the courts by reason of administrative segregation, and that he was kept in administrative segregation in retaliation for filing civil rights suits against prison officials, were not foreclosed by Sandin, which instructs that placement in administrative confinement will generally not create a liberty interest. U.S.C.A. Const. Amends. 1, 14.

5. Constitutional Law ⚖️91, 272(2)
   Prisons ⚖️4(2), 328

Prisoners have a constitutional right to access to the courts, having a number of constitutional roots, including the Due Process Clause and the First Amendment, which requires access to adequate law libraries or adequate assistance from persons trained in the law for filing challenges to criminal sentences, both direct and collateral, and civil rights actions, and this right to access to the courts is distinct from any liberty interest in remaining free from administrative or disciplinary segregation. U.S.C.A. Const. Amends. 1, 14, 42 U.S.C.A. § 1983.

6. Prisons ⚖️4(1)

Retaliation by prison officials for exercise of a constitutional right may be actionable even when the retaliatory action does not involve a liberty interest. U.S.C.A. Const. Amends. 1, 14.

7. Civil Rights ⚖️235(7)

Prisoner stated claim of retaliation and denial of access to the courts by allegations that his confinement in administrative segregation was in retaliation for filing prior civil rights suits against prison officials and resulted, inter alia, in reduced access to phone calls and inadequate access to legal research materials and assistance. U.S.C.A. Const. Amends. 1, 14.

Deena Jo Schneider, Joseph T. Lukens (Argued), S. Jnatel Simmons, Schneider, Harrison, Segal & Lewis, Philadelphia, PA, for Appellant.

D. Michael Fisher, Attorney General, J. Bart DeLone (Argued), Calvin R. Koons, Senior Deputy Attorney General, John G. Knorr, III, Chief Deputy Attorney General Chief, Harrisburg, PA, for Amicus Curiae on behalf of Appellees.

David W. Ogden, Acting Assistant Attorney General, Michael R. Stiles, United States Attorney, John C. Hoyle, Susan L. Pacholski, for Intervenor.

Before: SLOVITER, NYGAARD and FUENTES, Circuit Judges.

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Michael Malik Allah appeals the District Court's order dismissing Allah's complaint claims are barred by the Supreme Court's decision in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The appeal requires us to consider the effect of the Sandin decision on Allah's access-to-courts claims, including his claim that he was kept in administrative segre-

**222**     229 FEDERAL REPORTER, 3d SERIES

gation in retaliation for filing civil rights lawsuits.

**I.**

According to his complaint, Allah was transferred from S.C.I. Frackville to S.C.I. Greene on July 9, 1997 and was placed in administrative segregation. He was told by the officer in charge that the officer "had not had a chance to review [his] records" but that Allah would be brought before the Program Review Committee ("PRC") the next day, July 10. App. at 11. Allah was brought before the PRC on July 15 and was told that the PRC still did not have his records but that he would be seen every 30 days. Allah alleges the PRC did not represent him in administrative segregation in retaliation for filing lawsuits when he was housed at other prisons. He was again brought before the PRC on August 12, 1998 and denied release to the general population, with "[n]o valid reason given." App. at 11. On September 9, 1997, he was again brought before the PRC and denied release to the general population. The two consolidated appeals present distinct legal issues, and we address the issues in separate opinions.

Allah, who was granted leave to proceed in forma pauperis, filed his pro se complaint on September 19, 1997 alleging that he was being kept in administrative segregation at S.C.I. Greene in retaliation for filing civil rights lawsuits against prison officials at S.C.I. Frackville and S.C.I. Greeterford, two prisons where he had earlier been housed, and that while he was kept in administrative segregation he was denied meaningful access to the courts.

On September 29, 1997, before service of the complaint, the Magistrate Judge recommended that the complaint be dismissed for failure to state a claim, stating:

In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Court held that housing an inmate in disciplinary custody did not impose such atypical and significant hardships on the inmate so as to invoke Constitutional protection. Thus, the plaintiff's complaint here is without merit ...

Report and Recommendation, Doc. #6 (Sept. 29, 1997) at 2. The District Court adopted the Magistrate Judge's Report and Recommendation as the opinion of the court and ordered the complaint dismissed. Allah timely appealed.

[1] This court appointed counsel to represent Allah on appeal.¹ We also requested that the Commonwealth submit a brief and argue as *amicus curiae*.² The appeal was consolidated with another brought by Allah in a separate case captioned *Allah v. Al-Hafeez*, 226 F.3d 247 (3rd Cir.2000). The two consolidated appeals present distinct legal issues, and we address the issues in separate opinions.

---

1. We expressed our appreciation to this firm and others in note 4 of the companion opinion in *Allah v. Al-Hafeez*, 226 F.3d 247.

2. A motions panel of this court requested that the parties address several additional issues in their briefs, including, *inter alia*, whether any or all of Allah's claims are moot, whether Allah has exhausted available administrative remedies in accordance with 42 U.S.C. § 1997e(a), whether Allah's claims seeking monetary damages are barred by 42 U.S.C. § 1997e(e), and what standard should be applied to a claim alleging retaliation for exer-

cising the right to petition the courts. For the most part, those issues are not directly presented by this appeal, and we accordingly do not decide them. As for mootness, the jurisdictional issue, it is clear, and the parties do not dispute, that at least Allah's claims for damages survive his release from administrative segregation ... *See Weber v. Henman*, 854 F.2d 294 (3d Cir.1991) (stating that the prisoner's transfer from the prison moots claim for injunctive and declaratory relief with respect to prison conditions but not claim for damages).

---

Allah alleges in his complaint that he is "unable to file and product [sic] briefs" in his criminal case and unable to conduct discovery in his civil rights cases while in administrative segregation at S.C.I. Greene. App. at 10. His complaint seeks relief in the form of compensation damages and punitive damages. In his briefs he asserts that he also seeks injunctive and declaratory relief.

[2] Our review of the District Court's sua sponte dismissal for failure to state a claim, which was authorized by 28 U.S.C. § 1915(e)(2)(B)(ii) and 42 U.S.C. § 1997e(c)(1), like that for dismissal under Fed.R.Civ.P. 12(b)(6), is plenary. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir.1999). "[W]e must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996).

**II.**

Allah alleges two claims in his complaint: that he was denied meaningful access to the courts while he was kept in administrative segregation and that he was kept in administrative segregation in retaliation for filing civil rights claims against prison officials at S.C.I. Frackville and S.C.I. Greaterford. The District Court interpreted *Sandin* to preclude both of these claims, apparently in the belief that *Sandin* stands for the principle that no claim arising out of administrative segregation can form the basis for a constitutional violation. We cannot agree with that interpretation of *Sandin*.

[3] *Sandin* involved a § 1983 suit brought by a state prisoner against several prison officials alleging that they had violated his constitutional right to procedural due process by sentencing him to disciplinary segregation without permitting him to call certain witnesses. *See* 515 U.S. at 476, 115 S.Ct. 2293. The Supreme Court noted in *Sandin* that under the procedure previously followed, if the Due Process Clause itself did not confer a liberty interest in a particular prison situation,³ the federal courts would proceed to "examine[] the possibility that the State had created a liberty interest by virtue of its

States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 483–84, 115 S.Ct. 2293 (citations omitted). Applying this approach to the facts of the case before it, the Court held that "[t]he prisoner's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest," inasmuch as "[t]he regime to which [the prisoner] was subjected ... was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." *Id.* at 486–87, 115 S.Ct. 2293.

The Court's opinion makes clear that the decision does not foreclose other claims challenging the constitutionality of official actions. Specifically, it states:

Prisoners ... of course, retain other protection from arbitrary state action even within the expected conditions of

---

3. The Court has held that the Due Process Clause confers a liberty interest in certain situations. *See, e.g., Washington v. Harper*, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) (holding that an inmate has a liberty interest in being free from involuntary administration of psychotropic

drugs); *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (holding that an inmate has a liberty interest in being free from involuntary transfer to mental hospital for treatment).

224   229 FEDERAL REPORTER, 3d SERIES

confinement. They may invoke the First and Eighth Amendments and the Equal Protection Clause of the Fourteenth Amendment where appropriate, and may draw upon internal prison grievance procedures and state judicial review where available.

*Id.* at 487 n. 11, 103 S.Ct. 864.

[4, 5] Accordingly, we conclude that Allah's claim alleging denial of his constitutional right to meaningful access to the courts is not foreclosed by *Sandin.* In fact, the Commonwealth concedes as much in its brief, stating that the District Court "should have" considered this claim. *See* Amicus Br. at 27. It is well settled that prisoners have a constitutional right to access to the courts, which requires access "to 'adequate law libraries or adequate assistance from persons trained in the law' for filing challenges to criminal sentences, both direct and collateral, and civil rights actions. *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *see also Lewis v. Casey,* 518 U.S. 343, 355, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (recognizing that the Constitution requires that prisoners be provided the tools "that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement"); *Wolff v. McDonnell,* 418 U.S. 539, 579, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (extending right of access to the courts, founded on the Due Process Clause, to prisoners filing actions under 42 U.S.C. § 1983 to vindicate the "basic constitutional rights").⁴ This right to access to the courts is distinct from any liberty interest

4. The right to access to the courts has a number of constitutional roots, including the Due Process Clause ... and the First Amendment. *See generally Patchin v. Jefferson,* 855 F.2d 1021, 1036 n. 13 (3d Cir.1988) (chronicling sources of the right).

5. At argument, the Commonwealth suggested that Allah's access claim should be dismissed for failure to allege actual injury, as required by *Casey.* Under *Casey,* in order to have standing to challenge prison conditions as denying meaningful access to the courts, a

prisoner must plead facts to "demonstrate that the alleged shortcomings ... hindered his efforts to pursue a legal claim." 518 U.S. at 351, 116 S.Ct. 2174. Allah alleges, *inter alia,* that while he was in administrative segregation he was prevented from filing his legal brief in his post-conviction appeal, which he alleges was due on September 10, 1997, the day after the date of his complaint. Construing Allah's complaint liberally, this allegation is sufficient to state a claim under *Casey.*

The Commonwealth argues that "the sense of the *Sandin* opinion" counsels us to hold that continued placement in administrative confinement can never amount to adverse action sufficient to support a retaliation claim. Amicus Br. at 18. The Supreme Court recognized in its footnote in *Sandin,* however, "[p]risoners ... retain other protection from arbitrary state action even within the expected conditions of confinement." 515 U.S. at 487 n. 11, 115 S.Ct. 2293 (emphasis added).

in remaining free from administrative or disciplinary segregation. A claim founded on the right of access remains viable after *Sandin.*⁵

Our holding that claims alleging retaliation for the exercise of First Amendment rights survive *Sandin* is consistent with those circuits that have considered the issue. In *Pratt v. Rowland,* 65 F.3d 802, 806–07 (9th Cir.1995), the Court of Appeals for the Ninth Circuit held that *Sandin* did not bar a claim alleging that a prisoner-plaintiff had been transferred and placed in a double cell in retaliation for a television interview that he had given. The

[6] *Sandin* instructs that placement in administrative confinement will generally not create a liberty interest. *See Griffin v. Vaughn,* 112 F.3d 703, 706 (3d Cir.1997) (applying *Sandin* and holding that conditions experienced by prisoner in administrative custody did not implicate liberty interest). Retaliation may be actionable, however, even when the retaliatory action does not involve a liberty interest. *See, e.g., Stanley v. Litscher,* 213 F.3d 340, 343 (7th Cir.2000) (holding that plaintiff stated claim for retaliatory transfer even though no liberty interest involved in transfer); *Rouse v. Benson,* 193 F.3d 936, 939 (8th Cir.1999) (same). "[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitu-

ALLAH v. SEIBERLING   225
Cite as 229 F.3d 220 (3rd Cir. 2000)

tional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Thaddeus-X v. Blatter,* 175 F.3d 378, 386 (6th Cir.1999) (en banc).

court stated:

To succeed on his retaliation claim, [the plaintiff] need not establish an independent constitutional interest in either assignment to a given prison or placement in a single cell, because the crux of his claim is that state officials violated his First Amendment rights by retaliating against him for his protected speech activities.

*Id.* at 806. In *Babcock v. White,* 102 F.3d 267, 274–75 (7th Cir.1996), the Court of Appeals for the Seventh Circuit agreed, holding that a prisoner-plaintiff's claim that a prison official had prevented an expeditious transfer in retaliation for his filing lawsuits against prison officials was actionable "even if [the prison official's] actions did not independently violate the Constitution" and thus was not barred by *Sandin.*

grievances); *see also Crawford-El v. Britton,* 523 U.S. 574, 588 n. 10, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (stating that "[t]he reason why ... the Constitution offends the Constitution is that it threatens to inhibit exercise of the protected right").

We recently explained this court's position on the adverse action prong of a retaliation claim in *Suppan v. Dadonna,* 203 F.3d 228 (3d Cir.2000). There, we considered whether the defendants' action of placing plaintiffs lower on promotion rank-ing lists in retaliation for the exercise of their First Amendment free speech rights was sufficiently adverse to state a claim for retaliation. We held that it was, stating that a fact finder could conclude that "the alleged retaliatory conduct was sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." *Id.* at 235 (quoting *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir.1982)). This same test has been applied in the prison context. *See Thaddeus-X,* 175 F.3d at 398; *Crawford-El v. Britton,* 93 F.3d 813, 826 (D.C.Cir.1996) (en banc) (approving the *Bart* standard in the prison context), *reversed on other grounds,* 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998).

Although it is possible that in some cases placement in administrative segregation would not deter a prisoner of ordinary firmness from exercising his or her First Amendment rights, we cannot say that such action can never amount to adverse action. On the contrary, whether a prisoner-plaintiff has met that prong of his or her retaliation claim will depend on the facts of the particular case.

[7] Here, Allah alleges that his confinement in administrative segregation resulted, *inter alia,* in reduced access to recreation, confinement in his cell for all but five hours per week, denial of access to rehabilitative programs and, significantly, inadequate access to legal research materials and assistance. A fact finder could conclude from those facts that retaliatory continued placement in administrative confinement would "deter a person of ordinary firmness from exercising his First Amendment rights." *Suppan,* 203 F.3d at 235 (internal quotations omitted); *see Thaddeus-X,* 175 F.3d at 396

("[A]n action comparable to transfer to administrative segregation would certainly be adverse.").

Affirmed.

Becker, Chief Judge, concurred and filed a separate opinion.

---

### III.

For the reasons stated, we will vacate the order of the District Court sua sponte dismissing Allah's complaint as barred by *Sandin* and will remand for further proceedings not inconsistent with this opinion.



UNITED STATES of America,

v.

Charles MACK, Appellant.

No. 99-1265.

United States Court of Appeals, Third Circuit.

Argued March 9, 2000.

Filed Sept. 29, 2000.

As Amended Nov. 1, 2000.

Defendant convicted of being felon in possession of firearm objected to being sentenced pursuant to enhanced penalties under Armed Career Criminal Act (ACCA). The United States District Court for the Eastern District of Pennsylvania, Marvin Katz, J., 42 F.Supp.2d 528, ruled that ACCA enhancements applied. Defendant appealed. The Court of Appeals, Garwood, Circuit Judge, held that: (1) failure to provide defendant with formal pretrial notice of intent to seek enhanced sentence under ACCA did not violate due process; (2) defendant received adequate notice, for due process purposes, of government's intent to seek sentencing under ACCA; (3) preponderance of the evidence standard governed applicability of Sentencing Guidelines firearms enhancement; and (4) evidence supported enhancement

for possession of firearm in connection with crime of violence.

Affirmed.

---

**1. Constitutional Law ⟨⇒⟩270(4)**
**Sentencing and Punishment ⟨⇒⟩1361**

Failure to provide defendant charged with being felon in possession of firearm with formal pretrial notice of government's intent to seek enhanced sentence under Armed Career Criminal Act (ACCA) out of particular prior convictions that would support application of ACCA did not violate defendant's due process rights. U.S.C.A. Const.Amend. 5; 18 U.S.C.A. §§ 922(g)(1), 924(e)(1).

**2. Constitutional Law ⟨⇒⟩270(4)**
**Sentencing and Punishment ⟨⇒⟩1361**

Armed Career Criminal Act (ACCA) does not require formal, pretrial notice of intent to seek enhancement; thus, only notice necessary to satisfy constitutional due process requirements need be given. U.S.C.A. Const.Amend. 5; 18 U.S.C.A. § 924(e)(1).

**3. Constitutional Law ⟨⇒⟩1139**

Court of Appeals would review de novo assertion that defendant's due process rights were violated by application to him of Armed Career Criminal Act (ACCA) without formal, pretrial notice of intent to seek enhancement under ACCA. U.S.C.A. Const.Amend. 5; 18 U.S.C.A. § 924(e)(1).

**4. Sentencing and Punishment ⟨⇒⟩1206**

Armed Career Criminal Act (ACCA) is a sentence enhancement statute and does not create a separate offense. 18 U.S.C.A. § 924(e)(1).

**5. Constitutional Law ⟨⇒⟩270(4)**

Due process does not require the government to provide formal, pretrial notice of its intention to seek a sentence under the Armed Career Criminal Act (ACCA).

---

U.S.C.A. Const.Amend. 5; 18 U.S.C.A. § 924(e)(1).

**6. Constitutional Law ⟨⇒⟩270(4)**
**Sentencing and Punishment ⟨⇒⟩1361**

Defendant received adequate notice, for due process purposes, of government's intent to seek sentencing under Armed Career Criminal Act (ACCA) when government provided actual notice before trial, including certified copies of relevant prior convictions, defendant received, three and one-half months before sentencing, presentence investigation report (PSR) indicating that he was subject to sentencing under ACCA and identifying relevant prior convictions, and government filed notice, 10 days before sentencing, that formally notified defendant of possible enhancement. U.S.C.A. Const.Amend. 5; 18 U.S.C.A. § 924(e)(1).

**7. Sentencing and Punishment ⟨⇒⟩1361**

Although formal pretrial notice to defendant of government's intent to seek sentencing under Armed Career Criminal Act (ACCA) is not required by due process, it is preferred practice in light of importance of pretrial knowledge of ACCA's applicability to decision whether to plead guilty or to go to trial. U.S.C.A. Const.Amend. 5; 18 U.S.C.A. § 924(e)(1).

**8. Sentencing and Punishment ⟨⇒⟩1180(4)**

In sentencing defendant who was convicted of being felon in possession of firearm and subject to Armed Career Criminal Act (ACCA), district court was only required to find by a preponderance of the evidence, rather than by clear and convincing evidence, that defendant shot another individual before applying enhancements, under Sentencing Guidelines, for use or possession of firearm in connection with crime of violence, notwithstanding contention that enhancement was so substantial as to require greater burden of proof; 88-month increase from median sentence of guideline range, and 27-month increase in actual sentence over maximum guideline sentence absent enhancement, were not

sufficient to warrant heightened burden of proof. 18 U.S.C.A. §§ 922(g)(1), 924(e)(1); U.S.S.G. § 4B1.4(b)(3)(A), (e)(2), 18 U.S.C.A.

**9. Sentencing and Punishment ⟨⇒⟩973**

The government normally bears the burden of proving facts relevant to sentencing by a preponderance of the evidence.

**10. Sentencing and Punishment ⟨⇒⟩1381(7)**

Evidence sustained finding that defendant subject to Armed Career Criminal Act (ACCA) shot witness, supporting enhancement under Sentencing Guidelines for possession of firearm in connection with crime of violence, even though witness testified that defendant was not one who shot him; defendant was in possession of .380 caliber handgun outside bar at which gunfire occurred, witness, who was in vicinity, was shot by same caliber gun, all shell casings of that caliber recovered from scene matched defendant's gun, and witness on day of shooting twice identified defendant as shooter. 18 U.S.C.A. § 924(e)(1); U.S.S.G. §§ 4B1.2(a), 4B1.4(b)(3)(A), (e)(2), 18 U.S.C.A.

**11. Criminal Law ⟨⇒⟩1158(1)**

Court of Appeals reviews the district court's findings of fact for clear error.

---

David L. McColgin, (Argued), Assistant Federal Defender, Supervising Appellate Attorney, Maureen Kearney Rowley, Chief Federal Defender, Federal Court Division, Defender Association of Philadelphia, Philadelphia, PA, Counsel for Appellant.

Michael R. Stiles, United State Attorney, Walter S. Batty, Jr., Assistant United States Attorney, Chief of Appeals, Patrick C. Askin, (Argued), Special Assistant United States Attorney, Philadelphia, PA, Counsel for Appellee.



# AFFIDAVIT IN SUPPORT
## OF WITNESS STATEMENT

I make the following statement without fear, threat or promise to the best of knowledge and Ability.

On the date of January 7, 2000, I Bristout Bourguignon went to Danbury, Connecticut to meet my friend Luis Fernandez who I knew for about 10 years. My friend Luis who came down here to visit a friend down the danbur area. He contacted me and told me he was in town an he told me to meet him around 4:15 pm at the motor Vehicle in Danbury. when I got down there around 4:00 my friend Luis told me that in his cellular phone to meet him in the gas station next to the danbury DMV and he will be there in 10 to 15 minutes and to waited there for him. He told that he was in, a white Pat finder without tints. We were going to the danbury M to hang out. After, ten or 15 minutes I see my friend Luis in the white nissan Pathfinder with friend and th I notice that I saw a lot of People with guns and veral police cars blocked his car and pulling him out the car through this car window and threw him dow hard on the pavement floor. Then I saw them hand cuffed him and then I saw two other police office with guns pulled his pants and illegally searched his No body and taking his money from his wallet. Because of this incident I was dramatize and scared so I kept m distance. Then I saw one of the police cars parked

In the Gas station while the two other officers with guns pointed at my friend Luis and they draged and shoved him and slam him into the police car and then I left the area and went back home. The next day I was not able to contact my friend Luis at the house so what I have seen on January 7, 2000.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

WITNESS _Bristout Bourguignon_
BRISTOUT BOURGUIGNON

Sworn to before this 2nd
_____2nd_____ day of february 2004

_[signature]_
NOTARY PUBLIC

JACQUELINE BAGHAN
NOTARY PUBLIC
MY COMMISSION EXPIRES 8/31/2008

# REQUEST FOR MENTAL HEALTH SERVICES

| | | | INMATE NUMBER 279900 | DATE OF BIRTH |
|---|---|---|---|---|
| | | | INMATE NAME (LAST, FIRST, INITIAL) Fernandez, Luiz | |

| DATE OF REQUEST 6/18/01 | INMATE REQUEST (Y) N | REFERRED BY/TITLE Self | SEX (M) F | RACE/ETHNIC B W H O | FACILITY |
|---|---|---|---|---|---|

## DESCRIBE REASON FOR REQUEST/REFERRAL:

Depression. Paranoid

See attached

## MENTAL HEALTH SERVICES RESPONSE

| DATE REQUEST RECEIVED 6/08/01 | REFERRED TO M-H. | DATE CLIENT SEEN | SERVICE PROVIDER/TITLE |
|---|---|---|---|

## SERVICE PROVIDED/RESPONSE:

PR

SCHEDULE DATE:     YES ☐     NO ☐

MENTAL HEALTH PROVIDER'S SIGNATURE/TITLE                    DATE



# The Jerome N. Frank Legal Services Organization

YALE LAW SCHOOL

January 13, 2003

Luis Fernandez   #279900
Cheshire CI
900 Highland Ave
Cheshire, CT   06410

Dear Mr. Fernandez:

We received your letter dated November 17, 2002 requesting assistance with your pending federal civil rights complaint.  Unfortunately, this office is unable to provide the assistance you request.  This office is staffed primarily by law student interns and lacks the resources to accept additional cases of this nature at this time.  We are returning the copy of the complaint you enclosed with your letter.

We regret that we are unable to assist you and wish you the best of luck.

Sincerely,

Brett Dignam

Brett Dignam

BD/kld

Enclosure

# BRENNER, SALTZMAN & WALLMAN LLP

A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

NEWTON D. BRENNER, P. C.
STEPHEN L. SALTZMAN, P. C.
MARC A. WALLMAN, P. C.
DAVID R. SCHAEFER, P. C.
STUART JAY MANDEL, P. C.
DONALD W. ANDERSON, P. C.
SAMUEL M. HURWITZ, P.C.
WAYNE A. MARTINO, P. C.
JOHN R. BASHAW
MITCHELL S. JAFFE, P. C.
ALICE J. MICK, P. C.
KENNETH ROSENTHAL
CAROLYN W. KONE
BRIAN P. DANIELS
GEORGE BRENCHER IV, P.C.
JENNIFER DOWD DEAKIN, P.C.

271 WHITNEY AVENUE
NEW HAVEN, CONNECTICUT 06511
203-772-2600
———
FACSIMILE: 203-562-2098
E-MAIL: postmaster@bswlaw.com

MICHELLE S. GOGLIA
ROWENA A. MOFFETT
———
OF COUNSEL
SHARON KOWAL FREILICH

PLEASE REPLY TO:
POST OFFICE BOX 1746
NEW HAVEN, CT 06507-1746

January 31, 2003

Luis Fernandez
I.D. No. 279900
Cheshire C.I.
900 Highlan d Ave.
Cheshire, CT   06419

Dear Mr. Fernandez:

We have read your letter dated January 28, 2003.

I am very sorry that we are unable to represent you at this time.

Pursuant to your request, I am returning herein the paperwork that you sent to me.

Very truly yours,

Rowena A. Moffett

RAM:dwc
Enc.

document2

# Paul Hastings

Paul, Hastings, Janofsky & Walker LLP
1055 Washington Boulevard, Stamford, CT 06901-2216
telephone 203-961-7400 / facsimile 203-359-3031 / internet www.paulhastings.com

Atlanta
Beijing
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Stamford
Tokyo
Washington, D.C.

(203) 961-7413
charleslee@paulhastings.com

February 4, 2003

09001.01002

Mr. Luis Fernandez
# 279900
Cheshire Correctional Center
900 Highland Avenue
Cheshire, CT  06410

RE:    **REPRESENTATION**

Dear Mr. Fernandez:

This is in response to your correspondence dated January 22, 2003.  Please be advised that Paul Hastings respectfully declines to accept the representation described in your letter.

Very truly yours,

Charles T. Lee
of PAUL, HASTINGS, JANOFSKY & WALKER LLP

CTL/slm

# ROME MCGUIGAN SABANOSH, P.C.

ATTORNEYS AT LAW

A. Ryan McGuigan
Direct Dial:  860-493-3596
E-Mail: rmcguigan@rms-law.com

RESPOND TO:

One State Street
Hartford, CT  06103-3101
860-549-1000
Fax 860-724-3921
www.rms-law.com

March 6, 2003

**PRIVILEDGED AND CONFIDENTIAL**

Luis Fernandez #279900
Cheshire Correctional Institution
900 Highland Avenue
Cheshire, CT  06410

Dear Mr. Fernandez:

I do not handle these types of cases.  I have returned the materials you forwarded to my office.  I wish you the best of luck.

Sincerely,

A. Ryan McGuigan

ARM/cbj

350208

ALSO LOCATED:

1000 Lafayette Boulevard
Bridgeport, CT  06604-4700
203-382-8000
Fax 203-382-8005

# EVANS, FELDMAN & BOYER, L.L.C.
## ATTORNEYS AT LAW

JACK H. EVANS
RICHARD C. FELDMAN
PHOEBE B. BOYER*
KEITH R. AINSWORTH
JAMES P. BROCHIN

*RETIRED

261 BRADLEY STREET
P.O. BOX 1694
NEW HAVEN, CONNECTICUT 06507-1694

TELEPHONE
(203) 772-4900

TELECOPIER
(203) 782-1356

March 24, 2003

Mr. Luis Fernandez
Cheshire Correctional Institute
Id no. 279900
900 Highland Avenue
Cheshire, CT  06410

Dear Mr. Fernandez:

    We are returning herewith your letter of February 19, 2003.  Unfortunately our firm does not handle this area of practice.

Very truly yours,

Richard C. Feldman

RCF:ja
Enclosure

# LAW OFFICE OF TODD A. BUSSERT

### www.bussertlaw.com

Todd A. Bussert
Admitted in CT, DC and MD

87 MEADOW STREET
NAUGATUCK, CONNECTICUT 06770
(203) 723-2905 • FAX (203) 723-9250
tbussert@bussertlaw.com

October 10, 2003

### LEGAL MAIL:
### PRIVILEGED & CONFIDENTIAL

Luis Fernandez, #279-900
Chesire Correctional Institution I
900 Highland Avenue
Chesire, Connecticut 06410

      **RE:**    *Fernandez v. Warden*
              **Docket No. 03-3988**

Dear Mr. Fernandez:

It was a pleasure to meet you this morning. I am happy that we were able to clarify the issues underlying your petition. Please note that the Habeas Corpus Unit of the Public Defender's Office advises that your ineffective assistance claim involving Attorney Ovian can proceed given that you filed the petition before your sentence in that case expired.

Following on our conversation, enclosed you will find a release directed to Attorney Ovian. I ask that you please sign it before a notary and return it to me at your earliest opportunity. It appears from Attorney Ovian's December 6, 2002 letter to the Grievance Panel that he may already possess many of the transcripts we require. If so, and assuming he has no objection to turning them over, that should help move the process along.

In addition to the release, I ask that you send me all documentation in your possession related to this matter, including the investigator's affidavit, correspondence with Attorney Ovian, FOIA statement and witness information of which you spoke. As you can see from the enclosed letter to the Records Center, I have requested a complete copy of the trial court file.

In closing, let me repeat that I am presently unable to represent you with respect to the § 1983 actions you mentioned. I am available, however, to speak with your mother about your case, should you wish. I simply ask that you provide written, signed authorization outlining the issues you would allow me to address with her; our dealings are confidential, and I will not disclose them to anyone without your express consent.

Sincerely,

Todd A. Bussert

Enclosures